UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TANG CAPITAL PARTNERS, LP,

                    Plaintiff,

        -against-

BRC INC.,

                   Defendant.

**<u>COMPLAINT</u>**

**Jury Trial Demanded**

Index No.   22-cv-3476

 

Plaintiff Tang Capital Partners, LP ("Tang Capital"), by and through its attorneys, Gibson, Dunn & Crutcher LLP, for its Complaint against Defendant BRC Inc. ("BRCC"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a breach of contract action, turning on a question of United States securities law, in which BRCC has repeatedly violated the plain language of a warrant agreement to the detriment of Tang Capital and similarly situated warrant holders, causing millions of dollars of damages.

2.      The warrants at issue in this action (the "Warrants") were originally issued by a public company called SilverBox Engaged Merger Corp I ("SilverBox") pursuant to a February 25, 2021 warrant agreement (the "Warrant Agreement").  On February 9, 2022, SilverBox and BRCC completed a business combination in which BRCC expressly assumed all obligations of the Warrant Agreement.

3.      Pursuant to the Warrant Agreement, Warrant holders are entitled to exercise a right to buy shares of BRCC's common stock at a price of $11.50 per share, in the event that two

conditions are met.  First, thirty days must have passed since the completion of the BRCC-SilverBox transaction.  Second, the shares of common stock underlying the Warrants must have been registered under the Securities Act of 1933, as amended, via an effective registration statement.

4.     There can be no serious dispute that both conditions to the exercise of the Warrants were satisfied as of March 11, 2022.  First, the BRCC-Silverbox transaction closed on February 9, 2022—thirty days prior to March 11, 2022.  Second, the Warrants and the shares of common stock underlying the Warrants were registered via an effective registration statement. Specifically, the Warrants and the shares of common stock underlying the Warrants were registered on a Registration Statement on Form S-4 (the "Form S-4"), which was reviewed by the U.S. Securities and Exchange Commission (the "SEC") and declared effective on January 13, 2022.

5.      The SEC's comments on earlier-filed drafts of the Form S-4, which comments are publicly available on the SEC's website, made clear that the SEC permitted the registration of the Warrants and the shares underlying those Warrants.  Moreover, BRCC's counsel at the time filed a legal opinion with the SEC on January 11, 2022, covering the Warrants and the issuance of the shares of common stock underlying the Warrants being registered on the Form S-4, stating, in sum and substance and in relevant part, that the Warrants would be a valid and binding obligation of BRCC once the Form S-4 became effective.  Further, a BRCC officer authorized to speak on behalf of the company stated in writing on or about March 8, 2022, that the Warrants had been registered and could be exercised thirty days after the business combination closed (*i.e.*, on March 11, 2022).

6.      Despite the fact that both conditions had been met for the Warrants to be exercisable on and after March 11, 2022, BRCC improperly and unlawfully blocked Tang Capital's repeated attempts to exercise its Warrants to buy BRCC shares for $11.50 per share and sell those shares at much higher prices.  Indeed, in the weeks following Tang Capital's initial attempt to exercise, BRCC stock rose to a high of $34.00 per share before falling all the way back down to approximately $15.00 per share as of the date of this Complaint.  By blocking Tang Capital's attempts to exercise its Warrants and sell the underlying shares at much higher prices and before the stock declined, BRCC caused millions of dollars of damages to Tang Capital.  A stock price chart for BRCC and timeline of key events are set forth below.



7.     BRCC's outside counsel has asserted to Tang Capital's counsel that the Form S-4 did not register an ongoing offering covering the exercise of the Warrants on the theory that a Form S-4 cannot be used for a "continuous" offering under SEC Rule 415.  This theory is erroneous.  That same day, Tang Capital, through counsel, responded to BRCC's counsel in writing, citing to clear authority on the matter—the instructions for the SEC's Form S-4, and the SEC's accompanying adopting release—all of which expressly note that a continuous offering under SEC Rule 415 *can* be registered using Form S-4.  Tang Capital's counsel in this matter included two former SEC Staff members, including the former Chief Counsel of the SEC, who concurred in the conclusion that the Warrants and their exercise had been properly registered via the Form S-4.  Neither BRCC nor BRCC's counsel responded to Tang Capital's outside counsel's email correcting the mistaken proposition that registration on Form S-4 was inadequate.

8.     Tang Capital brings this action seeking, among other things: (1) a declaration that the Warrants and the shares of common stock underlying the Warrants were registered within the meaning of the Securities Act of 1933 on January 13, 2022, the date that the Form S-4 was declared effective, and that the Warrants should have been exercisable starting on March 11, 2022, thirty days following the close of the business combination; and (2) recovery of damages for the amounts it would have gained had BRCC not violated the Warrant Agreement and instead permitted it to exercise its Warrants on or after March 11, 2022 and sell the underlying shares thereafter.

## PARTIES

9.     Plaintiff Tang Capital Partners, LP is a Delaware limited partnership with its principal place of business in San Diego, California.

10.     Defendant BRC Inc. is a public company whose common stock is traded on the New York Stock Exchange under the ticker "BRCC."  BRC Inc. is a Delaware corporation with its principal place of business in Salt Lake City, Utah.

## JURISDICTION AND VENUE

11.     Pursuant to Title 28, United States Code, Section 1331, this Court has subject matter jurisdiction because this dispute arises under the securities laws of the United States. Specifically, this dispute necessarily raises a substantial question of federal law: whether the Warrants and the shares of common stock underlying the Warrants were registered under the Securities Act of 1933 as of January 13, 2022, the date that the Form S-4 was declared effective by the SEC.

12.     Pursuant to Title 28, United States Code, Section 1391, this Court has personal jurisdiction based upon the terms of the Warrant Agreement.  Pursuant to the Warrant Agreement, the Parties "irrevocably submit[ted]" to the jurisdiction of the United States District Court for the Southern District of New York with respect to "any action, proceeding or claim against it arising out of or relating in any way to this Agreement[.]"  Additionally, BRCC consented to "the courts of the State of New York or the United Stated District Court for the Southern District of New York" as the "exclusive forum for" any action arising out of the Warrant Agreement, and has "waive[d] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

## FACTUAL BACKGROUND

**A.     BRCC's Predecessor SilverBox Issues the Warrants.**

13.     SilverBox, a public special purpose acquisition company ("SPAC") whose purpose was to identify and combine with a merger target, first issued the Warrants. Specifically, in connection with its February 2021 initial public offering, SilverBox offered 34.5

million units.  Each unit comprised of one share of Class A common stock and one-third of one

Warrant, such that there were 34.5 million shares of Class A common stock and 11.5 million

Warrants issued.

**B.    The Warrant Agreement's Key Provisions.**

14.    The Warrants issued by SilverBox are governed by a Warrant Agreement dated

February 25, 2021 and filed with the SEC.  A copy of the Warrant Agreement is attached hereto

as **Exhibit A**.  The Warrant Agreement has the following key provisions:

15.    *Exercise Price of $11.50 per Share.*  Each Warrant entitled its holder to purchase

one share of SilverBox's common stock at the price of $11.50 per share.[1]  Warrant Agreement

§ 3.1.

16.    *Two Conditions on Exercise.*  The Warrant Agreement sets out two conditions

that must be met before Warrant holders may exercise their right to buy shares of SilverBox for

$11.50 per share.  First, the Warrant holder had to wait thirty days after SilverBox completed its

prospective merger with a target company.  Warrant Agreement § 3.2.  Second, the shares of

common stock underlying the Warrants had to be registered pursuant to the Securities Act of

1933 through an effective registration statement.  *Id.* § 3.3.2.

17.    *Registered Holders Receive Sole and Exclusive Benefit of Agreement.*  The

Warrant Agreement expressly inures to the benefit of Warrant holders: "All covenants,

conditions, stipulations, promises, and agreements contained in this Agreement shall be for the

sole and exclusive benefit of the parties hereto and their successors and assigns and of the

Registered Holders of the Warrants."  Warrant Agreement § 9.5.  "Registered Holders" are those

---

[1]  As noted below, in the business combination conducted by SilverBox and BRCC, BRCC expressly assumed the
Warrant Agreement and Warrants, including an obligation to satisfy the Warrants using shares of BRCC.
Therefore, while the terms of the Warrant Agreement reference shares of SilverBox's common stock, today that
obligation relates to BRCC's common stock.

(such as Tang Capital) "in whose name such Warrant is registered in the Warrant Register"
maintained by a Warrant Agent.  *Id.* § 2.3.2.

18.     *Binding on Successors.*  The Warrant Agreement states that, "in the case of any
merger or consolidation of [SilverBox] . . . the holders of the Warrants shall thereafter have the
right to purchase and receive . . . the kind and amount of shares of stock or other securities or
property . . . that the holder of the Warrants would have received if such holder had exercised
his, her or, its Warrant(s) immediately prior to such event."  Warrant Agreement § 4.4.
Similarly, the Warrant Agreement provides that: "All the covenants and provisions of this
Agreement by or for the benefit of the Company or the Warrant Agent shall bind and inure to the
benefit of their respective successors and assigns."  *Id.* § 9.1.  In other words, after SilverBox
found and combined with a merger target, the Warrant Agreement would bind any successor
company.

**C.     SilverBox Combines with BRCC and BRCC Registers the Transaction on SEC
         Form S-4.**

19.     In late 2021, SilverBox identified a merger target for its anticipated business
combination: the Utah-based coffee company Black Rifle Coffee Company, LLC.  The
contemplated transaction involved the formation of new company—BRCC—which would
combine with SilverBox and Black Rifle Coffee Company, LLC and succeed both companies.
In connection with this transaction, and as contemplated by the terms of the Warrant Agreement,
the Warrants issued by SilverBox were "rolled over" to BRCC, such that BRCC expressly
assumed responsibility for satisfying the Warrants using BRCC common stock, under the same
terms and conditions of the Warrant Agreement.

20.     The Form S-4 was initially filed on November 10, 2021 and amended on
December 14, 2021, January 4, 2022, and January 11, 2022, in response to comments from SEC

Staff.  The Form S-4 was assigned SEC File Number 333-260942.  A copy of the final amended version of the Form S-4 is attached hereto as **Exhibit B**.

21.     On January 13, 2022, the Form S-4 registration became effective, permitting SilverBox and BRCC to offer securities and solicit consents in connection with their prospective business combination.  A copy of the SEC's effectiveness order, as posted on the SEC's website, is attached hereto as **Exhibit C**.

22.     On February 9, 2022, SilverBox and BRCC completed their business combination.

**D.     The Form S-4 Registered the Warrants**

23.     The Form S-4 registered the Warrants and the shares of common stock of BRCC underlying the Warrants.

**1.     The Warrants Were Registered on the Face of the Form S-4 and Incorporated into BRCC's Registration Fee.**

24.     The Warrants were registered on the face of the Form S-4 and incorporated into BRCC's registration fee payable to the SEC.  The first page of the Form S-4 registered 17,766,667 "Warrants to purchase shares of Class A Common stock," which "[c]onsist[] of warrants of the Registrant that will be issued in exchange for outstanding warrants of SilverBox."  Similarly, the Form S-4 registered the ongoing offering (and ultimate sale) of the Class A Common Stock that was issuable upon the exercise of the Warrants.  Specifically, the Form S-4 registered 17,766,667 "Shares of Class A Common Stock issuable upon exercise of warrants," which "[c]onsist[] of shares of [BRCC] Class A Common Stock issuable upon exercise of the warrants.  Each whole warrant will entitle the warrant holder to purchase one share of [BRCC] Class A Common Stock at a price of $11.50 per share[.]"  The cover page of the prospectus contained in the Form S-4 referenced in bolded, capitalized text,

8

"**PROSPECTUS FOR . . . 17,766,667 WARRANTS TO PURCHASE SHARES OF CLASS A COMMON STOCK AND 17,766,667 SHARES OF CLASS A COMMON STOCK UNDERLYING WARRANTS OF BRC INC.**"  Moreover, BRCC disclosed that it would pay, and on information and belief ultimately did pay, an SEC registration fee of $18,940.15 to register the shares of common stock underlying the Warrants.  A copy of the cover page of the final prospectus included within the Form S-4, as filed with the SEC on January 13, 2022, is attached hereto as **Exhibit D**.

25.     The registration of the Warrants and shares of common stock underlying the Warrants was a necessary part of BRCC's plan to "roll over" the Warrants previously issued by SilverBox and assume them within BRCC's capital structure.  As the Form S-4 explained: "each warrant of SilverBox outstanding immediately prior to the effectiveness of the SilverBox Merger [will be] converted into the right to receive one warrant of [BRC], with [BRC] assuming SilverBox's obligations under the existing warrant agreement[.]"  Ex. B. at 2.  More specifically:

> **Each SilverBox Warrant issued and outstanding** immediately prior to the [BRCC] Merger Effective Time **will automatically become a [BRCC] Warrant exercisable for one [BRCC] Class A Share at the same exercise price per share and on the same terms** in effect immediately prior to the [BRCC] Merger Effective Time, **and the rights and obligations of SilverBox under the Warrant Agreement will be irrevocably assigned and assumed by [BRCC]**.  As of immediately prior the [BRCC] Merger Effective Time, **[BRCC] shall enter into a warrant assumption agreement**, substantially in the form attached hereto as Exhibit F (the "Warrant Assumption Agreement"), pursuant to which [BRCC] will assume the obligations of SilverBox under the Warrant Agreement.

*Id.* at A-25 (emphases added).

**2.     The SEC's Comment Letters, and BRCC's Responses, Demonstrate the Form S-4 Registered the Warrants.**

26.     The history of public comment letters issued by the SEC, and BRCC's responses, between December 7, 2021 and January 4, 2022, demonstrates that the Warrants were registered by the Form S-4.

27.     The initial draft of the Form S-4, filed November 10, 2021, proposed to register the Warrants, the BRCC shares of common stock underlying the Warrants, and another tranche of BRCC shares to be issued to investors who had invested in a private investment in public equity ("PIPE") transaction.

28.     On December 7, 2021, the SEC issued a public comment letter, asking BRCC to, among other things, "Please tell us how you determined it is appropriate to register the issuance of those shares to the PIPE investors."  The SEC had no comment on the proposed registration of the Warrants or the shares of common stock underlying the Warrants.

29.     On December 14, 2021, BRCC responded, setting forth its position for why it believed it was appropriate for the Form S-4 to cover the registration of the PIPE-related shares.

30.     On December 28, 2021, the SEC Staff issued another comment letter, rejecting BRCC's position on the PIPE-related shares.  The SEC again had no comment on the proposed registration of the Warrants or the shares of common stock underlying the Warrants.

31.     On January 4, 2022, BRCC revised the Form S-4 to eliminate the PIPE-related shares, but not the Warrants or the shares of common stock underlying the Warrants.

32.     In summary, the SEC's comment letters, and BRCC's responses, demonstrate that the Form S-4 registered the Warrants and the shares of common stock underlying the Warrants.

**3.      A Legal Opinion Letter Issued by BRCC's Counsel Demonstrates That the Form S-4 Registered the Warrants.**

33.     BRCC's outside legal counsel issued a legal opinion stating that in sum and substance, and in relevant part, that the Warrants would be a valid and binding obligation of BRCC once the Form S-4 became effective.  *See* Ex. B at Exhibit 5.1 (Opinion of Paul Hastings LLP).

34.     Specifically, on January 11, 2022, Paul Hastings issued an opinion letter stating in relevant part that:

> **When (i) the Registration Statement has been declared effective** by order of the Commission (and not suspended or withdrawn), (ii) the Merger Certificates have been filed with and accepted by the Delaware Secretary of State, (iii) [BRCC's] Charter has been filed with and accepted by the Delaware Secretary of State, and (iv) the Warrants have been issued and paid for in the manner contemplated by and upon the terms and conditions set forth in the Registration Statement and the Business Combination Agreement, **the Warrants will be valid and binding obligations of [BRCC], enforceable against [BRCC] in accordance with their terms**, except as such enforceability may be limited by (x) any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally including, without limitation, fraudulent transfer or fraudulent conveyance laws; (y) public policy considerations, statutes or court decisions that may limit rights to obtain exculpation, indemnification or contribution (including, without limitation, indemnification regarding violations of the securities laws and indemnification for losses resulting from a judgment for the payment of any amount other than in United States dollars); and (z) general principles of equity (including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing) and the availability of equitable remedies (including, without limitation, specific performance and equitable relief), regardless of whether considered in a proceeding in equity or at law.
>
> **When (i) the Registration Statement has been declared effective** by order of the Commission (and not suspended or withdrawn), (ii) the Merger Certificates have been filed with and accepted by the Delaware Secretary of State, (iii) the PubCo Charter has been filed with and accepted by the Delaware Secretary of State, **(iv) the Warrants have been issued and paid for in the manner contemplated by and upon the terms and conditions set forth in the Registration Statement and the Business Combination Agreement, and (v) the Warrants are duly exercised in accordance with the terms of the Warrant Agreement, the Warrant Shares will be validly issued, fully paid and non-assessable.**

Ex. B., Exhibit 5.1 at 2–3 (emphases added).

35.     BRCC's counsel thus expressly opined that, once the Form S-4 was declared effective (and other conditions were met), the Warrants would be "valid and binding obligations of" BRCC "enforceable . . . in accordance with their terms," and the shares of common stock underlying the Warrants would be "validly issued" and "fully paid" upon exercise of the Warrants.  In short, the Form S-4, once declared effective, registered the Warrants.

**4.      BRCC Admitted that the Form S-4 Registered the Warrants.**

36.      BRCC admitted publicly that the Form S-4 registered the Warrants.

37.      On or about March 8, 2022, BRCC's Vice President of Investor Relations, Tanner

Doss, speaking as an officer of BRCC, made the following written statement, publicly

confirming that the Form S-4 registered the Warrants:

Todd

After going back and forth with outside counsel,
they confirmed a few things for me. The public
warrant holders, which you are, those underlying
shares have already been registered through the
SBEA transaction and you should be able to
exercise those warrants 30 days post-transaction.
The $18 question you asked isn't retroactive, so
that wouldn't start until the warrants can become
exercisable.

Apologies for the confusion.

**Tanner Doss I VP of Investor Relations**
Tanner.Doss@BlackRifleCoffee.com
**Office: 801-874-1189**
**Cell: 859-621-2137**



38.      When BRCC's Vice President of Investor Relations, an officer of BRCC, stated

that the "underlying shares" for "public warrant holders" "have already been registered through

the SBEA transaction [referring to the Silverbox-BRCC business combination]," BRCC

acknowledged that the Form S-4 registered the Warrants and shares of common stock underlying

the Warrants, and that BRCC Warrant holders had the right to exercise the Warrants thirty days

after the close of the SilverBox-BRCC business combination.  Since the SilverBox-BRCC

transaction closed on February 9, 2022, BRCC Warrant holders had the right to exercise those

Warrants thirty days later starting on March 11, 2022.

**E.      Tang Capital Purchases Warrants.**

39.      Between March 7, 2022 and April 6, 2022, Tang Capital purchased 1,035,364

Warrants in open market transactions, for a gross cost of more than $3.76 million.  When

purchasing the Warrants, Tang Capital relied upon, among other things, the Form S-4, BRCC's

SEC filings, and BRCC's public statements.

**F.      Tang Capital Attempts to Exercise Its Warrants and Is Blocked.**

40.      Despite the fact that both conditions had been met for the Warrants to be

exercisable on and after March 11, 2022, BRCC improperly and unlawfully blocked Tang

Capital's repeated attempts to exercise its Warrants to buy BRCC shares for $11.50 per share and

sell those shares at much higher prices.

41.      On March 11, 2022, Tang Capital submitted a notice to exercise its Warrants.

Tang Capital was told that the Warrants were not exercisable.

42.      On March 11, 2022, Tang Capital, through counsel, sought an explanation from

BRCC's counsel.  BRCC's outside counsel asserted that the Form S-4 did not register an

ongoing offering covering the exercise of the Warrants, on the theory that a Form S-4 cannot be

used for a "continuous" offering under SEC Rule 415.  This theory is erroneous.  That same day,

Tang Capital, through counsel, responded to BRCC's counsel in writing, citing to clear authority

on the matter—the instructions for the SEC's Form S-4, and the SEC's accompanying adopting

release—all of which expressly note that a continuous offering under SEC Rule 415 *can* be

registered using Form S-4.  Tang Capital's counsel in this matter included two former SEC Staff

members, including the former Chief Counsel of the SEC, who concurred in the conclusion that

the Warrants and their exercise had been properly registered via the Form S-4.

43.     Neither BRCC nor BRCC's counsel responded to Tang Capital's outside counsel's March 11, 2022 email correcting the mistaken proposition that registration on Form S-4 was inadequate.

44.     On April 13, 2022, Tang Capital submitted another notice to exercise its Warrants.  Tang Capital was again told that the Warrants were not exercisable.

**G.     As a Result of BRCC's Refusal to Permit the Exercise of the Warrants, Tang Capital and Similarly Situated Warrant Holders Sustained Millions of Dollars of Damages.**

45.     In the weeks following Tang Capital's initial attempt to exercise, BRCC stock rose to a high of $34.00 per share before falling all the way back down to approximately $15.00 per share as of the date of this Complaint.  By blocking Tang Capital's attempts to exercise its Warrants and sell the underlying shares at much higher prices and before the stock declined, BRCC has caused millions of dollars of damages to Tang Capital.  Specifically, had Tang Capital been permitted to exercise its Warrants when it should have been lawfully permitted to do so on March 11, 2022, it could have acquired 1,035,364 shares at $11.50 per share and then sold those shares in the following weeks at prices up to $34.00 per share.  Instead, by the time BRCC allowed Tang Capital and other Warrant holders to exercise their Warrants on April 20, 2022, the stock had already fallen to approximately $18.00 per share and is now trading at approximately $15.00 per share.

46.     A stock price chart for BRCC and timeline of key events are set forth below.



**COUNT I**

**Declaratory Judgment That the Warrants Were Registered Pursuant to the Securities Act of 1933 When the SEC Declared Effective BRCC's Form S-4 and That, Therefore, the Warrants Should Have Been Exercisable on March 11, 2022**

47.     Tang Capital repeats each of the allegations above as if fully set forth herein.

48.     For the reasons set forth above, Tang Capital seeks a declaration that the Warrants and the shares of common stock underlying the Warrants were registered within the meaning of the Securities Act of 1933 as of January 13, 2022 when the Form S-4 was declared effective by the SEC and that, therefore, the Warrants should have been exercisable on March 11, 2022.

15

49.     The disagreement between the parties over this issue presents a substantial controversy that is sufficiently immediate to warrant this Court's intervention to clarify and settle the dispute.  This underlying question of United States securities law is a core legal question upon which Tang Capital's other claims rely.

**COUNT II**
**Breach of Contract Resulting in General and Compensatory Damages**

50.     Tang Capital repeats each of the allegations above as if fully set forth herein.

51.     The Warrant Agreement is an enforceable contract that BRCC expressly assumed.

52.     Tang Capital is a Registered Holder of the Warrants within the meaning of Section 2.3.2 of the Warrant Agreement.  Therefore, Tang Capital is an express third-party beneficiary having rights pursuant to Section 9.5 of the Warrant Agreement.

53.     Tang Capital has performed all of the material conditions, covenants, and promises required of it by the Warrant Agreement.

54.     BRCC had a duty to abide by the Warrant Agreement and breached the Warrant Agreement by its refusal to honor Tang Capital's repeated attempts to exercise its Warrants when Tang Capital was entitled to do so.

55.     Tang Capital has suffered and will continue to suffer damages as a direct and proximate result of BRCC's breach of the Warrant Agreement in an amount to be proved at trial. Had Tang Capital been permitted to exercise its Warrants and purchase BRCC stock at $11.50 per share on March 11, 2022 when it was entitled to do so, it could have sold those shares at market prices as high as $34.00 in the ensuing weeks.  Instead, Tang Capital and other Warrant holders were only permitted to exercise their Warrants on April 20, 2022, after BRCC stock had fallen to approximately $18.00 per share.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

1.      A declaration that the Warrants and the shares of common stock underlying the

Warrants were registered within the meaning of the Securities Act of 1933 as of

January 13, 2022, the date that BRCC's Form S-4 was declared effective by the

SEC and that, therefore, the Warrants should have been exercisable beginning on

March 11, 2022;

2.      Awarding Plaintiff general and compensatory damages according to proof at trial;

3.      Awarding Plaintiff costs and disbursements, including attorney's fees, related to

this dispute; and

4.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: New York, New York
April 28, 2022

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Reed Brodsky       
Reed Brodsky
David Salant
Andrew Freire

200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
Email: rbrodsky@gibsondunn.com
dsalant@gibsondunn.com
afreire@gibsondunn.com

*Attorneys for Tang Capital Partners, LP*