# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Stefan Atkinson, P.C.
To Call Writer Directly:
+1 212 446 4803
stefan.atkinson@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 10, 2022

**By Email and ECF**

The Honorable Analisa Torres.
Daniel Patrick Moynihan United States Courthouse
500 Pearl St, Courtroom 15D
New York, NY 10007
Torres_NYSDChambers@nysd.uscourts.gov

      Re:    *Tang Capital Partners, LP v. BRC Inc.*, No. 22-cv-3476 (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Rules III.A and III.B.iii of the Court's Individual Practices, BRC Inc. ("BRC") requests a pre-motion conference or, in the alternative, a briefing schedule on a motion to dismiss Tang Capital Partners, LP's ("Tang Capital" or "Plaintiff") Complaint (Dkt. 1) for failure to state a claim. The parties have previously exchanged letters pursuant to Rule III.B.ii of the Court's Individual Practices.

## I.    Factual Background

This case concerns the conditions precedent to an investor's exercise of its warrants in a "de-SPAC" transaction. In February 2021, SilverBox Engaged Merger Corp I ("SilverBox"), a special purpose acquisition company ("SPAC"), completed its initial public offering. Compl. ¶ 13. SPACs like SilverBox acquire private companies in order to take those companies public through an alternative process to a traditional IPO.[1] As is customary in SPAC transactions, investors in SilverBox received units comprising both SilverBox common stock and SilverBox warrants. *See* Compl. ¶ 13. SilverBox later located a target company, a now wholly-owned subsidiary of BRC, and in November 2021, SilverBox entered into a business combination agreement pursuant to which BRC would succeed SilverBox as a publicly listed company (the "Merger"). Compl. ¶¶ 19–20. As part of the Merger, the existing SilverBox warrants were exchanged for new BRC warrants, and BRC assumed SilverBox's obligations under the Warrant Agreement, dated February 25, 2021. This type of transaction is commonly known as a de-SPAC, and it is Plaintiff's untimely attempt to exercise its BRC warrants following the de-SPAC that is at issue in this case.

---

[1]    *See generally Investor Alerts and Bulletins: What You Need to Know About SPACs* (SEC May 25, 2021), https://www.sec.gov/oiea/investor-alerts-and-bulletins/what-you-need-know-about-spacs-investor-bulletin.

Both the initial SilverBox warrants and the BRC warrants for which they were exchanged are governed by the Warrant Agreement (Compl. Ex. A), which sets forth their rights and restrictions. Each warrant entitled the holder, under certain conditions, to purchase a share of SilverBox (and later BRC) common stock for $11.50. Warrant Agreement § 3.1. Expressly, it was agreed that SilverBox (and later BRC) "shall have no obligation to settle such Warrant exercise unless (a) a registration statement under the Securities Act covering the issuance of the Common Stock underlying the Public Warrants is then effective." *Id.* § 3.3.2. This provision was included in the Warrant Agreement because SilverBox could not commit itself to, nor could BRC assume, a contractual obligation that could violate of federal securities laws.

As part of the de-SPAC, BRC needed to register two transactions with the SEC so as to deliver BRC warrants to public stockholders and make them exercisable for $11.50 in cash per share. *First*, BRC had to register the exchange of SilverBox warrants for new BRC warrants in connection with the Merger (the "Exchange Transaction"). Compl. ¶ 19. BRC registered the Exchange Transaction on a Form S-4, effective on January 13, 2022. Form S-4 (Compl. Ex. B). *Second*, BRC needed to register a continuous offering of BRC common stock in exchange for cash in connection with the exercise of BRC warrants (the "Exercise Transaction"). BRC registered the Exercise Transaction on a Form S-1 that was first filed on March 16, 2022, and became effective on May 4, 2022. Ex. 1, BRC Form S-1.

Plaintiff, an investment fund that manages hundreds of millions of dollars, purportedly purchased BRC warrants on the open market beginning on March 7, 2022 and submitted a notice to BRC on March 11, 2022 attempting to exercise its warrants for BRC common stock. Compl. ¶¶ 39–41. BRC immediately informed Plaintiff that its warrants could not be exercised because the Form S-1 was not yet effective (*id.* ¶¶ 41–42); in other words, BRC correctly informed Plaintiff that an exercise for cash would run afoul of the Securities Act and so could not be undertaken pursuant to the Warrant Agreement. Nevertheless, Plaintiff acquired more BRC warrants, and later sought to exercise its warrants again on April 13, 2022, at which time BRC reiterated that it could not issue the underlying common stock. *Id.* ¶¶ 39, 44. This lawsuit followed.

## II. BRC Complied with the Warrant Agreement and Federal Securities Law.

Plaintiff alleges that BRC did not need to wait for the Form S-1 to be effective because BRC's common stock was already effectively registered on the earlier-filed Form S-4.[2] As a result, Plaintiff contends that BRC breached the Warrant Agreement when it refused to issue

---

[2] Plaintiff insists that waiting for the S-1 to become effective was unnecessary because two former SEC lawyers who now work at Gibson Dunn said so. *See* Compl. ¶¶ 7, 42. By placing the legal advice Plaintiff received at issue in the Complaint, Plaintiff has waived privilege over the subject matter of that advice. *See In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword."). We expect that Tang will seek to distract from this problem by claiming that BRC waived privilege on the basis of supposed facts that are pled nowhere in the Complaint.

common stock to Plaintiff on March 11 and April 13, 2022. This plainly—and as a matter of law—fails under the SEC regulations and guidance incorporated in the Warrant Agreement.[3]

Contrary to Plaintiff's assertion, it was not enough that the Form S-4 contained language listing the underlying BRC common stock. The S-4 only registered the ***Exchange Transaction*** (i.e., the exchange of SilverBox warrants for BRC warrants), including with respect to underlying BRC common stock; the S-4 did not register the issuance of BRC common stock in the ***Exercise Transaction*** (i.e., exercising BRC warrants for cash). "Registration of a security is 'transaction-specific,' in that the requirement of registration applies to ***each act of offering or sale***." *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) (citing *SEC v. Cavanagh*, 445 F.3d 129, 133 (2d Cir. 1998)) (emphasis added). "[P]roper registration of a security at one stage does not necessarily suffice to register subsequent offers or sales of that security." *Id.*

In fact, the S-4 ***could not*** register the Exercise Transaction. Pursuant to SEC regulations, the Form S-4 can ***only*** be used to register certain specific transactions, none of which include registering the issuance of underlying stock upon exercise of warrants. *See* 17 C.F.R. § 239.25. Plaintiff counters that the S-4 could register the Exercise Transaction because it is a transaction connected to the Merger. *See* 17 C.F.R. § 230.145(a)(2) (listing certain types of mergers that may be registered on an S-4). Plaintiff is wrong. According to its Preliminary Note, 17 C.F.R. § 230.145 applies to the offering of "securities in a business combination" in which "there is submitted to security holders a plan or agreement pursuant to which such holders are required to elect, on the basis of what is in substance a new investment decision, whether to accept a new or different security ***in exchange for their existing security***" (emphasis added). Here, the Exercise Transaction is a distinct transaction, separate in time from the Merger, *see* Warrant Agreement § 3.2 (exercise could not take place until at least 30 days after the Merger); is discretionary and was in no way required by or a condition of the Merger's completion; and does not involve the submission of "a plan or agreement" to securities holders for a vote or election.

Plaintiff alleges that "[t]he Warrants were registered on the face of the Form S-4." Compl. ¶ 24. That is wrong. Securities are not registered, transactions are. *See Universal Express*, 475 F. Supp. 2d at 422. While the Form S-4 does list underlying BRC common stock, it does so only in connection with the registration of the Exchange Transaction. *See* Form S-4, at CM/ECF p.3. That was done based on SEC guidance that requires any registration of a transaction involving the offer or sale of convertible securities or warrants that are exercisable within a year (*e.g.*, the ***Exchange*** Transaction) also to include the underlying securities in the registration statement covering that transaction. Compliance and Disclosure Interpretations, *Securities Act Sections*,

---

[3] By its very terms, the "sole and exclusive benefit" of the Warrant Agreement inures to "Registered Holders of the Warrants." Warrant Agreement § 9.5. Although the Complaint alleges that Tang Capital is ***currently*** such a Registered Holder, it fails to plead that it was a Registered Holder ***at the time of the alleged breaches***. Compl. ¶ 17. Accordingly, the Complaint fails to adequately plead that Plaintiff had ***any*** enforceable rights under the Warrant Agreement at the time of the alleged breaches.

139.01 (SEC Nov. 13, 2020), https://www.sec.gov/corpfin/securities-act-sections. That guidance, however, does not (and cannot) change the scope of transactions that can be registered on an S-4. The S-4 can only be used to register the specific transactions detailed in the regulation on which it is based, 17 C.F.R. § 239.25, none of which include the Exercise Transaction here.

Instead, as BRC informed Plaintiff, *see* Compl. ¶ 41, a separate step was necessary effectively to register shares of common stock in connection with a for-cash warrant exercise (the Exercise Transaction, registered on Form S-1). Tellingly, Plaintiff's own counsel have used this structure in similar transactions, filing a Form S-1 (or equivalent) that registers the for-cash exercise of warrants after previously filing a Form S-4 registering the warrant exchange transaction, including the underlying common stock. *See* Ex. 2, Forge Global Form S-1; Ex. 3, Forge Global Form S-4.[4]

## III. Plaintiff's Claims Regarding Warrants Purchased After March 11, 2022 Should Be Dismissed as There Are No Plausible Damages After that Date.

Under New York law,[5] "damages are not recoverable for loss that the injured party could have avoided without undue risk, burden, or humiliation." Restatement (Second) of Contracts § 350. That duty arises once "it appears that the breaching party has abandoned or repudiated his obligations under the contract." *U.S. v. Russell Elec. Co.*, 250 F. Supp. 2, 20 (S.D.N.Y. 1965). Here, Plaintiff alleges that BRC breached the Warrant Agreement on March 11, 2022, when BRC explained that Plaintiff could not exercise its warrants. Compl. ¶¶ 41–42. Following that date, Plaintiff had an obligation to mitigate its supposed damages from this alleged breach. Instead, Plaintiff purchased *more* BRC warrants, knowing that BRC (and the securities laws) would not permit it to exercise those warrants on a for-cash basis until the Form S-1 became effective. Any contract claim premised on warrants Plaintiff acquired *after* March 11, 2022 should be dismissed with prejudice.

\* \* \*

For the foregoing reasons, BRC seeks a pre-motion conference or, in the alternative, a briefing schedule on a motion to dismiss Plaintiff's Complaint. BRC reserves all rights, including the right to present further arguments in support of its motion to dismiss.

---

[4] Plaintiff cannot evade the Securities Act and the Warrant Agreement by reference to correspondence between BRC's VP of Investor Relations, Tanner Doss, and a different warrant holder. *See* Compl. ¶¶ 37–38. Plaintiff omits the fact that Doss promptly clarified that the Exercise Transaction would not be effectively registered until the Form S-1 became effective. In any event, statements by Doss (a non-lawyer) regarding his understanding of the law are not meaningful. *See Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("The meaning of a statute, for example, cannot vary from cases to case depending on concessions a party may have made.").

[5] New York law governs the Warrant Agreement. Warrant Agreement § 9.3.

Sincerely,

/s/ *Stefan Atkinson*
Stefan Atkinson, P.C.