**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TANG CAPITAL PARTNERS, LP,

                    Plaintiff,

          v.

BRC INC.,

                    Defendant.

Case No.: 1:22-cv-03476-RWL

**ECF Case**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**KIRKLAND & ELLIS LLP**
Stefan Atkinson, P.C.
Byron Pacheco
Jacob M. Rae
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com
jacob.rae@kirkland.com

*Attorneys for Defendant BRC Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    SilverBox Is Formed and Merges with Black Rifle Coffee Company. .................. 3

    B.    Registered Holders of BRC Warrants Are the "Sole and Exclusive" Beneficiaries of the Warrant Agreement. ................................................. 4

    C.    The Warrant Agreement Conditions the Exercise of BRC Warrants by Registered Holders. ................................................................................ 5

    D.    BRC Registers the Merger and the Corresponding Exchange of SilverBox Warrants for BRC Warrants on a Form S-4. .......................................... 7

    E.    BRC Registers the Exercise of BRC Warrants on a For-Cash Basis in Exchange for BRC Common Stock on a Form S-1. ................................. 8

    F.    Following the Merger, Plaintiff Purchases BRC Warrants and Attempts to Exercise Them Before the Form S-1 Became Effective. ........................ 9

LEGAL STANDARD .......................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.    BRC'S DENIAL OF PLAINTIFF'S WARRANT EXERCISE REQUESTS WAS ENTIRELY CONSISTENT WITH THE WARRANT AGREEMENT. ........................ 11

    A.    The Warrant Agreement Requirement That BRC File the Form S-1 to Register the Warrant-Exercise Transaction Is Not Surplusage. ........................... 13

    B.    A Form S-4 Can Not Be Used to Register This Type of Warrant-Exercise Transaction. ................................................................................. 14

    C.    The Form S-4 Did Not Purport to Register the Warrant-Exercise Transaction. ................................................................................. 16

    D.    Plaintiff's Duplicative Declaratory Judgment Claim Should Be Dismissed. ....... 18

II.    PLAINTIFF FAILS TO PLEAD THAT IT WAS A REGISTERED HOLDER WHEN IT SOUGHT TO EXERCISE ITS BRC WARRANTS. ...................................... 19

III.    PLAINTIFF CANNOT SHOW ANY DAMAGES FOR WARRANTS ACQUIRED AFTER MARCH 11, 2022. ......................................................................... 22

<u>**TABLE OF CONTENTS (CONT'D)**</u>

<u>**Page**</u>

CONCLUSION ........................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Allaire Corp. v. Okumus,*
    433 F.3d 248 (2d Cir. 2006)............................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................9, 10

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
    234 F. Supp. 3d 462 (S.D.N.Y. 2017)........................................................21

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011)..........................................................................11

*Diverse Partners, LP v. AgriBank, FCB*,
    2017 WL 4119649 (S.D.N.Y. Sept. 14, 2017)..........................................21

*Ely-Cruikshank Co. v. Bank of Montreal*,
    615 N.E.2d 985 (N.Y. 1993)......................................................................20

*Ezra v. Weitz & Luxenberg, P.C.*,
    794 F. App'x 27 (2d Cir. 2019) .................................................................20

*Fishman v. Bricker*,
    211 N.Y.S.2d 620 (1st Dep't 1961) ...........................................................20

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*,
    747 F.3d 44 (2d Cir. 2014).........................................................................19

*India.Com, Inc. v. Dalal*,
    412 F.3d 315 (2d Cir. 2005).......................................................................19

*Johnson v. Roberts*,
    1992 WL 151820 (D.D.C. June 9, 1992)..................................................20

*Lotes Co. v. Hon Hai Precision Industry Co.*,
    753 F. 3d 395 (2d Cir. 2014)......................................................................10

*Maracich v. Spears*,
    570 U.S. 48 (2013)......................................................................................15

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Mariah Re Ltd. v. Am. Family Mut. Ins.*,
  52 F. Supp. 3d 601 (S.D.N.Y. 2014)................................................................18

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
  859 F.2d 242 (2d Cir. 1988)...........................................................................19

*Next Generation Tech., Inc. v. Jaddou*,
  2022 WL 1548037 (S.D.N.Y. May 12, 2022) ...............................................9

*Olin Corp. v. Am. Home Assurance Co.*,
  704 F.3d 89 (2d Cir. 2012)........................................................................13, 14

*Optanix, Inc. v. Alorica Inc.*,
  2021 WL 2810060 (S.D.N.Y. July 6, 2021) ...................................................18

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998)..............................................................................22

*Salt Dome Oil Corp. v. Schenk*,
  41 A.2d 583 (Del. 1945) .................................................................................20

*SEC v. Cavanagh*,
  155 F.3d 129 (2d Cir. 1998)............................................................................17

*SEC v. Greenstone Holdings, Inc.*,
  954 F. Supp. 2d 211 (S.D.N.Y. 2013).............................................................11

*SEC v. Universal Express, Inc.*,
  475 F. Supp. 2d 412 (S.D.N.Y. 2007).............................................................17

*Snider v. Melindez*,
  199 F.3d 108 (2d Cir. 1999)............................................................................18

*Sudarsan v. Seventy Seven Energy Inc.*,
  2018 WL 1088004 (S.D.N.Y. Feb. 6, 2018)..........................................20, 21, 22

*T.M. Real Estate Holdings, LLC v. Stop & Shop Supermarket Co. LLC*,
  543 F. App'x 41 (2d Cir. 2013) ......................................................................13

*U.S. v. Russell Elec. Co.*,
  250 F. Supp. 2 (S.D.N.Y. 1965)......................................................................22

*U.S. West Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*,
  810 F. Supp. 1393 (S.D.N.Y. 1993)................................................................22

*Van Syckle v. C.L. King & Assocs., Inc.*,
  822 F. Supp. 98 (N.D.N.Y. 1993)...................................................................22

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Statutes**

15 U.S.C. § 77e ................................................................................................................11

Securities Act of 1933 Section 5 ....................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 9

Rule 145 ...........................................................................................................................14

**Other Authorities**

17 C.F.R. § 230.145(a) ....................................................................................................15

17 C.F.R. § 230.501 ........................................................................................................15

17 C.F.R. § 239.25 ..........................................................................................................14

SEC, Compliance and Disclosure Interpretations, *Securities Act Sections*,
    Question 139.01 (Nov. 13, 2020), https://www.sec.gov/corpfin/securities-act-
    sections ..................................................................................................................7, 17

Defendant BRC Inc. ("BRC" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) in its entirety and with prejudice.

## INTRODUCTION

This simple contract case presents a pure issue of law that is tailor-made for resolution on a motion to dismiss.  BRC is a mission-driven coffee company dedicated to hiring, promoting, and empowering veterans of the U.S. armed forces and first responders.  BRC became a public company in February 2022, after which Plaintiff, Tang Capital Partners, LP ("Plaintiff" or "Tang")—a highly sophisticated investment fund—purportedly purchased certain BRC Warrants. When Tang thereafter attempted to exercise those warrants for BRC shares (twice), BRC refused each request as premature.  Tang then initiated this lawsuit claiming that BRC's refusals breached the relevant contract, the Warrant Agreement.  In fact, BRC's conduct was entirely consistent with the Warrant Agreement, which allowed Tang to exercise the warrants only if the underlying shares had been registered with the SEC.  To do otherwise—issue *unregistered* shares as Tang demanded—would have breached the Warrant Agreement and exposed BRC to potential liability for violating SEC regulations.

There is no dispute that, in addition to BRC's legal obligation to comply with federal securities law, the plain terms of the Warrant Agreement make the existence of an effective registration statement a condition precedent to the exercise of BRC Warrants.  The core issue in this case is whether there was an effective registration statement on file with the SEC on either date Tang attempted to exercise its warrants (March 11, 2022 or April 13, 2022) that covered the exercise of BRC Warrants on a for-cash basis.  Plaintiff incorrectly points to an earlier-filed Form S-4 as evidence that the shares were effectively registered.  However, the words of the Warrant Agreement and the regulations that govern the Form S-4 both confirm that the Form S-4 could not

and did not register the shares.  Indeed, the Warrant Agreement contemplates a second, separate registration *after* the Form S-4—in this case the later-filed Form S-1.  Only when that Form S-1 became effective on May 4, 2022 could Tang exercise its warrants.  Plaintiff's claims fail for this reason.

Independently, Plaintiff's claims should also be dismissed because Plaintiff lacks enforceable rights under the Warrant Agreement with respect to the alleged breaches.  Any rights afforded by the BRC Warrants are held solely and exclusively by the Registered Holders of those warrants.  Plaintiff fails to allege that it was a Registered Holder when it sought to exercise its warrants.  Because it is black letter law that Plaintiff's rights under the Warrant Agreement became fixed at the time of the alleged breach, Plaintiff lacks standing to bring its claims.

Finally, Plaintiff fails to allege any cognizable damages for its inability to exercise the BRC Warrants that it purportedly acquired after March 11, 2022.  By Plaintiff's own admission, by that date it was aware that BRC would not permit the exercise of BRC Warrants until an effective Form S-1 registering such a transaction was on file with the SEC.  Despite that knowledge, Plaintiff continued purchasing BRC Warrants and later attempted (prematurely) again to exercise them.  Plaintiff cannot claim damages resulting from BRC's subsequent adherence to that position, and its effort to accumulate additional damages through subsequent purchases is a violation of its mitigation obligations that this Court should not countenance.  Accordingly, to the extent the Court does not dismiss the Complaint in full (as it should under the law), Plaintiff's claim related to BRC Warrants acquired after March 11, 2022 should be dismissed.

## BACKGROUND

Special purpose acquisition companies ("SPACs") are publicly traded companies that are formed for the exclusive purpose of effecting a merger or business combination with a private company.  *See* BRC Form S-4 (filed Jan. 11, 2022), Dkt. 1-2 at 141 (the "Form S-4").  After a

SPAC undergoes an initial public offering ("IPO"), the SPAC's management team will conduct an active search for and attempt to acquire a target private company. *Id.* Once a target is located and acquired, the combined company carries on the business of the target as a publicly traded company. *Id.* at 253. The transaction process whereby a SPAC acquires a target and the target becomes a newly public company is commonly known as a de-SPAC transaction.

> **A.   SilverBox Is Formed and Merges with Black Rifle Coffee Company.**

SilverBox Engaged Merger Corp. I ("SilverBox") was a SPAC that completed its IPO on March 2, 2021. *Id.* at 327. At that time, SilverBox offered units, each of which consisted of one share of SilverBox Class A common stock and one-third of one redeemable warrant (a "SilverBox Warrant"), for $10.00 per unit. *Id.* The SilverBox Warrants were governed by a warrant agreement between SilverBox and Continental Stock Transfer & Trust Co. ("Continental"), which was executed on February 25, 2021 (the "Warrant Agreement"). *See* Warrant Agreement (February 25, 2021), Dkt. 1-1, at 2.

Following its IPO, SilverBox identified Black Rifle Coffee Company LLC ("BRCC") as an acquisition target. Form S-4 at 141. BRCC was founded and is operated by veterans of the U.S. armed forces. *Id.* at 206. Its mission is to support active duty military members, veterans, and first responders, and one of its goals is "to hire 10,000 veterans and be the employer of choice for individuals seeking a post-military career." *Id.* BRCC's primary business is the sale of packaged coffee and apparel directly to consumers through online channels; it also operates a wholesale business and brick-and-mortar retail outposts. *Id.* at 207.

On November 2, 2021, SilverBox entered into a business combination pursuant to which BRC succeeded SilverBox as a publicly listed company (the "Merger"). *Id.* at 3-4. To effectuate the Merger, existing shares of SilverBox Class A common stock were exchanged for new shares of BRC Class A common stock, and existing SilverBox Warrants were exchanged for new

warrants issued by BRC (the "BRC Warrants").  *Id.* at 3.  At the time, there were 17,766,667 outstanding SilverBox Warrants, which were exchanged for 17,766,667 new BRC Warrants.  *Id.* at 26 ("[E]ach SilverBox Warrant issued and outstanding will automatically become a [BRC] Warrant at the same exercise price per share and on the same terms in effect immediately prior to the [Merger].").  Because BRC assumed SilverBox's obligations under the Warrant Agreement, the BRC Warrants are governed by the same Warrant Agreement initially executed by SilverBox. *Id.*  The Merger was completed on February 9, 2022, and BRC common stock and BRC Warrants began trading on the New York Stock Exchange on February 10, 2022.  Compl. ¶¶ 22, 46.

**B.  Registered Holders of BRC Warrants Are the "Sole and Exclusive" Beneficiaries of the Warrant Agreement.**

The Warrant Agreement is by and between BRC (as the successor to SilverBox) and Continental, the warrant agent.  Warrant Agreement, at 2.  There are no other parties to the Warrant Agreement.  *Id.*

The Warrant Agreement defines "the person in whose name [the] Warrant is registered in the Warrant Register" as the "Registered Holder" of the BRC Warrants.  *Id.* § 2.3.2.  Continental maintains that Warrant Register, which contains "the registration of original issuance and the registration of transfer of the Warrants," and enables the Registered Holder of any particular BRC Warrant to be specifically identified.  *Id.* § 2.3.1.  Any beneficial holder (*i.e.*, an individual or entity that receives the benefits of ownership but does not hold title) of a BRC Warrant may request to become a Registered Holder, upon which request "a new Warrant representing an equal aggregate number of Warrants shall be issued and the old Warrant shall be cancelled by the Warrant Agent."  *Id.* § 5.1.  BRC is authorized to "deem and treat" the Registered Holder of BRC Warrants as "the absolute owner of such Warrant . . . for the purpose of any exercise thereof, and

for all other purposes, and neither [BRC] nor the Warrant Agent shall be affected by any notice to the contrary." *Id.* § 2.3.2.

The Warrant Agreement provides that "[a]ll covenants, conditions, stipulations, promises, and agreements contained in this Agreement shall be for ***the sole and exclusive benefit*** of the parties hereto and their successors and assigns and ***of the Registered Holders of the Warrants***." *Id.* § 9.5 (emphasis added); *see also* Compl. ¶ 17 ("*Registered Holders Receive Sole and Exclusive Benefit of Agreement.*" (emphasis in original)).  In addition, "[n]othing in this Agreement shall be construed to confer upon, or give to, any person or corporation other than the parties hereto and the Registered Holders of the Warrants any right, remedy, or claim under or by reason of this Agreement or of any covenant, condition, stipulation, promise, or agreement hereof."  Warrant Agreement § 9.5.  Consistent with the overall structure of the Warrant Agreement, a Registered Holder is "the absolute owner of [the] Warrant . . . for the purpose of any exercise thereof." Warrant Agreement § 2.3.2.

### C.     The Warrant Agreement Conditions the Exercise of BRC Warrants by Registered Holders.

One of the rights granted to Registered Holders—and ***only*** Registered Holders—of BRC Warrants is the right to exercise BRC Warrants.  *Id.* § 3.1.  To exercise a BRC Warrant, the Registered Holder must provide to Continental a form electing exercise, surrender the BRC Warrant, and provide "payment in full of the Warrant Price for each full share of Common Stock as to which the Warrant is exercised and any and all applicable taxes due in connection with the exercise." *Id.* § 3.3.1.  The Warrant Price is $11.50 per warrant/share.  *Id.* § 3.1.  Thus, a Registered Holder may exchange one BRC Warrant and $11.50 for one share of BRC common stock. *Id.* § 3.3.2.

The right to exercise BRC Warrants and receive shares of BRC common stock exists only when certain conditions have been met.  *Id.* §§ 3.2; 3.3.2.  Specifically, the warrants may only be exercised 30 or more days after the completion of the Merger—in this case, on or after March 11, 2022.  *Id.* § 3.2.  In addition, BRC cannot issue shares of common stock to a Registered Holder unless "(a) ***a registration statement under the Securities Act covering the issuance of the Common Stock underlying the Public Warrants is then effective*** and (b) a prospectus relating thereto is current."  *Id.* § 3.3.2 (emphasis added).  Each of these conditions ***must be satisfied*** prior to and at the time of the attempted exercise of a BRC Warrant.  If any of these conditions is not satisfied, BRC "shall not be obligated to deliver any shares of Common Stock pursuant to the exercise of a Warrant and shall have no obligation to settle such Warrant exercise."  *Id.*

To meet the registration requirement, the Warrant Agreement contemplated that after the Merger closed (and, thus, after the Form S-4 was filed), BRC would begin the process of filing a separate registration statement that would permit it to issue common stock upon the exercise of the BRC Warrants.  Specifically, BRC agreed that it would use "reasonable best efforts" to file, as soon as practicable, such registration statement with the SEC "for the registration, under the Securities Act of the shares of Common Stock issuable upon exercise of the Warrants."  Warrant Agreement § 7.4.1.  BRC also agreed to "use its reasonable best efforts to cause [such registration statement] to become effective within sixty (60) Business Days following the closing of the initial Business Combination."  *Id.*  This contractual structure shows that the parties to the Warrant Agreement contemplated that an additional registration statement (the Form S-1) would need to be filed after the Merger to register the issuance of BRC common stock upon an investor's exercise of BRC Warrants (for ease of reference termed the "Warrant-Exercise Transaction" herein).  That is because the Form S-4 would already have been effective before the Merger had closed.

**D.     BRC Registers the Merger and the Corresponding Exchange of SilverBox Warrants for BRC Warrants on a Form S-4.**

In the months before the Merger, on November 10, 2021, BRC filed with the SEC a registration statement in connection with the forthcoming Merger (the Form S-4).  Compl. ¶ 20. The Form S-4 became effective on January 13, 2022, 27 days before the Merger closed.  Compl. ¶¶ 21-22.

Among other things, the Form S-4 registered the Merger as well as (1) the issuance of BRC common stock to be exchanged for SilverBox common stock in connection with the Merger, and (2) the issuance of BRC Warrants to be exchanged for SilverBox Warrants in connection with the Merger (collectively, and for ease of reference termed the "Merger-Exchange Transaction" herein).  Form S-4 at 14 ("This document, which forms part of a registration statement on Form S-4 filed with the SEC . . . constitutes a prospectus of [BRC] under Section 5 of the Securities Act, with respect to the shares of [BRC] Class A Common Stock and [BRC] Warrants to be issued if the Business Combination described herein is consummated.").   Thus, the Form S-4 listed 41,883,750 shares of BRC common stock and 17,766,667 BRC warrants.  *Id.* at 2.  The Form S-4 also listed 17,766,667 shares of BRC common stock issuable upon exercise of the BRC Warrants. *Id.*  This listing of the common stock underlying the BRC Warrants was required by the SEC's Compliance and Disclosure Interpretations, which provide that when registering warrants exercisable within one year, "the underlying securities [must] be registered at that time."  SEC, Compliance and Disclosure Interpretations, *Securities Act Sections*, Question 139.01 (Nov. 13, 2020), https://www.sec.gov/corpfin/securities-act-sections.[1]

---

[1]   This listing requirement does not amend the limitations on what types of transactions can be registered on a Form S-4, nor could it.  *See infra* § I.C.

### E.    BRC Registers the Exercise of BRC Warrants on a For-Cash Basis in Exchange for BRC Common Stock on a Form S-1.

As explained above, the Form S-4 had already registered the Merger-Exercise Transaction, which involved the exchange of SilverBox warrants for BRC Warrants and was an essential part of the Merger.  After the Merger, BRC still needed to register the Warrant-Exercise Transaction, in order to make it possible for BRC to issue shares of BRC common stock upon a Registerd Holder's decision to exercise their BRC Warrants.  That second transaction could only be registered after the Merger closed and after BRC Warrants were validly issued.  *See* Warrant Agreement § 3.2.  The earlier-filed Form S-4 did not and could not register the Warrant-Exercise Transaction.  *See generally* Form S-4.

Consistent with the process required by the Warrant Agreement, on March 16, 2022 (and as amended on April 18, 2022), BRC filed with the SEC a Form S-1 registration statement registering the Warrant-Exercise Transaction.  Ex. 1 (the "Form S-1"); *see* Ex. 2, April 18, 2022 BRC Correspondence to the SEC.[2]  The Form S-1 became effective on May 4, 2022.  Ex. 3, Notice of Effectiveness.  The Form S-1 registered "the issuance by [BRC] of up to 17,766,641 shares of Class A Common Stock . . . ***that may be issued upon exercise of Warrants*** . . . to purchase Class A Common Stock at an exercise price of $11.50 per share."  Form S-1 at 3 (emphasis added).

---

[2]    References to "Ex. _" are to exhibits to the accompanying Declaration of Byron Pacheco.  The documents that the Court may consider in deciding this motion include "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The exhibits cited herein consist of SEC filings and various documents that were attached to or expressly incorporated into the Complaint by reference.

**F.      Following the Merger, Plaintiff Purchases BRC Warrants and Attempts to Exercise Them Before the Form S-1 Became Effective.**

After the Merger closed on February 9, 2022, Plaintiff purchased BRC Warrants on the open market (*i.e.*, Plaintiff bought BRC Warrants in transactions to which neither BRC nor SilverBox were ever a party).  Compl. ¶ 39.[3]  Plaintiff began those purchases on March 7, 2022, four weeks after the Merger closed.  *Id.*

On March 11, 2022, Plaintiff notified BRC that it wished to exercise its BRC Warrants on a for-cash basis.  Compl. ¶ 40.  BRC promptly responded the same day, informing Plaintiff that its warrants could not yet be exercised because there was not yet an effective Form S-1 registering the Warrant-Exercise Transaction.  Compl. ¶¶ 41-42.

Plaintiff thereafter proceeded to purchase more BRC Warrants on the open market for over three more weeks, until April 6, 2022.  Compl. ¶ 39.  On April 13, 2022, Plaintiff again contacted BRC in another attempt to exercise its warrants.  Compl. ¶ 44.  BRC again explained to Plaintiff that it could not issue shares of BRC common stock in exchange for Plaintiff's BRC Warrants because the Form S-1 was not yet effective.  Compl. ¶ 44.

On April 28, 2022, Plaintiff initiated this lawsuit.

## LEGAL STANDARD

Under Rule 12(b)(6), a pleading may be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6); *see also Next Generation Tech., Inc. v. Jaddou*, 2022 WL 1548037, at *4 (S.D.N.Y. May 12, 2022) (Lehrburger, M.J.).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a district court must "accept

---

[3]      Although BRC contests Plaintiff's allegations, they are accepted as true for purposes of this motion.  *See, e.g., Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).

all factual claims in the complaint as true," *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F. 3d 395, 403 (2d Cir. 2014), a complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558.

## ARGUMENT

Plaintiff's claims must be dismissed for two independent reasons. *First*, BRC did not breach the Warrant Agreement. The sole dispute with respect to Plaintiff's breach of contract claim is whether an effective registration statement for the exercise of BRC Warrants existed at the time of Plaintiff's attempted exercises. The only effective registration statement at that time was the Form S-4, which did not—and could not—register that Warrant-Exercise Transaction. Thus, as a matter of law, because this condition precedent had not been fulfilled, BRC had no duty to permit Plaintiff to exercise, could not legally do so, and did not breach any obligation under the Warrant Agreement by refusing Plaintiff's requests. *Second*, Plaintiff fails to plead that it was a Registered Holder at the times it sought to exercise its BRC Warrants. Because the Warrant Agreement is explicit that Registered Holders are the "sole and exclusive" beneficiaries of the Warrant Agreement, Plaintiff cannot claim a breach related to conduct that took place at a time that it has not pled it was a Registered Holder.

In addition, even if Plaintiff is permitted to prosecute this action despite these two failings of the Complaint, Plaintiff's claims with respect to any BRC Warrants it purchased after March 11, 2022 should be dismissed. The Complaint establishes that as of March 11, 2022, Plaintiff undeniably knew that BRC would not allow exercise of BRC Warrants until the Form S-1 was effective. Plaintiff therefore has failed to adequately plead damages with respect to BRC Warrants it purchased after that date, which cannot legally flow from conduct Plaintiff expected of BRC at the time of its subsequent additional acquisitions.

10

I.     **BRC'S DENIAL OF PLAINTIFF'S WARRANT EXERCISE REQUESTS WAS ENTIRELY CONSISTENT WITH THE WARRANT AGREEMENT.**

Under New York law,[4] a plaintiff bringing a breach of contract claim must establish "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Plaintiff alleges that BRC breached the Warrant Agreement when it refused Plaintiff's attempts to exercise its BRC Warrants. Plaintiff is wrong several times over. Not only does the Warrant Agreement support BRC's approach (including the denial of Plaintiff's requests to exercise), the regulations that govern each of the SEC forms at issue also confirm that BRC correctly refused Plaintiff's attempts to exercise its BRC Warrants. Moreover, BRC could not issue those shares that had not been validly registered; doing so would be unlawful. *See SEC v. Greenstone Holdings, Inc.*, 954 F. Supp. 2d 211, 213 (S.D.N.Y. 2013) ("Section 5 of the Securities Act of 1933 makes unlawful the public sale of unregistered securities.") (citing 15 U.S.C. § 77e). Accordingly, BRC did not breach the Warrant Agreement, and Plaintiff's contract and declaratory judgment claims should be dismissed.

As part of the de-SPAC process through which BRC became a public company, BRC needed to register two distinct transactions with the SEC so as to deliver BRC warrants to public stockholders and make them exercisable. *First*, BRC had to register the Merger and the Merger-Exchange Transaction that took place in connection therewith. Compl. ¶ 19. BRC registered the Merger-Exchange Transaction on the Form S-4. *Second*, BRC needed to register the transaction

---

[4]     The Warrant Agreement is governed by the law of New York. Warrant Agreement § 9.3.

involving the exercise of those warrants, *i.e.*, the Warrant-Exercise Transaction.  BRC registered the Warrant-Exercise Transaction on the Form S-1.

The Warrant Agreement expressly contemplates this two-step approach.  It states that BRC "shall not be obligated to deliver any shares of Common Stock pursuant to the exercise of a Warrant and shall have no obligation to settle such Warrant exercise" unless and until "a registration statement under the Securities Act covering the issuance of the Common Stock underlying the Public Warrants is then effective."  Warrant Agreement § 3.3.2.  The Warrant Agreement also provided that this requirement would be met by BRC filing a registration statement as to the Warrant-Exercise Transaction (the Form S-1), which it would use reasonable best efforts to file as soon as practicable after the Merger.  Warrant Agreement § 7.4.1.  That structure also makes clear that the form registering the Warrant-Exercise Transaction would not be a Form S-4, since any Form S-4 would register the Merger itself, and therefore would be filed before the Merger closed.

BRC complied with that structure.  First it filed the Form S-4 registering the Merger-Exchange Transaction prior to the completion of the Merger.  And later it filed the Form S-1 as soon as practicable after the Merger closed, on March 16, 2022.  *See* Ex. 1.  The Form S-1 registered "the issuance by [BRC] of up to 17,766,641 shares of Class A Common Stock . . . ***that may be issued upon exercise of Warrants*** . . . to purchase Class A Common Stock at an exercise price of $11.50 per share."  Form S-1 at 3 (emphasis added).  Following SEC review and comment, *see* Ex. 2, the Form S-1 became effective on May 4, 2022, Ex. 3.  It was only after that time that BRC Warrants could be exercised, and that BRC would have had a contractual obligation to issue BRC common stock upon the exercise of BRC Warrants.  Warrant Agreement § 3.3.2.

Plaintiff contends that BRC's approach is erroneous in that the later-filed Form S-1 was unnecessary because the earlier-filed Form S-4 had already accomplished an effective registration such that Plaintiff could exercise its BRC Warrants. That is wrong for at least three reasons. *First*, Plaintiff's argument would require the Court to hold that Section 7.4.1 of the Warrant Agreement is mere surplusage, and that there was no reason for the Warrant Agreement to require BRC to use its reasonable best efforts to file a Form S-1 after the Merger. Such an argument is contrary to black letter law regarding contract interpretation. *Second*, that argument would require the Court to hold that the SEC's explicit restrictions on the types of transactions that can be registered on a Form S-4 should be set aside. *Third*, contrary to Plaintiff's claims, the mere listing of the common stock underlying the BRC Warrants on the Form S-4 did not effectively register the Warrant-Exercise Transaction. For the same reasons, as well as because it is entirely duplicative of Plaintiff's breach of contract claim, Plaintiff's declaratory judgment claim should also be dismissed.

### A.    The Warrant Agreement Requirement That BRC File the Form S-1 to Register the Warrant-Exercise Transaction Is Not Surplusage.

BRC's reasoned refusal to issue common stock upon Plaintiff's attempted exercise of its BRC Warrants did not breach the Warrant Agreement because Section 3.3.2 requires that there be an effective Form S-1 registration statement (or equivalent) on file before BRC has any obligation to permit exercise of BRC Warrants. It is black letter law that "[a]ny interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012). The Warrant Agreement must be interpreted "to give full meaning and effect to all of its provisions." *T.M. Real Estate Holdings, LLC v. Stop & Shop Supermarket Co. LLC*, 543 F. App'x 41, 42 (2d Cir. 2013).

Here, the Warrant Agreement expressly contemplates that the registration statement for the Warrant-Exercise Transaction would be filed *after* the completion of the Merger, and such statement may not be effective until months *after* the Merger. *Id.* § 7.4.1. If Plaintiff were correct that the Form S-4, which was filed *before* the Merger closed, could accomplish this registration, that would render the requirements placed on BRC in Section 7.4.1 to be completely meaningless. Such a reading of the Warrant Agreement is contrary to law. *Olin*, 704 F.3d at 99. Plaintiff's claims fail.

### B.    A Form S-4 Can Not Be Used to Register This Type of Warrant-Exercise Transaction.

Plaintiff's claim also fails because a Form S-4 cannot register the Warrant-Exercise Transaction because it does not fall within any of the narrow categories of transactions that a Form S-4 can register. Under SEC regulations, a Form S-4 may only be used to register securities to be issued in four specific situations:[5]

> (a) in a transaction of the type specified in paragraph (a) of Rule 145; (b) in a merger in which the applicable state law would not require the solicitation of the votes or consents of all of the security holders of the company being acquired; (c) in an exchange offer for securities of the issuer or another entity; (d) in a public reoffering or resale of any such securities acquired pursuant to this registration statement; or (e) in more than one of the kinds of transactions listed in paragraphs (a) through (d) registered on one registration statement.

17 C.F.R. § 239.25.[6]  The Warrant-Exercise Transaction does not fall within any of these four specified situations. First, it is not a transaction of the type specified in paragraph (a) of Rule 145, as explained in more detail below. Second, it is not a merger that requires the solicitation of votes

---

[5]   Part (e) is not a distinct situation that permits use of a Form S-4, but simply allows combinations of the first four situations to be filed on a single Form S-4.

[6]   The Merger-Exchange Transaction was properly registered on the Form S-4 because it was "an exchange offer for securities of the issuer or another entity." *Id.* § 239.25(c).

from security holders.  Third, it is plainly not an exchange offer for BRC securities or those of any other entity.  And fourth, it is not a public reoffering or resale of securities acquired pursuant to a Form S-4 registration statement.

Plaintiff contends that the Form S-4 could have registered the Warrant-Exercise Transaction under the first prong of the regulation, part (a), because, transactions that are completed "in connection with business combination transactions" are a type specified in paragraph (a) or Rule 145, Dkt. 18 at 3 (quoting 17 C.F.R. § 230.415(a)(1)(viii)), and, the argument goes, "the attempted (and blocked) exercise of the warrants just 30 days after the completion of the de-SPAC transaction is a continuation of *the same business combination offering* that was registered as part of the de-SPAC transaction itself," *id.* at 2 (emphasis in original).  That is wrong.

The phrase "in connection with" is not so broad as to sweep in transactions that occur many months after a merger has closed.  Instead, that phrase must be interpreted by reference to "limiting principle[s] consistent with the structure of the statute and its other provisions."  *Maracich v. Spears*, 570 U.S. 48, 60 (2013).  Here, the relevant regulations contain a limiting principle: A "business combination" is defined by the Securities Act as "any transaction of the type specified in paragraph (a) of Rule 145 . . . and any transaction involving the acquisition by one issuer, in exchange for all or a part of its own or its parent's stock, of stock of another issuer."  17 C.F.R. § 230.501(d).  Paragraph (a) of Rule 145 defines three types of transactions—reclassifications, mergers of consolidations, and transfers of assets—as business combinations.  17 C.F.R. § 230.145(a).  Per the Preliminary Note to Rule 145, the purpose of the rule is to "make available the protection provided by registration under the Securities Act . . . to persons who are offered securities in a business combination" described in paragraph (a). 17 § C.F.R. § 230.145.  Critically, "***the thrust of the rule is*** that an offer, offer to sell, offer for sale, or sale occurs when there is

submitted to security holders a plan or agreement pursuant to which such holders are required to elect, on the basis of ***what is in substance a new investment decision, whether to accept a new or different security in exchange for their existing security***." *Id.* (emphasis added).

The Warrant-Exercise Transaction was not "in connection with" the Merger; it was a distinct and separate transaction. For example, no stockholder vote is required for exercise of BRC Warrants—the decision if and when to exercise is left to the individual warrantholder. The Warrant-Exercise Transaction was also temporally separate; the BRC Warrants were not exercisable until 30 days *after* the Merger. *See* Warrant Agreement § 3.2. Indeed, Registered Holders of BRC Warrants were not even necessarily the same investors as those who approved the Merger. *Id.* § 5.1 (permitting the transfer of warrants to new Registered Holders). Further, the Warrant-Exercise Transaction was in no way required by or a condition of the Merger's completion. *See* Form S-4 at 7-8 (shareholder proposals concerning the Merger do not contain a proposal regarding Warrant-Exercise Transactions); *id.* at 14 (describing the Merger without reference to the Warrant-Exercise Transaction). A Form S-4 could not be used to register such a transaction that has no connection to a business combination. Plaintiff's claim fails.

### C. The Form S-4 Did Not Purport to Register the Warrant-Exercise Transaction.

Despite the fact that a Form S-4 cannot lawfully be used to register the Warrant-Exercise Transaction, Plaintiff claims that it did so nevertheless. Dkt. 18 at 2 ("[A]s the Form S-4 made clear on its face, the securities BRC offered in the de-SPAC transaction included the securities issued at closing *as well as the ongoing offering of the exercise of the warrants*."); Compl. ¶ 24. Plaintiff is again wrong.

Although it is correct that the Form S-4 listed the underlying shares of BRC common stock, it did so not to register them for warrant-exercise purposes, but instead because doing so is required

by the SEC's Compliance and Disclosure Interpretations ("C&DI").  As their name suggests, those interpretations relate to the information that needs to be disclosed in an SEC filing, and do not purport to alter the Securities Act or the regulations promulgated thereunder as to what forms can be used to register what securities.  Here, the specific disclosure requirement is that when warrants exercisable within one year are being registered, "the underlying securities [must] be registered at that time."   SEC, C&DI, *Securities Act Sections*, Question 139.01 (Nov. 13, 2020), https://www.sec.gov/corpfin/securities-act-sections.

BRC's listing of the underlying common stock on the Form S-4 ensured BRC's compliance with this disclosure requirement.  Form S-4 at 2.  It did not register the Warrant-Exercise Transaction.  Even the *registration* of the underlying shares on the Form S-4 could not register the Warrant-Exercise Transaction.  That is because "[r]egistration of a security is 'transaction-specific,' in that the requirement of registration applies to each act of offering or sale."  *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) (citing *SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998)).  Thus, the "proper registration of a security at one stage does not necessarily suffice to register subsequent offers or sales of that security."  *Id*.

Here, even if the Form S-4 listing of the shares underlying the BRC Warrants is deemed to be a registration of those shares, it is not a registration of the Warrant-Exercise Transaction, which the Form S-4 could not have, and does not purport to have, registered.  Only the Form S-1 registered the Warrant-Exercise Transaction.  *Compare* Ex. 1 at 1 (registering "17,766,641 Shares of Class A Common Stock **_Issuable Upon the Exercise of Warrants_**") (emphasis added), *with* Form S-4 at 3 (registering "17,766,667 SHARES OF CLASS A COMMON STOCK **_UNDERLYING WARRANTS_** OF BRC INC.") (emphasis added).  And the Form S-4 itself further makes clear that, following the closing of the Merger, BRC would file an additional registration

statement "covering the shares of Class A common stock issuable upon exercise of the warrants." Form S-4 at 313.  Plaintiff's claim fails and should be dismissed.[7]

### D.  Plaintiff's Duplicative Declaratory Judgment Claim Should Be Dismissed.

Plaintiff's claim for declaratory judgment is premised on the same allegations as its breach of contract claim, and seeks a declaration that "the Warrants were registered within the meaning of the Securities Act of 1933 as of January 13, 2022 when the Form S-4 was declared effective by the SEC and that, therefore, these Warrants should have been exercisable on March 11, 2022." Compl. ¶ 48.  Because Plaintiff's declaratory judgment claim is indistinguishable from its breach of contract claim, it should be dismissed on the merits for the same reasons.  *See Mariah Re Ltd. v. Am. Family Mut. Ins.*, 52 F. Supp. 3d 601, 622-23 (S.D.N.Y. 2014) ("[Plaintiff]'s declaratory judgment claim must meet the same fate as its contract claims.").

Separately and independent of the merits, Plaintiff's declaratory judgment claim should be dismissed as duplicative.  It is premised on the same allegations as the breach of contract and seeks resolution of the same issues.  As a result, "[t]he claim for declaratory judgment would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim." *Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021).  "Thus, a declaratory judgment would serve no purpose." *Id.* (dismissing declaratory judgment claim as duplicative of breach of contract claim); *see Mariah Re*, 52 F. Supp. 3d at 623

---

[7]   Plaintiff also implies that BRC told it that the warrants were in fact exercisable by referring to emails BRC's VP of Investor Relations, Tanner Doss, purportedly sent to a different investor. Compl. ¶¶ 36-38.  Plaintiff does not allege when it received these emails, which were to an investor named "Todd," who has no apparent relationship to Plaintiff, *see* Compl. ¶ 37, nor how these emails are relevant to the interpretation of the SEC regulations, which, as discussed above, prohibited the registration of the Exercise Transaction on the Form S-4.  Neither Doss's emails nor his understanding of federal securities law are relevant.  *See Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("The meaning of a statute, for example, cannot vary from cases to case depending on concessions a party may have made.").

("[D]eclaratory relief in this case would be wholly superfluous, as the resolution of [Plaintiff]'s other claims would settle the issues for which declaratory judgment is sought." (citation omitted)).

## II.   PLAINTIFF FAILS TO PLEAD THAT IT WAS A REGISTERED HOLDER WHEN IT SOUGHT TO EXERCISE ITS BRC WARRANTS.

It is axiomatic that a plaintiff may only enforce a contract if it is "in privity of contract with the defendant or is a third-party beneficiary of the contract." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 49 (2d Cir. 2014). The contract that Plaintiff claims BRC breached is the Warrant Agreement. Compl. ¶ 54. But Plaintiff is not a party to that agreement; the only parties are BRC (as successor to SilverBox) and Continental. *See* Warrant Agreement at 2. And Plaintiff agrees that the "sole and exclusive" third party beneficiaries of the Warrant Agreement are Registered Holders of BRC Warrants. Compl. ¶ 17; Warrant Agreement §§ 2.3.2, 9.5.

The Warrant Agreement is also explicit that "[n]othing in this Agreement shall be construed to confer upon, or give to, any person or corporation other than the parties hereto and the Registered Holders of the Warrants any right, remedy, or claim under or by reason of this Agreement." Warrant Agreement § 9.5. The Second Circuit, applying New York law, has held that such a "negating clause" is enforceable and acts to bar suit by anyone other than the parties to the agreement and express third-party beneficiaries. *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) ("[T]he effectiveness of a negating clause to preclude third-party beneficiary status is well-established."); *see also Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir. 1988) ("Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling."). Since the "parties' intention to benefit the third-party must be apparent from the contract," a negating clause "specifically foreclose[s]" recovery. *India.Com*, 412 F.3d at 321. Thus, the only third parties with enforceable rights are Registered

Holders.  *See also Johnson v. Roberts*, 1992 WL 151820, at *6 (D.D.C. June 9, 1992) ("The corporation ought not to be involved in possible misunderstandings or clashes of opinion between the nonregistered and registered holders of shares.  It may rightfully look to the corporate books as the sole evidence of membership." (quoting *Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 589 (Del. 1945))).

In addition, that Registered Holder status must be determined by reference to the time of the alleged breaches, here March 11, 2022 and April 13, 2022.  That is because it is black letter law that "the rights of the parties were fixed at the time of the [alleged] breach."  *Fishman v. Bricker*, 211 N.Y.S.2d 620, 621 (1st Dep't 1961); *see also Ezra v. Weitz & Luxenberg, P.C.*, 794 F. App'x 27, 28-29 (2d Cir. 2019) ("Under New York law, a cause of action for breach of contract accrues . . . when the contract is breached."); *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993) (same).

Here, the Complaint fails to establish that Plaintiff was a Registered Holder at the time of the alleged breaches.  *See* Compl. ¶ 52 (pleading that Plaintiff was a Registered Holder, but failing to identify **when** Plaintiff became a Registered Holder).  The Complaint therefore fails to adequately plead that Plaintiff has enforceable rights under the Warrant Agreement.

This case is like *Sudarsan v. Seventy Seven Energy Inc.*, 2018 WL 1088004 (S.D.N.Y. Feb. 6, 2018).  In *Sudarsan*, this Court encountered allegations that a company breached a warrant agreement by prematurely cancelling the warrants upon the completion of a merger.  *Id.* at *3.  As here, the warrant agreement in *Sudarsan* limited beneficiaries to registered warrant holders, including a negating clause that is almost identical to Section 9.5 of the Warrant Agreement.  *Id.* at *2.[8]  And the *Sudarsan* complaint also failed to establish that the plaintiff was a registered holder

---

8    The negating clause in *Sudarsan* read:

at the time of the alleged breaches.  *See id.* at *4 ("Plaintiff is not a 'party hereto' nor has he alleged that he is a Registered Holder.").  This Court dismissed those claims, reasoning that the negating clause "clearly prohibits third parties like Plaintiff from having enforceability rights under the Warrant Agreement."  *Id.* at *4.  The same reasoning applies here.

Dismissal is also compelled by the plain language of the Warrant Agreement, which limits the exercise right itself to Registered Holders alone.  Warrant Agreement § 2.3.2 ("[T]he Company and the Warrant Agent may deem and treat the [Registered Holder] as the absolute owner of such Warrant . . . for the purpose of any exercise thereof . . . .").  Absent an allegation that Plaintiff either was that Registered Holder, or was authorized by that Registered Holder to pursue these claims, the Complaint fails to establish Plaintiff's standing to pursue its claims.  *See Sudarsan*, 2018 WL 1088004, at *5 ("[C]ourts have allowed plaintiffs who lack standing because they are merely beneficial owners or holders of notes, and not registered holders, to acquire standing by receiving authorization to sue from the registered holder."); *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 476 (S.D.N.Y. 2017) (similar); *Diverse Partners, LP v. AgriBank, FCB*, 2017 WL 4119649, at *5 (S.D.N.Y. Sept. 14, 2017).

The Complaint contains no allegation that Plaintiff was the Registered Holder of the relevant BRC Warrants on March 11, 2022 or April 13, 2022.  The Complaint also contains no

---

Nothing in this Warrant Agreement expressed and nothing that may be implied from any of the provisions hereof is intended, or shall be construed, to confer upon, or give to, any Person or corporation other than the parties hereto and the Registered Holders any right, remedy, or claim under or by reason of this Warrant Agreement or of any covenant, condition, stipulation, promise or agreement hereof, and all covenants, conditions, stipulations, promises and agreements in this Warrant Agreement contained shall be for the sole and exclusive benefit of the parties hereto and their successors and of the Registered Holders.

2018 WL 1088004, at *2.

allegation that the Registered Holder of the relevant BRC Warrants has authorized Plaintiff to pursue its claims.  As a result, the Complaint must be dismissed.  *Sudarsan*, 2018 WL 1088004, at *5.

## III.   PLAINTIFF CANNOT SHOW ANY DAMAGES FOR WARRANTS ACQUIRED AFTER MARCH 11, 2022.

Plaintiff cannot plead damages for BRC Warrants that it purchased after March 11, 2022, and Plaintiff's claim relating to such BRC Warrants should be dismissed.  "[T]he party who suffers damage by reason of [a] breach has a duty to minimize the damages" and may not recover for "any unnecessary increase in damages due to the failure of the plaintiff to avoid them."  *U.S. West Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1402 (S.D.N.Y. 1993).  A duty to mitigate arises once "it appears that the breaching party has abandoned or repudiated his obligations under the contract."  *U.S. v. Russell Elec. Co.*, 250 F. Supp. 2, 20 (S.D.N.Y. 1965).  "Once it has been determined that a plaintiff had a duty to mitigate damages, it must be ascertained whether the plaintiff's action taken in response to the defendant's conduct was reasonable."  *Van Syckle v. C.L. King & Assocs., Inc.*, 822 F. Supp. 98, 102 (N.D.N.Y. 1993).  Although this doctrine of avoidable consequences or duty to mitigate is an affirmative defense, such defenses "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Here, Plaintiff's failure to mitigate is facially apparent.  The Complaint alleges that BRC breached the Warrant Agreement on March 11, 2022, when BRC explained to Plaintiff that it could not exercise its warrants.  Compl. ¶¶ 41–42. Even if BRC's actions constituted a breach (they did not), Plaintiff immediately was on notice of the alleged breach and had an obligation to avoid any unnecessary increase in damages.  *See U.S. West Fin. Servs*, 810 F. Supp. at 1402.  Instead of

mitigating, Plaintiff purchased *more* BRC warrants, up and until April 6, 2022.  Compl. ¶ 39. Plaintiff did so with full knowledge and awareness that BRC (and the securities laws) would not permit the exercise of those warrants until the Form S-1 became effective.  Compl. ¶ 42.  Plaintiff's attempt to claim damages from BRC's refusal to permit exercise of those newly acquired BRC Warrants on April 13, 2022 is fundamentally inconsistent with both its expectations and its mitigation obligations.  To the extent Plaintiff's breach of contract claim is premised on BRC Warrants acquired after March 11, 2022, it should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: New York, New York
July 29, 2022

**KIRKLAND & ELLIS LLP**

/s/ *Stefan Atkinson*

Stefan Atkinson, P.C.
Byron Pacheco
Jacob M. Rae
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com
jacob.rae@kirkland.com

*Attorneys for Defendant BRC, Inc.*