UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TANG CAPITAL PARTNERS, LP,

            Plaintiff,

   v.

BRC INC.,

            Defendant.

Case No.: 1:22-cv-03476-RWL

**ECF Case**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**KIRKLAND & ELLIS LLP**
Stefan Atkinson, P.C.
Byron Pacheco
Jacob M. Rae
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com
jacob.rae@kirkland.com

*Attorneys for Defendant BRC Inc.*

**TABLE OF CONTENTS**

|     |     |     | Page |
| --- | --- | --- | ---: |
| I.  | BRC DID NOT BREACH THE WARRANT AGREEMENT. | | 1 |
|     | A. | The Warrant Agreement Requires a Post-Closing Registration Statement. | 1 |
|     | B. | The Form S-4 Cannot Lawfully Register the Warrant-Exercise Transaction. | 3 |
|     | C. | The Form S-4 Did Not in Fact Register the Warrant-Exercise Transaction. | 6 |
|     |     | 1. *On Its Face, the Form S-4 Did Not Purport to Register the Warrant-Exercise Transaction.* | 6 |
|     |     | 2. *Rule 401(g) Is Irrelevant in This Breach of Contract Case.* | 7 |
| II. | PLAINTIFF LACKS CONTRACTUAL STANDING. | | 8 |
| III.| PLAINTIFF'S CLAIMS REGARDING WARRANTS *PURCHASED* AFTER MARCH 11, 2022 SHOULD BE DISMISSED. | | 10 |
| CONCLUSION | | | 10 |

# **TABLE OF AUTHORITIES**

**Cases**

Page(s)

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................10

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009)......................................................................10

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*,
   918 N.Y.S.2d 73 (1st Dep't 2011) ..............................................................................9

*Dormitory Auth. v. Samson Constr. Co.*,
   94 N.E.3d 456 (N.Y. 2018).........................................................................................9

*Herman & Maclean v. Huddleston*,
   459 U.S. 375 (1983)....................................................................................................4

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*,
   747 F.3d 44 (2d Cir. 2014).........................................................................................8

*India.Com, Inc. v. Dalal*,
   412 F.3d 315 (2d Cir. 2005).......................................................................................9

*Lovati v. Petróleos de Venezuela, S.A.*,
   2021 WL 5908953 (S.D.N.Y. Dec. 14, 2021) ...........................................................9

*Maracich v. Spears*,
   570 U.S. 48 (2013)......................................................................................................4

*Optanix, Inc. v. Alorica Inc.*,
   2021 WL 2810060 (S.D.N.Y. July 6, 2021) ..............................................................8

*Souratgar v. Lee Jen Fair*,
   818 F.3d 72 (2d Cir. 2016).......................................................................................10

*Sudarsan v. Seventy Seven Energy Inc.*,
   2018 WL 1088004 (S.D.N.Y. Feb. 6, 2018)..............................................................9

*Tasini v. N.Y. Times Co.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002)........................................................................8

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991).....................................................................................3

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Other Authorities**

17 C.F.R. § 230.145 ...................................................................................................................... 4

17 C.F.R. § 230.401(g)(1) ............................................................................................................. 7

17 C.F.R. § 230.415(a)(1)(viii) ..................................................................................................... 4

17 C.F.R. § 239.25 ........................................................................................................................ 3

49 Fed. Reg. 20833 (May 17, 1984) ............................................................................................. 5

50 Fed. Reg. 18990 (May 6, 1985) ............................................................................................... 5

This remains a simple contract case that presents a pure issue of law. BRC has presented clear and compelling legal authority showing that a condition precedent to Plaintiff's exercise of its BRC Warrants was the filing of a post-Merger registration statement covering the Warrant-Exercise Transaction and that the Form S-4 could not register that transaction as a matter of law, nor did it purport to do so. Faced with these inescapable conclusions, Plaintiff resorts to desperate measures to mask the absence of support for its argument, submitting a purported expert report addressing legal issues on a Rule 12(b)(6) motion, a Rule that permits no consideration of extraneous material. While the report is improper, it also fails on its merits: It distorts the regulatory history of Form S-4 to add language that is nowhere in the regulations, based only on the *ipse dixit* of a so-called "expert" whose report identifies no experience of any kind with SPAC-related transactions. Plaintiff's gamesmanship must be rejected, and its claims dismissed.

Independent of Plaintiff's misguided legal analysis, there are two further bases for dismissal. *First*, Plaintiff lacks contractual standing. Only "registered holders" can assert claims under the Warrant Agreement, and Plaintiff has not pled that it was a registered holder when the alleged breaches occurred. Despite being on notice by BRC of this failure months ago, Plaintiff sat on its hands as the deadline to amend its Complaint passed, making no attempt to remedy this deficiency. *Second*, Plaintiff cannot plead damages for warrants purchased *after* March 11, 2022, when BRC first rejected Plaintiff's exercise attempt as premature because the Form S-1 was not yet effective. Plaintiff cannot sidestep its burden to plead each and every element of a contract claim, including damages, by mischaracterizing BRC's argument as an affirmative defense.

## I. BRC DID NOT BREACH THE WARRANT AGREEMENT.

### A. The Warrant Agreement Requires a Post-Closing Registration Statement.

The Warrant Agreement states that BRC "shall not be obligated to deliver any shares of Common Stock pursuant to the exercise of a Warrant and shall have no obligation to settle such

Warrant exercise" unless and until "a registration statement under the Securities Act covering the issuance of the Common Stock underlying the Public Warrants is then effective."  Warrant Agreement § 3.3.2.  In other words, BRC had no obligation to (and in fact could not) accept Plaintiff's exercise until there was an effective registration statement (a Form S-1) covering the Warrant-Exercise Transaction.  Thus, BRC did not breach the Warrant Agreement.  Plaintiff argues that the Court should "reject" § 3.3.2's requirement for two reasons.  Both are wrong.

*First,* Plaintiff argues that the Warrant Agreement does not explicitly require that the registration statement be filed on Form S-1.  Opp'n at 12, 14.  In support, Plaintiff identifies circumstances where no registration statement would be filed prior to the Form S-1, or where other SEC forms could be used to register the exercise of warrants.  That is irrelevant.  That other forms could have been used if circumstances permitted does not negate the fact that Section 7.4.1 of the Warrant Agreement requires the filing of the required registration statement "*after* the closing of the business combination."  In short, the Warrant Agreement recognized that a Form S-4, which is necessarily filed *before* closing, would not satisfy Section 7.4.1.  *See* Br. at 13–14.[1]

*Second*, Plaintiff incorrectly construes Section 7.4.1 as permitting use of a Form S-4 to register a post-Merger transaction involving the exercise of warrants.  Opp'n at 13–14.  Section 7.4.1 states that BRC "*shall* use its reasonable best efforts to file with the [SEC] a registration statement for the registration, under the Securities Act of the shares of Common Stock issuable upon exercise of the Warrants."  Warrant Agreement § 7.4.1 (emphasis added).  However, Section 7.4.1 also contemplates that such a registration statement would not be effective until up to sixty business days *after* closing.  Warrant Agreement § 7.4.1.  That would make no sense if the Form

---

[1] Plaintiff's protest that this would be implying terms that are not specifically included in the contract is unavailing.  *See* Opp'n at 12–13.  BRC's argument is that this Court should not adopt a reading of Section 3.3.2 that would render Section 7.4.1 superfluous.  Br. at 13–14.

S-4 could accomplish the required registration. The Warrant Agreement plainly contemplates that a business combination transaction would be completed utilizing a Form S-4, and a subsequent registration statement (typically a Form S-1) would register the exercise of the Warrants.

### B. The Form S-4 Cannot Lawfully Register the Warrant-Exercise Transaction.

A Form S-4 cannot register the Warrant-Exercise Transaction because that transaction does not fall within the four categories specified by the Form S-4's governing regulations. *See* Br. at 14–16; 17 C.F.R. § 239.25. Plaintiff offers several arguments to the contrary; each fails.

*First*, Plaintiff argues that there exists "clear legal authority and longstanding SEC practice" proving that a Form S-4 can be used to register "the offer of stock issuable upon exercise of the warrants." *See* Opp'n at 14–15. But Plaintiff cites no case, statute, rule, or other authority evidencing this supposed "clear legal authority and longstanding SEC practice." None exists. So Plaintiff improperly submitted a purported expert report.[2] Notably, that report also fails to identify the basis for any such clear authority. Having located no actual authority, Plaintiff perversely claims that BRC breached the Warrant Agreement by failing to take action (permitting the exercise of warrants) that Plaintiff must concede is not expressly permitted by the securities laws. In other words, Plaintiff seeks to hold BRC liable for taking care to avoid violating the securities laws.

*Second*, Plaintiff argues that the Warrant-Exercise Transaction is covered by Form S-4 because it is "a transaction of the type specified in paragraph (a) of Rule 145." Opp'n at 15 (quoting 17 C.F.R. § 239.25). However, Rule 145(a) does not cover offers and sales of "securities related to a 'merger or consolidation.'" *Id.* Instead, Rule 145(a) covers the offer or sale of

---

[2] This Court should not consider that expert report, as addressed more fully in the simultaneously filed motion to strike. Plaintiff's authority purportedly forgiving its desperate and improper use of an expert report on a motion to dismiss is a post-trial criminal appeal holding that "expert testimony may help a jury understand unfamiliar terms and concepts[, but i]ts use must be carefully circumscribed to assure that the expert does not usurp" a judge's role in determining "the applicable law." *United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir. 1991).

3

securities where that offer or sale must be approved by "vote or consent" of the securities holders. 17 C.F.R. § 230.145(a). The exercise of BRC Warrants did not require a security-holder vote; it is therefore not covered by Rule 145(a). *See* Br. at 15–16.

*Third*, Plaintiff argues that under Rule 415, Form S-4 could register the Warrant-Exercise Transaction because that transaction is supposedly "in connection with" the Merger. Opp'n at 15–16. Plaintiff's reliance on Rule 415's "in connection with" language is misplaced. Rule 415 permits delayed or continuous offerings of "[s]ecurities which are to be issued in connection with business combination transactions." 17 C.F.R. § 230.415(a)(1)(viii). As Plaintiff concedes, "in connection with" is not limitless; it "'must be interpreted by reference to 'limiting principle[s] consistent with the structure of the statute and its other provisions.'"" Opp'n at 17 (quoting Br. at 15 (quoting *Maracich v. Spears*, 570 U.S. 48, 60 (2013))). To that end, as its Preliminary Note explains, Rule 145 (and thus Form S-4) is concerned with investment decisions that are "submitted to security holders" for a vote. 17 C.F.R. § 230.145. Here, however, each warrant holder is entitled to decide whether to exercise a warrant individually, without a vote by all "security holders," whenever such warrant becomes exercisable. And here, warrant exercise could occur no sooner than 30 days *after* the completion of the Merger. Warrant Agreement § 3.2. In other words, rather than being "in connection with" the Merger, the Warrant-Exercise Transaction is meant to occur long after the Merger, placing it plainly outside the scope of Rule 415 and Form S-4.

Despite conceding that the "limiting principle" used to interpret "in connection with" must be derived from its statutory and regulatory context, Plaintiff argues that this Court should look to a different Rule (Rule 10b-5), promulgated under a different statute (the Exchange Act rather than the Securities Act), with a different purpose. Opp'n at 15–17. That makes no sense. Rule 10b-5 is "a 'catchall' antifraud provision." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983).

4

In that context "in connection with" has been interpreted flexibly. *See* Opp'n at 17. Form S-4, on the other hand, is expressly limited to only certain specified transaction types subject to stockholder votes. Br. at 14–16. Accordingly, the interpretation of "in connection with" in the context of Rule 415 and Form S-4 should be limited by that focus on transactions subject to stockholder votes. Here, there is no dispute that the Warrant-Exercise Transaction did not require a stockholder vote. By contrast, the earlier Merger-Exchange Transaction (exchanging SilverBox warrants for BRC Warrants as part of the de-SPAC) did require stockholder approval and was therefore properly registered on the Form S-4. *See* Form S-4 at 3.[3]

*Fourth*, Plaintiff argues that Form S-4's regulatory history shows that it may register "all securities to be issued in a Rule 145(a) transaction, merger, or exchange tender offer, any reoffers or sales of such securities, and any other transaction that would be required to be registered at the same time . . . such as exercises of warrants . . . ." Opp'n at 18–19. The regulatory history says no such thing. The Form S-4 proposing rule states only that "[i]n addition to Rule 145 transactions and exchange offers, the proposed Form also would be available for the registration, on one registration statement, of securities to be issued in several such transactions and for reoffers or resales of the securities so registered." 49 Fed. Reg. 20833, 20835 (May 17, 1984). It says nothing about "other transactions," including "exercise of warrants." The language adopting Form S-4 similarly says nothing about "other transactions" or warrant exercise, but states that "Form S-4 is available for the registration of securities in connection with Rule 145 transactions as well as other mergers, exchange offers and reoffers or resales of securities registered on the Form." 50 Fed.

---

[3] Plaintiff also argues that because the BRC Warrants were part of "the merger consideration," the exercise of those warrants is "tether[ed]" to the Merger such that registration of that exercise on a Form S-4 is permitted. Opp'n at 16. That "tethering" theory fails. The issuance of shares to PIPE investors is undeniably *relevant* to investors considering the Merger, but the SEC rejected registration of that transaction on the Form S-4. *See* Compl. ¶¶ 27–30.

5

Reg. 18990, 18993 (May 6, 1985). Indeed, Plaintiff's need to make up words that nowhere appear in the relevant regulatory history only highlights the weakness of its position.[4]

### C. The Form S-4 Did Not in Fact Register the Warrant-Exercise Transaction.

In the face of clear authority that the Form S-4 could not, as a matter of law, register the Warrant-Exercise Transaction (Br. at 17–18), Plaintiff insists that the Form S-4 did so anyway. *First*, Plaintiff argues that the Form S-4 "made clear on its face" that it registered the Warrant-Exercise Transaction. Opp'n at 19. The opposite is true. *Second*, Plaintiff argues that Rule 401(g) (a safe harbor for certain incorrect registrations) operated to convert the Form S-4 into an effective registration of the Warrant-Exercise Transaction. *Id.* at 20–21. That too is wrong.[5]

> 1. *On Its Face, the Form S-4 Did Not Purport to Register the Warrant-Exercise Transaction.*

Plaintiff scoured the 639-page Form S-4 and cherry-picked snippets to argue that the Form S-4 did in fact register the Warrant-Exercise Transaction. For example, the Form S-4 lists "common stock underlying warrants" as one of three "groups of securities" registered with respect to the (earlier, separate) Merger-Exchange Transaction as well as a reference that described the nature of the BRC Warrants. Opp'n at 19 (citing Form S-4 at 3, 274). Plaintiff also points to the Form S-4's "calculation of registration fee" chart, a Paul Hastings opinion letter, and the NYSE's listing approval as evidence. *See* Opp'n at 20–21. However, none of those snippets change the purpose of the Form S-4—to register the Merger-Exchange Transaction. The Form S-4 prospectus

---

[4] Plaintiff also argues that C&DI 139.01's requirement that "underlying *securities*" be registered on the Form S-4, means that they are registered for all purposes, including exercise. *See* Opp'n at 17–18 (emphasis added). But C&DI 139.01 does not require that registration to cover any specific transactions, let alone ones outside the scope of the registration form used. Br. at 16–17. Here, the underlying securities were registered for purposes of the Merger-Exchange Transaction, not the Warrant-Exercise Transaction, which is all that C&DI 139.01 requires.

[5] Plaintiff's unpled additional "evidence" of purported statements by BRC to unidentified purported warrant holders is improper and, in any event, irrelevant. *See* Br. at 18 n.7.

lays out the transactions it is registering, which include the Merger-Exchange Transaction, *see* Form S-4 at 3 (stating that the registration relates to the "SilverBox Merger," and describing the warrant transaction that it registers as one whereby "each warrant of SilverBox" will be "converted into the right to receive one [BRC] warrant"), but not the Warrant-Exercise Transaction.  In contrast, the Form S-1 does register the Warrant-Exercise Transaction and shows what such registration looks like.  *See* Ex. 1 at 3 (registering "the issuance of [common stock] that may be issued upon exercise of Warrants," and for which "$11.50 per share" will be paid).

Moreover, the "calculation of registration fee" chart simply describes the ultimate purpose of the underlying shares; it does not state that the Form S-4 is registering the *transaction* whereby those securities will later be issued.  Form S-4 at 2.  Similarly, no part of Paul Hastings' opinion letter or the NYSE listing approval purport to register the Warrant-Exercise Transaction.  In fact, the Paul Hastings opinion letter reminds warrant holders that the BRC Warrants will be "enforceable against the Company *in accordance with their terms*."  Form S-4 at 636 (emphasis added).  Paul Hastings does not comment upon the effectiveness of the Form S-4 with respect to the Warrant-Exercise Transaction.  Likewise, that common shares—whose issuance, sale, and resale was registered on the Form S-4 in a manner that had no connection to warrants, *see* Form S-4 at 3—were approved for listing on the NYSE says nothing about their registration status vis-a-vis the Warrant-Exercise Transaction.

### 2. *Rule 401(g) Is Irrelevant in This Breach of Contract Case.*

Plaintiff argues that "Rule 401(g) eviscerates any claim by BRC that [the] Form S-4" did not register the Warrant-Exercise Transaction.  Opp'n at 21.  Rule 401(g) is a distraction.  It provides that the *erroneous* use of an improper form "is deemed filed on the proper registration form" unless the SEC objects prior to the effective date.  17 C.F.R. § 230.401(g)(1).  Rule 401(g) cannot convert a form that does not purport to register a particular transaction (here, the Warrant-

7

Exercise Transaction) into one that does so. And the Form S-4 was not improper; it was properly used to register transactions connected to the Merger, including the Merger-Exchange Transaction.

Furthermore, even if Rule 401(g)'s safe harbor could apply here—it cannot—that does not alter the contractual requirement that there be a current prospectus with respect to the Warrant-Exercise Transaction. Warrant Agreement § 3.3.2(b). But the Form S-4 prospectus does not address the Warrant-Exercise Transaction, *supra* § I.C.1, and Plaintiff does not argue that it does.

Critically, even if one strained to read the Form S-4 as covering the Warrant-Exercise Transaction, it cannot be the law that BRC, a publicly traded company, must risk violating the securities laws in hopes that Rule 401(g)'s safe harbor will one day soften the consequences. Instead, the prudent course for any public company is simply to follow the letter of the contract and avoid violating the securities laws in the first place. The Court should not disregard the Form S-4's governing regulations, the terms of the Warrant Agreement, or urge BRC to risk violating federal securities laws all so that Plaintiff can achieve an unearned supposed windfall.[6]

## II.  PLAINTIFF LACKS CONTRACTUAL STANDING.

Only a party to a contract or a third-party beneficiary has standing to enforce that contract. *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 49 (2d Cir. 2014). Plaintiff's failure to plead contractual standing warrants dismissal. *See* Br. at 19-22.[7]

---

[6] For the same reasons discussed above, *supra* § I, Plaintiff's declaratory judgment claim fails. And because Plaintiff concedes that both its claims "center on the [same] question," Opp'n at 25, its "declaratory judgment [claim] would serve no purpose." *Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021). Plaintiff argues that declaratory relief could clear up "confusion" for *other* warrant holders, but Plaintiff "lack[s] standing to bring claims on behalf of other[s]." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 357 (S.D.N.Y. 2002).

[7] Plaintiff's argument that it "attempted to exercise its Warrants . . . [as] a record holder" is irrelevant. Opp'n at 4. Plaintiff has pled no such fact, and this Court cannot credit lawyer argument as fact. *See* MTS at 3. In any event, Plaintiff's reference is telling in what it does not claim—that Plaintiff was actually a Registered Holder at the time of either exercise attempt.

*First*, Plaintiff argues that "[c]ourts regularly determine standing at the time of the lawsuit." Opp'n at 22. But Plaintiff's sole cited authority *agrees* with BRC that only "registered holder[s] of the notes" have contractual standing. *Lovati v. Petróleos de Venezuela, S.A.*, 2021 WL 5908953, at *2 (S.D.N.Y. Dec. 14, 2021). *Lovati* also held that beneficial owners have standing only "if authorized by the registered holder," which "authorization need not pre-date the filing of this lawsuit." *Id.* Significantly, the plaintiff in *Lovati* obtained authorization and moved to amend. *Id.* Here, by contrast, Plaintiff—admittedly only a beneficial owner when it first attempted to exercise, *see* Opp'n at 4—has been on notice of this issue since June 10, 2022, Dkt. 17 at 3 n.3, and did nothing even as the August 15, 2022 deadline to amend its pleading passed, Dkt. 26 ¶ 7.b. With no excuse for this failure, Plaintiff's Complaint should be dismissed with prejudice. *See Sudarsan v. Seventy Seven Energy Inc.*, 2018 WL 1088004, at *5, *9 (S.D.N.Y. Feb. 6, 2018).[8]

*Second*, Plaintiff argues that a non-party may enforce a contract when it is "the only one who could recover for the breach." Opp'n at 23. But where, as here, a contract expressly and exclusively identifies its third-party beneficiaries, that "is decisive" as to contractual standing. *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005). Plaintiff claims *India.Com* is distinguishable because that plaintiff was not "an intended beneficiary." Opp'n at 23 n.18. However, Plaintiff concedes that "Registered Holders" are the Warrant Agreement's "sole and exclusive benefi[ciaries]," Opp'n at 7, and it has not pled that it was a Registered Holder when it sought to exercise.[9] By Plaintiff's own logic, it cannot enforce the Warrant Agreement because it

---

[8] Plaintiff's argument that courts permit "authorization post-dating the filing of the lawsuit" is a red herring. Opp'n at 22. Plaintiff has offered no amendment pleading such authorization.

[9] Plaintiff's other cases are not to the contrary. *See Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460 (N.Y. 2018) (summary judgment granted due to lack of contractual standing); *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*, 918 N.Y.S.2d 73, 74 (1st Dep't 2011) ("the agreement was plainly intended to give [plaintiffs] enforceable rights").

was not an intended beneficiary when it sought to exercise.

### III. PLAINTIFF'S CLAIMS REGARDING WARRANTS *PURCHASED* AFTER MARCH 11, 2022 SHOULD BE DISMISSED.

Under New York law, damages are a necessary element of a breach of contract claim. *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608–09 (S.D.N.Y. 2009) (dismissing claim for failure to plead damages). Here, Plaintiff has not plausibly pled damages for Warrants *purchased* after March 11, 2022, the date Plaintiff pleads BRC clearly explained that it could not permit exercise of Plaintiff's warrants. Br. at 22–23. Plaintiff's arguments to the contrary all fail.

*First*, Plaintiff mischaracterizes BRC's argument as an affirmative defense on mitigation of damages that cannot be decided on a motion to dismiss. Opp'n at 23–24.[10] But BRC is not arguing fact issues as to the *quantum* of damages. Instead, there cannot plausibly be *any* damages related to warrants Plaintiff purchased *after it knew* BRC's position on exercise. It is Plaintiff's burden, not BRC's to plead "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It has not done so.

*Second*, Plaintiff claims that, where "circumstances indicate that the breaching party intends to perform," a plaintiff may rely on those circumstances. Opp'n at 23–24. But the Complaint is clear that BRC told Plaintiff it could not exercise, and why, on March 11, 2022. Compl. ¶¶ 41–42. Plaintiff's "repeated efforts to cause BRC to change course," Opp'n at 24, highlight that BRC had already made crystal clear its "course." *Id.*

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[10] Plaintiff also argues that mitigation is unavailable based on the doctrine of "unclean hands." Opp'n at 23. Underscoring the lack of support for this proposition, Plaintiff cites only a Hague Convention case on fee-shifting. *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016).

| | |
|---|---|
| Dated: September 13, 2022 | **KIRKLAND & ELLIS LLP** |
| | |
| | /s/ *Stefan Atkinson* |
| | Stefan Atkinson, P.C. |
| | Byron Pacheco |
| | Jacob M. Rae |
| | KIRKLAND & ELLIS LLP |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | Telephone: (212) 446-4800 |
| | stefan.atkinson@kirkland.com |
| | byron.pacheco@kirkland.com |
| | jacob.rae@kirkland.com |
| | |
| | *Attorneys for Defendant BRC, Inc.* |