**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/2022

---

TANG CAPITAL PARTNERS, LP,

               Plaintiff,

    v.

BRC INC.,

               Defendant.

Case No. 22-cv-03476 (RWL)

---

## STIPULATED PROTOCOL GOVERNING DISCOVERY MATTERS RELATING TO ELECTRONICALLY STORED INFORMATION

Plaintiff Tang Capital Partners, LP ("Plaintiff") and Defendant BRC Inc. ("Defendant," and together with Plaintiff, a "Party" individually or the "Parties" collectively), by their undersigned Counsel, hereby stipulate as follows.

### A.  PURPOSE

This Stipulated Protocol Governing Discovery Matters Relating to Electronically Stored Information ("ESI Protocol") will govern the production of electronically stored information ("ESI") and paper ("hardcopy") documents in the above-captioned action (the "Action") as a supplement to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York.  This ESI Protocol has the objective to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes regarding discovery without Court intervention, including disputes pertaining to scope or costs. Nothing in this ESI

Protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules, to rely on any protective order entered in this Action concerning protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this ESI Protocol.  The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose.

**B.  GENERAL AGREEMENTS**

      1.  <u>Ongoing Cooperation among the Parties.</u>

The Parties shall continue to consult and cooperate reasonably as discovery proceeds.

      2.  <u>Proportionality.</u>

        a.  <u>Reasonable Discovery Limits</u>.  The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this Action.

        b.  The Parties agree that they shall continue to take reasonable steps to preserve relevant Documents and ESI (except the exempted sources of ESI as noted below) in accordance with their obligations under applicable law. By preserving information for the purpose of this Action, the parties are not conceding that such material is discoverable.

The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or unlikely to contain additional relevant information, such that the associated burden and costs of preservation, collection, review, or production outweigh any benefit:

        (1)    ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

        (2)    Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

(3)     Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

(4)     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(5)     On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

(6)     Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

(7)     Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(8)     Server, system, network, or software application logs;

(9)     Data remaining from systems no longer in use that is unintelligible on the systems in use; and

(10)    Voicemail, including Telephone or VOIP voice messages.

## C.  ELECTRONICALLY STORED INFORMATION

1.  <u>Production in Reasonably Usable Form.</u>

a.     The Parties anticipate that discovery may occur from one or more forms of the following ESI: email, word processing documents, interpersonal messages, spreadsheets, presentations, and databases.

b.     The Parties shall produce ESI in reasonably usable form.  Except as stated in paragraph C.2 below or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and associated metadata set out in Appendix A, which is incorporated in full in this ESI Protocol ("TIFF-*Plus* format").  If the party receiving the discovery (the "Receiving Party"), for good cause explained in the request and subject to the proportionality standard, seeks production in native format of specifically identified

ESI produced originally in TIFF-*Plus* format, the party producing the discovery (the "Producing Party") shall respond reasonably and in good faith to any such request.  Procedures for production of a native file in response to any such request are set out in Appendix A.

      c.      Each Party may make requests, for good cause and subject to the proportionality standard, for production of specifically identified documents in color.

      2.      <u>Enterprise Databases, Database Management Systems, and Other Structured Data ("Structured Data Systems").</u>

      a.      If discoverable data from any Structured Data System can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format in accordance with Paragraph C.1;

      b.      If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Structured Data System discoverable information in a format compatible with Microsoft Excel or Microsoft Access and may produce such information in that native format.

      3.      <u>Use of Search Filters.</u>

      a.      To contain costs in the identification of relevant ESI for review and production, the Parties have, and may continue to meet and confer to discuss the use of reasonable search filters such as word/phrase filters, proximity filters, or date filters, among other possible filters.

      b.      Nothing in this order shall be deemed to be a waiver of any right or responsibility of the Producing Party to manage and control searches of its data files, including the right, upon notice to the Receiving Party, to make good-faith revisions to search filters to make them more accurate.

c. Where the Parties may agree that potentially responsive ESI shall be searched through the use of search terms and, upon agreement, the Parties will negotiate in good faith and endeavor to agree upon search terms, including by the producing Party providing, within a reasonable timeframe, search term hit reports in response to proposed search terms sent by the receiving Party.  Search term hit reports shall include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, including families.  To the extent the Parties agree to use agreed upon search terms, the Parties will use reasonable best efforts to agree on search terms within thirty (30) days of the entry of this ESI Protocol.  Provided that the Parties have used reasonable best efforts and have arrived at an impasse, disputes regarding search terms may be presented to the Court for resolution.

d. To the extent the Parties agree to use agreed upon search terms, a reasonable effort will be made by all Parties to identify documents that do not contain searchable text.  In regard to such identified documents the Parties agree to either perform OCR of such documents in order to make them searchable or meet and confer in good faith regarding a mutually agreeable solution other than performing OCR, provided that the Parties agree that nothing in this subparagraph shall require any Party to undertake a manual review of documents that do not contain searchable text.  Extracted text shall be provided for all native ESI, unless redacted or text could not be extracted from the native file.

e. The Parties shall have no obligation, in the first instance, to search for additional ESI not identified through the use of any agreed upon search term list or other agreed upon search methodology, but to the extent any Party identifies responsive ESI or responsive

documents not identified by use of the agreed upon search methodology, all such non-privileged documents shall be produced, subject to the Parties' objections to discovery requests.

   f. The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege or immunity, that it is governed by any applicable privacy law or regulation, that it contains commercially sensitive or proprietary non-responsive information, or that the Stipulated Protective Order entered in this Action allows the file to be withheld.

   g. Nothing in this section shall limit a Party's right reasonably to seek agreement from the other Parties or a court ruling to modify previously agreed-upon search filters.

   4. Email Threading.

   a. Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the Parties need not also produce lesser-included emails in the thread.

   5. Avoidance of Duplicate Production.

   a. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate

ESI exists in the files of multiple custodians, the additional custodians shall be listed in the ALL_CUSTODIANS field identified in Appendix A.

       b.      If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the ALL_CUSTODIANS field. The overlay file shall include both all custodians listed in the ALL_CUSTODIANS field in prior productions and any custodians newly identified in the current supplemental production.

      6.   <u>Parent-Child Relationships.</u>

Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record.

      7.   <u>Embedded Objects.</u>

Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded. If the file with the embedded object is produced in native format, the embedded object need not be extracted.

      8.   <u>Compressed Files.</u>

Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

## D.  SCANNED HARDCOPY DOCUMENTS

1.   In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically or physically unitized).

2.   For scanned images of hardcopy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

**3.**   In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

## E.  PRODUCTION MEDIA

Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

1.   <u>Encryption of Production Media.</u>

To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party.

## F. PRIVILEGE AND REDACTIONS

1. Underline Regarding Privilege Logs.

If any document is fully withheld on account of privilege, to avoid the loss of context due to an orphaned email or attachment, the entire message-attachment shall still be produced with the withheld document slip-sheeted with a bates stamped TIFF image, and the bates number will be identified on the privilege log.  Privilege logs, which shall log both withheld and redacted material, shall be produced in PDF format, and shall be accompanied by an Excel copy of the log.  Parties may elect to produce separate logs for fully withheld and redacted documents, or to include both types of privilege claims in a single joint log.  The instructions for logging privileged information set forth in Paragraphs F.2–3 below apply to both withheld and redacted documents.  Absent an order of the Court sequencing document discovery to be conducted in phases, or requiring certain document discovery to be completed before other document discovery, each Party shall produce a privilege log within 42 days of the conclusion of its rolling production of documents.  The PDF copy will be the official log of record.  The parties do not need to log any withheld documents or communications to or from outside counsel created after April 28, 2022, nor any work product created by counsel, an agent of counsel, or a Party at the direction of counsel dated on or after April 28, 2022.

2. Categorical Privilege Logs

The Parties may produce privilege logs "by category" pursuant to Local Civil Rule 26.2(c), provided that the producing Party identify the information required by Local Civil Rule 26.2(a) for each category of documents, namely: (i) the type(s) of document(s) in the category, e.g., letter or memorandum; (ii) the general subject matter of the documents in the category, (iii) the date

range of documents in the category; and (iv) the author(s), addressees, and any other recipients of the documents in the category, indicating for each individual her or his affiliation and relationship to the Parties.  Neither Party waives the right to argue that the Producing Party's privilege log furnishes insufficient information regarding withheld material or that good cause exists for further information to be provided.

       3.   <u>Communication-Specific Privilege Logs</u>

The Parties may alternatively produce privilege logs for specific documents or communications.  Such logs, at a minimum, to the extent reasonable, will contain the following information:

a.     A unique number for each entry on the log, such as a Document ID or Bates Number.

b.     The date of the document.  For emails, this should be the sent date of the document and for loose ESI this should be the last-saved or create date of the document.

c.     The author of the document.  For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file.  For loose ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a Party may substitute the information contained in the "Custodian" metadata field unless it believes that it would be inappropriate to so identify a document based on other information about such document.

d.     If the document is an e-mail, the Subject Line of the e-mail (unless the Subject Line itself contains privileged information).

e.     Recipient(s) of the document where reasonably ascertainable.  For emails this should be populated with the metadata extracted from the "Email To" field associated with the file.  Separate columns should be included for the metadata extracted from the "Email CC" and "Email

BCC" fields, where populated. For emails, this shall include, in addition to the Recipient(s)' name(s), either (a) an e-mail address for each recipient or (b) information sufficient to identify their employer at that time.

f.      A description of each privilege being asserted over the document with sufficient information to justify those assertions, including a brief general description of the document's subject matter that does not disclose the privileged information itself but provides sufficiently descriptive information to assess the claim of privilege for each document withheld.  This description should also include information sufficient to identify if the document contained attachments over which privilege is also being asserted.  The log should provide the required information separately for each withheld document, including each withheld attachment to the claimed privileged emails.  The type of privilege being asserted may be abbreviated as follows: (a) AC for Attorney-Client Privilege, (b) WP for Attorney Work Product Privilege, or (c) CI for Common Interest Privilege.

Where counsel's relationship relevant to the privilege is not readily ascertainable from the information described in sub-paragraphs 18(c) and (e) above, the Parties shall include a reference to relevant counsel involved in the privilege description field described in subparagraph 18(f) above.

A Party shall only be required to include one entry on the privilege log to identify withheld emails that constitute an uninterrupted dialogue between or among individuals (an "Email Chain"), provided, however, that all senders and recipients are the same for each and all portions of the uninterrupted dialogue, the privilege log entry for any Email Chain shall identify:

i.      That the emails are part of an Email Chain; and

ii.     All senders and recipient(s) and the date range of emails in the Email Chain. This shall include, in addition to name(s), either (i) an email address for each sender or recipient or (ii) information sufficient to identify their employer at that time.

If a Party elects to include privilege log entries for each communication contained in an Email Chain, the producing Party shall log each communication as separate entry as set forth herein, and need not identify the information contained in (i) and (ii) above.

4.    <u>Redactions.</u>

A Party may use redactions to protect attorney-client or work product privileges consistent with any order concerning privilege agreed and/or entered in this litigation, or personally identifiable information contained in ESI. Other than as permitted by this ESI Protocol or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance other than as required by law or statutory authority may be made within a produced document or ESI item.  Documents produced with redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information.  The text that was redacted shall not be included in a redacted document's text file. Where a responsive document contains both redacted and unredacted content, the Producing Party shall produce the remained of the unredacted portions of the document and the text/OCR corresponding only to the unredacted portions.  Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the Producing Party's obligation to timely asset and substantiate the assertion of privilege over the content in a privilege log.  Redacted version of spreadsheets, computer slide presentations etc. may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file.  Any metadata fields for redacted documents that would reveal privileged information shall be excluded.  Each Producing Party will

make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals non-privileged hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.  During the pendency of the litigation, an electronic copy of all original unredacted documents shall be preserved without addition thereto, or modification, alteration (including but not limited to alteration of associated metadata) or deletion thereof.

## G.  CLAWBACK PROCEDURES

Any party seeking to recall ESI pursuant to any protective order entered by the Court shall follow the following procedure to ensure all copies of such ESI are appropriately removed from the Receiving Party's system:

1. Locate each recalled Document in the document review/production database and delete the record from the database;

2. If there is a native file link to the recalled Document, remove the native file from the network path;

3. If the database has an image load file, locate the Document image(s) loaded into the viewing software, delete the image file(s) corresponding to the recalled document, and then remove the line(s) corresponding to the Document image(s) from the image load file;

4. Apply the same process to any additional copies of the Document or database, where possible;

5. Locate and destroy all other copies of the Document, whether in electronic or hardcopy form.  To the extent that copies of the Document are contained on write-protected media, such as CDs or DVDs, these media shall be discarded, with the

13

exception of production media received from the recalling party, which shall be treated as described under subparagraph 6;

6.      If the document was produced in a write-protected format, the party seeking to recall the Document shall, at its election, either (i) provide a replacement copy of the relevant production from which the Document has been removed, in which case the receiving party shall discard the original production media; or (ii) allow the Receiving Party to retain the original production media, in which case the Receiving Party shall take steps to ensure that the recalled document will not be used; and

7.      Confirm that the recall of ESI under this procedure is complete by way of letter to the party seeking to recall ESI

8.      If the Receiving Party disputes the privilege claim, it may keep one copy of the recalled Document solely for the purposes of the dispute, and must notify the Producing Party of the dispute and the basis therefore in writing within ten (10) days of receipt of the Producing Person's notification.

## H.  COST ALLOCATION

The costs of production pursuant to this ESI Protocol shall be borne by the Producing Party. However, in agreeing to this ESI Protocol, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure, or other applicable local rules, to seek cost shifting or apportionment for the costs of electronic discovery.

## APPENDIX A:
## TECHNICAL SPECIFICATIONS AND
## REQUIRED METADATA FIELDS

**1. IMAGES:**

- Produce documents in Single Page Group IV TIFF black and white files
- Image Resolution of at least 300 DPI
- Black and White, unless otherwise specified
- File Naming Convention: Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format
- Original document orientation shall be retained
- Images shall reveal comments, notes, track changes, speaker notes, and the like.

**2. SPECIAL FILE TYPE INSTRUCTIONS:**

- Responsive, unredacted Microsoft Excel and other spreadsheet files, Microsoft Powerpoint and other presentation files, Microsoft Access and other personal (non-enterprise) database files, video and audio files, animation files shall be produced in Native Format.

**3. FULL TEXT EXTRACTION/OCR:**

- Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content
- Produce OCR text for any paper document
- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced)
- Produce OCR text for any redacted document
- Production format: Single text file for each document, not one text file per page
- File Naming Convention: Match BegBates Number

**4. DE-DUPLICATION:** De-duplication method: Parties must de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash Value matching. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be processed for review or produced

**5. LOAD FILES**

- **Data Load File**

  - The data load file should use standard Concordance delimiters:
    - Comma - ¶ (ASCII 20)
    - Quote - þ (ASCII 254)
    - Newline-® (ASCII174)

- The first record should contain the field names in the order of the data;
- All date fields should be produced in mm/dd/yyyy format;
- Use carriage-return line-feed to indicate the start of the next record;
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;
- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC00l.DAT);
- The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

- **Image Load File**

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT)
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)
- There should be one row in the Load File per TIFF image.
- Every image in the delivery volume should be contained in the image load file.
- The image key should be named the same as Bates Number of the page.
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

## 6. METADATA FIELDS

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Production Number Begin | Beginning page production number | x | x | x |
| Production Number End | Ending page production number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments. | x | x | |
| Custodian | Name of the custodian or repository name of the document | | | |

| | | | | |
|---|---|---|---|---|
| | produced - Last Name, First Name format | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| File Name | File name of document | x | x | |
| File Extension | File extension of document | x | x | |
| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | |
| Author | Document author of a non-Email document. | | x | |
| Email Subject | Subject of email | x | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |

| | | | | |
|---|---|---|---|---|
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| Native Link | Path to produced native file used for linking. | x | x | x |
| Extracted Text Link | Path to produced extracted text file used for database linking. | x | x | X |

Dated: December 16, 2022

/s/ Reed Brodsky
Reed Brodsky
Andrew Freire
David Salant
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
United States
Telephone: (212) 351-5334
rbrodsky@gibsondunn.com
afreire@gibsondunn.com
dsalant@gibsondunn.com

*Counsel for Plaintiff Tang Capital Partners, LP*

/s/ Stefan Atkinson
Stefan Atkinson, P.C.
Byron Pacheco
Jacob M. Rae
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4800
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com
jacob.rae@kirkland.com

*Counsel for Defendant BRC Inc.*


**SO ORDERED** this ___19th___ day of ___December___, 2022

_____
Hon. Robert W. Lehrburger
United States Magistrate Judge