# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Byron Pacheco
To Call Writer Directly:
+1 212 909 3247
byron.pacheco@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/21/2023
```

July 11, 2023

<u>Via ECF</u>

The Honorable Robert W. Lehrburger, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 18D
New York, NY 10007

Re:   *Tang Capital Partners, LP v. BRC Inc.*, No. 22-cv-3476 (RWL)

Dear Judge Lehrburger:

I write on behalf of Defendant BRC Inc. ("BRC") to address three discovery disputes regarding the refusal of Plaintiff Tang Capital Partners, LP ("Tang") to: (1) provide custom and practice discovery; (2) perform an adequate collection and review of its custodians' text messages; and (3) provide discovery regarding Tang's members, partners, or investors.[1] The parties have exchanged multiple letters and emails and conferred by telephone repeatedly but have reached an impasse. Accordingly, pursuant to Local Civil Rule 37.2 and Rule II.D of the Court's Individual Practices, BRC seeks a pre-motion conference prior to filing a motion to compel.

### I.   Custom and Practice Evidence.

Tang alleges that a Form S-4 is independently sufficient to register warrants and the shares underlying warrants (*i.e.*, "warrant shares") as part of a de-SPAC, which is a novel theory, to put it mildly. The widely accepted market practice for similar de-SPACs involving warrants is to register the primary offering of warrants on a Form S-4 (or its equivalent) then subsequently register the warrant shares on a Form S-1—precisely as BRC did here. As such, BRC has sought discovery reflecting Tang's awareness of this widespread practice, including in BRC's Second RFPs Nos. 3–4 & 6 and Interrogatory Nos. 9, 12 & 17–20.[2] This information is plainly discoverable under Fed. R. Civ. P. 26(b)(1), and, as Your Honor has explained, discovery is

---

[1] BRC has attached true and correct copies of Tang's Responses and Objections to BRC's First Set of Requests for Production ("BRC's First RFPs"), Second Set of Requests for Production ("BRC's Second RFPs"), as well as BRC's First Set of Interrogatories and Second Set of Interrogatories (collectively, "Interrogatories") as **Exhibits A, B, C & D**, respectively.

[2] *Compare* BRC's Request Nos. 3–4 & 6 (**Exhibit B**) *with* 05/12/2023 Letter from D. Salant (**Exhibit E**), at 2–3 (refusing to re-review documents for responsiveness to these new Requests); *see also* Interrogatory Nos. 9 & 12 (**Exhibit C**); Interrogatory Nos. 17–20 (**Exhibit D**) (refusing to provide full responses to these Interrogatories).

**KIRKLAND & ELLIS LLP**

Hon. Robert W. Lehrburger, U.S.M.J.
July 11, 2023
Page 2

intended to allow the parties an "opportunity to unearth more extrinsic evidence that may support their respective interpretations," including "the statements and actions of the parties" and "evidence of custom and practice." (ECF No. 56 at 22.) Yet, Tang has obstructed such discovery, asserting that it has no relevance.[3]

Tang's refusal to produce this discovery is telling. Tang is a sophisticated investment company. Given that similar de-SPACs (with nearly identical warrant agreements) have followed the two-form approach used by BRC, it would be surprising for Tang to be unaware of this common practice. In fact, BRC's approach is apparently so common that Tang's own counsel in this litigation, Gibson, Dunn & Crutcher LLP ("Gibson"), has used the same process BRC used to register warrants and warrant shares in similar de-SPACs. In one such transaction, Gibson advised Motive Capital Corp. on the warrant registration process for its SPAC merger with Forge Global Holdings, Inc. ("Forge Global"). Forge Global is now being sued over that transaction by Alta Partners, LLC (another Gibson client), which alleges that Forge Global breached the warrant agreement by refusing to allow investors to exercise their warrants until a subsequent Form S-1 had been filed,[4] just as Tang alleges here. Moreover, Tang's awareness of market practices is especially pertinent because of Tang's allegations that counsel at Gibson "concurred in the conclusion" that BRC's two-form approach was *incorrect* (*i.e.*, the same approach Gibson used in the Forge Global transaction). (*See* ECF No. Compl. ¶¶ 7, 42.) Although Tang might wish to avoid discovery on its knowledge of this common practice, parties cannot refuse to provide discovery simply because it might undercut their claims.

### II. Tang's Deficient Production of Text Messages.

Tang has refused to resolve serious issues regarding its collection, review, and production of text messages. During discovery negotiations, Tang insisted on an exhaustive text message collection process pursuant to which the parties would (i) forensically image their custodians' phones; (ii) have attorneys review all text messages involving at least two custodians during the relevant date range without the use of search terms; and (iii) produce all text conversations for a given 24-hour period (a "daily conversation") that were responsive to the parties' Requests for Production. But Tang has failed to uphold its end of the bargain. Tang had an employee, with no legal training or experience in discovery, review the texts for responsiveness and take screenshots of texts without any attorney supervision. Moreover, Tang made no attempt to collect text messages from one of its custodians (Amy Yi) or to recover text messages that another of its custodians (Danica Mock) had deleted. In short, Tang did not honor the parties' agreement, failed

---

[3] *See* Interrogatory Nos. 17–20 (**Exhibit D**); *see also* 05/12/2023 Letter from D. Salant (**Exhibit E**), at 5–6.
[4] *See Alta Partners, LLC v. Forge Global Holdings, Inc.*, 1:23-cv-02647-JMF (S.D.N.Y. Mar. 29, 2023), Amended Complaint (ECF No. 21), ¶¶ 67–74.

## KIRKLAND & ELLIS LLP

Hon. Robert W. Lehrburger, U.S.M.J.
July 11, 2023
Page 3

to exert reasonable efforts to collect from all of its custodians, produced texts in an improper format, and refused to take any steps to cure these deficiencies.[5]

As an initial matter, the fact that Tang produced any texts at all is alarming. For months, Tang's counsel represented that it had "checked and double checked" its custodian's files and no responsive texts existed.[6] Against this backdrop, Tang's departure from the parties' agreed-upon collection-and-review framework is a red flag. Additionally, screenshots may be unreliable because they can exclude portions of a daily conversation, effectively leaving the reader with only pieces of a puzzle. When BRC asked Tang to explain why it engaged in self-collection,[7] had a non-attorney with no experience in discovery make responsiveness calls, made no effort to collect from all of its custodians, and failed to investigate the potential spoliation of evidence by one of its custodians, Tang's only response was a generalized assertion of burdensomeness. But this is the process that *Tang* demanded, and BRC undertook the burden and expense of complying. Tang cannot foist this burden and expense on BRC, then cut corners with its own process. Thus, Tang should be ordered to (i) perform its collection and review of text messages properly; (ii) collect text messages from Ms. Yi; and (iii) provide a full accounting of its efforts to recover deleted texts from Ms. Mock.[8]

### III. Communications with Third Parties and Tang's Members or Investors.

Tang also has refused to provide discovery responsive to BRC's First RFP Nos. 15–18, Second RFPs Nos. 1–2 and Interrogatory No. 14, which seek information reflecting Tang's dealings with other investors in BRC, including third-party investors and its own members/partners. Tang has not disputed that such documents or communications exist, but has instead objected on unspecified burden and relevance grounds. Information reflecting discussions with Tang's members/partners, as well as other holders of the BRC warrants, are plainly relevant and discoverable as such documents could shed light on Tang's alleged damages, investment strategies, and knowledge of relevant customs and practices. Tang's refusal to substantiate its boilerplate claims of burden or otherwise produce responsive information is improper.

---

[5] See 04/19/2023 Email Thread (**Exhibit F**), at 04/14/2023 Email from J. Cearley (summarizing meet-and-confer discussions); see also 06/27/2023 Email Thread (**Exhibit G**) (declining to cure the deficiencies).

[6] See Exhibits F–G.

[7] See, e.g., *Thomas v. City of New York*, 336 F.R.D. 1, 5 (E.D.N.Y. 2020) (reliance on clients' statements that responsive messages do not exist, which "is a form of self-collection which is strongly disfavored"); *Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020) ("It is not appropriate to take a client's self-collection of documents, assume it is complete, and not take steps to determine whether significant gaps exist.").

[8] To the extent Ms. Yi refuses to cooperate with Tang's requests, BRC respectfully asks the Court to: (i) order Tang to provide an affidavit describing what steps it took to obtain Ms. Yi's cooperation and why it was unable to do so; and (ii) grant BRC leave to serve Ms. Yi with a subpoena *duces tecum* to obtain her text messages.

## KIRKLAND & ELLIS LLP

Hon. Robert W. Lehrburger, U.S.M.J.
July 11, 2023
Page 4

\* \* \*

For the foregoing reasons, BRC respectfully requests a pre-motion conference.

Respectfully,

/s/ *Byron Pacheco*
Byron Pacheco

The requested relief is denied for substantially the reasons set forth in Tang's response at Dkt. 90.

SO ORDERED:

7/21/2023

HON. ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE