UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

TANG CAPITAL PARTNERS, LP,                    :

                                              :          22-CV-3476 (RWL)

                           Plaintiff,         :

                                              :          **ORDER:**

              - against -                     :          **<u>MOTIONS IN LIMINE</u>**

                                              :

BRC Inc.,                                     :

                                              :

                           Defendant.         :

---------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This is a breach of contract case in which Tang Capital Partners, LP ("Tang")
claims damages caused by BRC, Inc. ("BRC") when it prevented Tang from exercising
BRC warrants.  The Court already has granted summary judgment on liability in favor of
Tang.  (Dkt. 211.)  The remaining issues for trial are the amount of a compensatory
damages award and the extent to which Tang made reasonable efforts to mitigate its
damages.  (*Id.* at 82-86.)  In advance of trial, both parties filed omnibus motions in limine.
(Dkts. 227, 236.)  Additionally, the parties' pretrial briefs dispute whether BRC may
advance affirmative defenses at trial in addition to failure to mitigate damages.  Oral
argument was held on June 25, 2025.  This order resolves the parties' respective motions
as set forth below.

**Tang's Motions In Limine**

**I.      Advice Of Counsel**

Tang moves to exclude any evidence of BRC's reliance on the advice of counsel
in connection with whether to honor the exercise of warrants.  (Dkt. 237 at 1-7.)  BRC
opposes only in the event that the Court allows Tang to pursue a claim for punitive

1

damages and other issues outside the scope of compensatory damages.  (Dkt. 240 at 1.)
As discussed below, the Court grants BRC's motion to exclude Tang's claim for punitive
damages and certain other matters.  Accordingly, the Court GRANTS Tang's motion to
exclude BRC's evidence of advice of counsel.

## II.     Attorney Seligson

Citing Federal Rules of Evidence 401, 402, and 403, Tang moves to exclude the
testimony of attorney Peter Seligson of Kirkland & Ellis.  (Dkt. 237 at 8-9.)  Seligson
represented BRC in connection with its February 2022 de-SPAC business combination
transaction and is BRC's former litigation counsel in this action.  There is evidence that
on March 11, 2022, Seligson had a phone conversation with Ryan Murr, counsel to Tang,
in which Seligson informed Murr that an effective Form S-1 (as distinct from a Form S-4)
was necessary for Tang to issue its warrants for cash and that BRC would not permit
cash exercise of the warrants until BRC's Form S-1 became effective.  The call is
memorialized in an email from Murr to Seligson that is listed as an exhibit by both parties.

Tang contends that Seligson's testimony about the call should be excluded
because BRC has never disputed the record of the call as reflected in Murr's email, and,
as Seligson will not address legal advice or privileged communications, his testimony
would be cumulative.  Tang further argues that Seligson's presence would create a
substantial risk of confusion and prejudice that substantially outweighs any probative
value, "by implying a lawyer blessed BRC's position, an impermissible 'back door'
introduction of an advice-of-counsel defense."  (Dkt. 237 at 9.)

The motion is DENIED.  The call between Seligson and Murr is a non-privileged
communication central to the issue of damages and Tang's mitigation of damages.  Tang

2

has highlighted the email memorializing the call throughout this litigation. The jury is entitled to hear both Seligson and Murr's first-hand account of the conversation and what was said by each to the other. Tang has named Murr as a rebuttal witness, presumably for that purpose. Tang's concern about risk of confusion and prejudice of a lawyer's blessing of BRC's position and a backdoor to entry of advice-of-counsel evidence does not hold up to scrutiny: the very email on which Tang relies already references BRC's legal position. Moreover, the jury will be informed that BRC has been found liable for breach of contract. The risk of prejudice and confusion does not substantially outweigh the probative value of hearing from both participants (Seligson and Murr) about a key conversation. To be clear, however, Seligson may not testify about advice provided to his client. The conversation between Murr and Seligson is relevant only for what Seligson told Murr and what consequence the conversation had with respect to Tang's mitigation of damages.

III.    **Expert Hendershott's Supplemental Report**

During expert discovery, BRC submitted an expert report on mitigation of damages from Professor Terrence Hendershott. A year after discovery closed, and just about six weeks prior to the joint pre-trial order due date, BRC produced a supplemental Hendershott report. Tang moves to exclude Professor Hendershott's supplemental report pursuant to Fed. R. Civ. P. 37(c)(1). (Dkt. 237 at 10-22.) Tang's motion is GRANTED.

The essential difference between the first and supplemental Hendershott reports is that the latter calculates damages using March 10, 2022, rather than March 11, 2022, as the first date on which Tang could have begun mitigating damages and ceased purchasing BRC warrants. As calculated by Professor Hendershott, using March 10,

2022, as the start date significantly reduces the number of "at-issue" warrants and reduces Hendershott's earlier damages calculations by more than half. The report does not offer the March 10, 2022 date in place of the March 11, 2022 date, but rather as an alternative scenario. The method of calculation and the various mitigation strategies are the same in each report.

Expert disclosures are governed by Federal Rule of Civil Procedure 26(a)(2). Rule 26(a)(2)(B) requires an expert witness to provide a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." Rule 26(a)(2)(B)(i)–(iii). The report must be disclosed "at the times and in the sequence that the court orders." Rule 26(a)(2)(D). Rule 26 also imposes a continuing obligation on parties to supplement or correct expert disclosures "in a timely manner." Rule 26(e)(1)(A). Courts in this Circuit have repeatedly ruled that the duty to supplement "is not ... a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp.3d 169, 185 (S.D.N.Y. 2023) (internal quotation marks omitted).

The rules of procedure impose consequences for failing to timely and properly disclose expert opinion evidence. A party who fails to provide information required under Rule 26(a) "is not allowed to use that information ... [at] trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court of Appeals has identified four factors to be considered in determining whether an order of preclusion is appropriate: "(1) the party's explanation for the failure to comply with the [disclosure

requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *accord Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

With respect to the first factor, BRC apparently added the March 10, 2022 scenario in response to the Court's summary judgment decision four months earlier referencing both March 10 and March 11, 2022, as dates when Tang received information suggesting that BRC may not permit Tang to exercise the BRC warrants in the absence of an effective Form S-1 registration. That is not a viable justification for BRC's belated disclosure. BRC and Professor Hendershott had access to the same fact discovery and could have included a March 10, 2022 mitigation scenario in Hendershott's initial report, without having to rely on the Court for inspiration. *See Variblend Dual Dispensing Systems LLC v. Crystal International (Group) Inc.*, No. 18-CV-10758, 2022 WL 17156550, at *15 (S.D.N.Y. Nov. 22, 2022) (striking supplemental expert report where party proffering the report did not have an adequate explanation for its failure to comply with the Rule 26 disclosure requirement); *Lidle v. Cirrus Design Corp.*, No. 08-CV-1253, 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009) (if an expert's report "does not rely [on] any information that was previously unknown or unavailable to him," it generally is not an appropriate supplemental report under Rule 26).

Moreover, BRC takes the Court's observation out of context. The Court stated that "on both March 10 and March 11, 2022, Tang was informed that the Warrants could not be exercised in the absence of the Form S-1 registration being effective." But both before

and after that statement, the Court premised its entire mitigation discussion on BRC having advanced a theory of what Tang knew as of March 11, 2022 – the date when warrants theoretically could first be exercised.  (Dkt. 211 at 82-84; *see also id.* at 86 No. 5 ("Summary judgment is denied as to whether and to what extent Tang may recover damages for the Warrants it sold on April 7-11, 2022, and its remaining Warrants, including those purchased after March 11, 2022").)  Before March 11, 2022, no contractual obligation had yet been breached.[1]

The second factor also does not favor BRC.  The Court has not excluded Professor Hendershott from testifying about any of the scenarios and calculations presented in his initial report.  BRC will still be able to advance the mitigation arguments it disclosed during discovery.  Moreover, information received by Tang on March 10, 2022, will still be relevant and admissible for purposes of BRC's mitigation defense; namely, as proof of what Tang knew when and whether Tang acted reasonably in response to that information after it first attempted to exercise BRC warrants and was denied.  While the March 10 start-date scenario makes a substantial difference in terms of the damages calculations, it is a theory that ignores the date when BRC could have been in breach and is literally an afterthought never previously articulated.

The third and fourth factors tilt toward BRC.  Prejudice to Tang, the third factor, is modest.  Professor Hendershott does not opine about whether March 10 or March 11 is the proper date to use, but rather calculates damages for both scenarios.  What date to use for a mitigation start date, whether March 11, 2022, or any date thereafter, will be up

---

[1] Tang has not alleged, and the Court's determination of liability was not premised on, a theory of anticipatory repudiation.

to the jury.  Further, the Court does not find persuasive Tang's argument that it has been deprived of the opportunity to take fact discovery about the March 10 scenario.  If the March 10 scenario had been disclosed in a timely fashion, it would have first appeared in Professor Hendershott's initial report – and fact discovery would have already concluded. The belated production of Professor Hendershott's supplemental report did deprive Tang of the opportunity to question Professor Hendershott about it at his deposition.  That could be addressed by allowing Tang to depose Professor Hendershott in advance of trial – most likely without a continuance – although the window to do so is closing fast.[2]

Ultimately, whether to allow or exclude Professor Hendershott's supplemental report is a matter within the Court's discretion.  *Hunt v. CNH America, Inc.*, 511 Fed. Appx. 43, 46 (2d Cir. 2013) (summary order).  The overall balance of factors weighs in favor of exclusion.   The Court has considered the authorities cited by BRC and finds them distinguishable, largely for reasons identified by Tang.  (*See* Dkt. 237 at 20-21.)  The Court also finds that BRC's newly-minted March 10 theory, which would reduce damages by half, is of a piece with Tang's attempt to raise the stakes by newly advancing a bid for punitive damages.  At this juncture, neither party should be permitted to upend the table that has been set.  Accordingly, the supplemental Hendershott report is excluded.

---

[2] Trial is scheduled to begin July 22, 2025.  The Court rejects BRC's argument that Tang is responsible for any prejudice that it may incur because BRC at least notified Tang shortly after the Court's summary judgment decision that BRC intended to provide a supplemental report with a March 10 start-date scenario.  (*See* Dkt. 240 at ECF 11-12.) Tang had no obligation to accept that the belatedly disclosed March 10 scenario was proper, with or without an opportunity for a deposition.

IV.    **Kevin Tang's Wealth And Character**

Tang moves to exclude as irrelevant and unduly prejudicial any evidence about the wealth, income or personal characteristics of Tang Capital's CEO Kevin Tang, including evidence that he may be considered impersonal, difficult, or angry. (Dkt. 237 at 23-25.) Tang contends such evidence is irrelevant and unduly prejudicial (excludable pursuant to Fed. R. Evid. 401, 402, and 403), and improper character evidence (excludable pursuant to Fed. R. Evid. 404). The motion is GRANTED IN PART and DENIED IN PART.

A.    **Wealth**

Tang is correct that evidence of a person or entity's wealth generally is inadmissible because it is usually irrelevant and unfairly prejudicial. *See Tesser v. Board of Education of City School District of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004). There are exceptions, however, where punitive damages are at issue, or in other circumstances where the information is necessary to determining damages. *Id.* BRC argues that Kevin Tang's wealth and sophistication is relevant to assessing the reasonableness of Tang's actions and important context for the jury's assessment of Tang's mitigation efforts. (Dkt. 240 at 20-21.) *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 236 (2d Cir. 2006) (recognizing as relevant to determination of reasonable reliance in securities fraud case that "plaintiffs had substantial and varied experience with millions in investments, and had worked with brokers, financial advisors, or accountants prior to investing").

The Court agrees with BRC that Tang's sophistication as an investor who invests millions of dollars is relevant to assessing the reasonableness of Tang's actions and not

unduly prejudicial. At the same time, there is no need to refer to Tang's personal wealth, and doing so would present a risk of prejudice that substantially outweighs probative value. Accordingly, BRC may introduce evidence generally of Kevin Tang's financial sophistication and experience with transactions involving millions of dollars, but may not introduce evidence of the amount of his personal wealth.

### B. Character Traits

Evidence of character or a character trait generally may not be offered "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Character evidence is, however, admissible for challenging witness credibility. Fed. R. Evid. 404(a)(3), 607, 608. Tang argues that evidence of Kevin Tang's allegedly being difficult, angry, and impersonal is irrelevant to the issues to be tried. BRC counters that it does not seek to introduce evidence of Kevin Tang's character traits to prove that he acted in accordance with those traits on any particular occasion – the purpose proscribed by Fed. R. Evid. 404(a)(1). Rather, BRC intends to introduce the evidence to challenge the credibility of Tang company witnesses. As BRC puts it, "[t]he evidence is not offered to embarrass Mr. Tang or attack his character, but rather to help the jury properly weigh testimony from witnesses who may be influenced by their employment relationship with him." (Dkt. 240 at 23.) In other words, "this [is] evidence of witnesses' bias and credibility." (*Id.*)

As with the wealth issue, the answer is not all or nothing. It is fair game for BRC to question Tang employees, just as it would be fair game for Tang to question BRC employees, if they bear any bias in favor of their employer, whether that be out of allegiance or fear of reprisal. Beyond that, there is no apparent reason for why evidence

about Kevin Tang's character traits would have any relevance. Accordingly, BRC must be circumspect in its approach and may not gratuitously introduce evidence of Tang's character traits. Rather, BRC must maintain its focus on bias and impeachment.

## V.    Tang Capital Financial Information

Just as it seeks to exclude certain information specific to Kevin Tang, Tang also seeks to exclude certain information about the company; namely, its assets under management; its financial performance other than in connection with BRC securities; and its trading in other issuers' securities. (Dkt. 237 at 26-27.) Tang again invokes Fed. R. Evid. 401, 402, and 403. The motion is GRANTED IN PART and DENIED IN PART.

To the extent the motion seeks blanket exclusion of evidence falling under any of those three topics, it is denied. Information pertinent to each topic could be admissible depending on the specific information at issue and the purpose for which it is being offered or used. With respect to specific items mentioned by the parties, the Court agrees with Tang that evidence or argument that Tang Capital is a "money-losing" or "long-underperforming" hedge fund should be excluded as its probative value is substantially outweighed by risk of undue prejudice. Whether or not Tang Capital generally has been successful is irrelevant to the issues to be tried.[3] On the other hand, more direct evidence of Tang's risk tolerance may be relevant to the reasonableness of its mitigation efforts. Similarly, while redaction of documents for references to transactions in securities other than those of BRC is likely appropriate to some extent, the Court has no basis to rule that

---

[3] BRC argues that Tang's performance is "relevant context for why Tang seeks to achieve a windfall from BRC using an overaggressive damages theory." (Dkt. 240 at 23.) The Court is not persuaded that Tang's underperformance makes its effort or lack of effort to mitigate any less or more reasonable. In any event, the undue prejudice of such an argument substantially outweighs its probative value.

there are no circumstances in which Tang's trading in other securities might be relevant and not substantially outweighed by risk of prejudice. The parties should meet and confer further as to which trading information should be redacted.

## VI.    Tanner Doss Live Appearance

Tang seeks an order requiring BRC to produce Tanner Doss for live testimony. (Dkt. 237 at 28-29.)   Doss is BRC's former VP of Investor Relations who issued communications to investors about the exercisability of the BRC warrants.  BRC asserts that it cannot be required to make Doss available for live testimony because Doss is a former, not current, employee who lives in Utah, outside the Court's subpoena jurisdiction under Federal Rule of Civil Procedure 45(c).  (Dkt. 240 at 25-26.)  Tang contends that BRC has the ability to produce Doss live because BRC identified Doss as a live witness in the event the Court permits Tang to pursue punitive damages.  As authority to require production of Doss by BRC, Tang cites to Fed. R. Evid. 611, which directs the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to … make those procedures effective for determining the truth" and "avoid wasting time."  Fed. R. Evid. 611(a).

Tang's argument is unavailing.  By including Doss on its live witness list, BRC did not represent that it had control over whether Doss would appear live.  Rather, including Doss on BRC's list was necessary to preserve the right to call Doss live in the event he agreed to appear live voluntarily.  Neither the Court nor the parties can compel a former party employee who lives beyond the Court's subpoena power to appear at trial. *Guardian Life Insurance Company of America v. Coe*, 724 F. Supp.3d 206, 215 (S.D.N.Y. 2024) ("pursuant to Federal Rule of Civil Procedure 45(c)(1)(A), a district court generally

cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state"). The case law cited by Tang does not suggest otherwise. *See Buchwald v. Renco Group, Inc.*, No. 13-CV-7948, 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014) (rejecting party's request to preclude other party from calling witness live). *Buchwald* noted the well-established principle that a party may not limit a witness's live testimony to only its own case in chief; either both parties get the benefit of live testimony of the same witness, or they both have to rely on deposition testimony of the witness. *Id. Buchwald* did not address the Court's ability to require the live appearance of a party's former employee residing outside the Court's subpoena jurisdiction.

Accordingly, Tang's motion to require BRC to produce Doss for live testimony is DENIED.

## VII. Steven Taslitz

Tang moves to preclude BRC from calling as a witness Steven Taslitz, a member of BRC's Board of Directors, whom BRC did not make available during discovery. (Dkt. 237 at 30.) BRC argues that Taslitz "should be permitted to testify if Tang pursues its eleventh-hour punitive damages theory." (Dkt. 240 at 26.) As noted above and explained below, Tang will not be allowed to pursue punitive damages. Accordingly, there is no basis for BRC to call Taslitz as a witness. Tang's motion to exclude Taslitz is GRANTED.

### BRC's Motions In Limine

## I. Punitive Damages

BRC moves to exclude Tang from introducing evidence or arguing for a claim of punitive damages. (Dkt. 228 at 3-14.) The motion is GRANTED.

From the filing of its complaint up until submission of pre-trial filings three years later, Tang has framed and litigated this case as one for breach of contract for which the remedy is general and compensatory damages. Heading to trial, however, Tang asserts that it is entitled to ask the jury for an award of punitive damages. Tang has never previously even hinted that it planned to seek punitive damages.

That Tang did not do so is not surprising. Punitive damages in breach of contract cases are rare. The New York Court of Appeals recently summarized the applicable principles:

> The bar for subjecting a defendant to punitive damages on a contract claim is high. Such damages are available only where the fraud, aimed at the public generally, is gross and involves high moral culpability, or when it evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations. Although damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong, punitive damages may be recoverable if necessary to vindicate a public right. To state a claim for punitive damages in this context, a plaintiff must allege that (1) the defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of the [requisite] egregious nature …; (3) the egregious conduct is directed to the plaintiff; and (4) it is of a pattern directed at the public generally.

*Hobish v. AXA Equitable Insurance Co.*, 2025 WL 83783, at *5 (N.Y. Jan. 14, 2025) (internal citations, quotation marks, and alterations omitted).

Tang's punitive damages theory is that BRC defrauded the public, not just Tang, in its warrant offering (even though Tang has not asserted a claim for securities fraud or any fraud for that matter); well knew that it had an obligation to honor the exercise of warrants beginning March 11, 2022; and deliberately breached that obligation motivated by the greater financial gain BRC's insiders would garner from their "earnout" shares by

reducing the number of warrants timely exercised for shares of BRC stock.  In March 2023, the Court denied BRC's motion to dismiss, finding that the relevant contractual language was not free from ambiguity. (Dkt. 56 at 15.)  Tang has not sufficiently explained how punitive damages can be awarded for breach of a contract that was ambiguous.[4]

BRC argues that Tang's punitive damages theory fails as a matter of law.  (Dkt. 228 at 14.)  Tang retorts that BRC is not entitled to what is effectively summary judgment at this juncture and that the Court should receive all evidence at trial and then determine whether the matter should be put to the jury.  (Dkt. 242 at 9.)  Although the Court does not base its ruling on the merits of Tang's claim, it is quite apparent from Tang's briefing (including its trial brief) and the Court's familiarity with the proceedings to date, that, notwithstanding evidence of BRC's financial motivation and benefit from breach, the case does not clear the "high bar" for punitive damages requiring "gross" fraud and "high moral culpability," "a high degree of moral turpitude," or "such wanton dishonesty as to imply a criminal indifference to civil obligations."   *Hobish*, 2025 WL 83783, at *5.

Had Tang believed it had a colorable claim for punitive damages, it could and should have raised it at an earlier time – if not during fact discovery, then at least at the end of fact discovery.  It did not do so.  Tang never amended any discovery responses – including its initial mandatory disclosures or response to an interrogatory expressly requesting identification of all damages components – to include punitive damages.  Tang did not raise the prospect of punitive damages during expert discovery, which included

---

[4] At oral argument, the Court entertained the notion that BRC failed to fulfill its contractual obligations regardless of in whose favor the ambiguity was resolved.  Even if that were so, the Court would still exclude Tang's late-breaking punitive damages theory for the other reasons stated.

experts specifically retained to address damages.  Even though Tang moved for summary judgment on both liability and damages, it never mentioned that the issue of punitive damages would remain if the motion succeeded.  And, even though the Court granted summary judgment to Tang on liability on November 8, 2024, Tang never apprised BRC or the Court that it intended to pursue punitive damages at trial.  Instead, Tang waited six months later until April 10, 2025 – literally the day before the parties were to exchange their pretrial filing submissions – to disclose Tang's intent to ask for punitive damages.

Tang's unjustified, belated disclosure is unduly prejudicial to BRC.  Fact discovery ended long ago.  Had BRC known that Tang intended to pursue punitive damages, BRC likely would have made different strategic decisions about which witnesses to depose, what questions to ask, and what evidence to pursue or let be.  As BRC aptly put it, "[b]efore Tang's surprise claim, BRC never had reason to defend this action as if it were a fraud suit" (Dkt. 228 at 10), even though Tang concedes that to establish punitive damages it would have to prove that BRC's conduct is actionable as fraud.

That BRC may have known of the existence of witnesses or facts underlying Tang's claim for punitive damages does not in any way suggest that BRC should have anticipated the possibility of facing a trial on punitive damages.  And by failing to amend any of its disclosures concerning damages, Tang deprived BRC of the opportunity to build a proper defense.  Under these circumstances, preclusion is warranted.  As prescribed by Federal Rule of Civil Procedure 37, when, as here, a party fails to provide information as required by Rule 26(a) (initial disclosures) or Rule 26(e) (supplemental disclosures and responses), "the party is not allowed to use that information … to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[5]  Fed. R. Civ. P. 37(c)(1).

Finally, Tang argues that punitive damages is a remedy, not a legal claim unto itself.  That is correct.  But it does not excuse Tang's failure to amend its damages disclosures at any time earlier than it did.  *See Anthem, Inc. v. Express Scripts, Inc.*, 2024 WL 4635233, at *2 (2d Cir. Oct. 31, 2024) (summary order) (affirming rejection of belated attempt to introduce restitution damages theory because "Anthem omitted any reference to restitution in its complaint, in response to interrogatories calling for its claimed damages theories and bases, or in any of its expert opinions"; the record did not "reflect any supplemental disclosures as required by Rule 26(e)"; and "Anthem therefore waived any claim that it was entitled to restitution"); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295-97 (2d Cir. 2006) (upholding district court's preclusion of evidence of lost profits, in part because initial disclosures did not mention them); *Williams v. Boulevard Lines, Inc.*, No. 10-CV-2924, 2013 WL 5652589, at *6 (S.D.N.Y. Sept. 30, 2013) (precluding punitive damages and explaining "Plaintiff's boilerplate pleading allegations of 'gross negligence' and 'wanton or reckless conduct' cannot substitute for a Rule 26(a) punitive-damages disclosure").[6]

---

[5] Tang argues that Fed. R. Civ. P. 37(c)(1) cannot be the basis for excluding punitive damages because that provision prohibits use of "evidence."  (Dkt. 242 at 8.)  The Court does not agree.  The rule prohibits use of the excluded "information … to supply evidence."  In this instance, the undisclosed information is the punitive damages component of Tang's damages.  That information cannot be used as a basis to "supply evidence" of punitive damages.

[6] Cases cited by Tang where punitive damages were allowed to be introduced at a later stage of litigation are distinguishable.  *See, e.g., Quaker State Oil Refining Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95-96 (2d Cir. 1981) (court addressed failure to disclose

## II.    Mitigation

BRC moves to preclude Tang from arguing or suggesting that Tang had no duty to mitigate following BRC's breach and that BRC had an equal duty to mitigate.  (Dkt. 228 at 15-18.)  The Court agrees that either argument would be inappropriate.  But, as Tang responds, it does not plan to make either argument.  (Dkt. 242 at 10, 12.)  Rather, Tang intends to, and may, argue that its duty to mitigate did not begin on March 11, 2022; and, it may argue that BRC's conduct gave Tang reason not to believe that it had a duty to mitigate as of March 11, 2022.  BRC's equivocal and inconsistent representations with respect to its intent to honor exercise of warrants as of March 11, 2022, along with the parties' disagreement about BRC's contractual obligations, are appropriate fodder for the jury to consider.

BRC also argues that Tang should be precluded from referencing the Court's prior rulings, including its summary judgment ruling.  (Dkt. 228 at 16-17.)  Tang responds that it does not intend to offer the Court's summary judgment decision as evidence.  However, Tang says, the jury must be informed that BRC has already been found to have breached the Warrant Agreement based upon an incorrect position of law.  (Dkt. 242 at 11-12.)  To that end, Tang offers to stipulate that BRC breached the United States securities laws

_____

punitive damages in complaint but not during discovery, and appellants failed to object specifically to instruction on punitive damages given to jury after the judge gave it); *Jennings v. Town of Stratford*, 263 F. Supp.3d 391, 408-410 (D. Conn. 2017) (issue was addressed under Fed. R. Civ. P. 54(c), not Fed. R. Civ. P. 37(c)(1), and defendant failed to object to court giving jury instruction on punitive damages); *Doe v. Columbia University*, 165 F.R.D. 394, 396 (S.D.N.Y. 1996) (allowed motion to amend complaint to include punitive damages where discovery had not yet concluded); *Griffith Laboratories U.S.A., Inc. v. Pomper*, 607 F. Supp. 999, 1001 (S.D.N.Y. 1985) (issue was addressed under Fed. R. Civ. P. 54(c), not Fed. R. Civ. P. 37(c)(1); and, in any event, court determined that defendant was not prejudiced by failure to include punitive damages in complaint under the circumstances of the case).

and Warrant Agreement and is liable in an amount to be determined by the jury. The Court agrees that the jury must be provided appropriate context, including that the Court already has determined BRC breached the Warrant Agreement. The Court will incorporate such a statement in a short statement of the case to the jury. The Court will not preclude Tang from alluding to BRC's breach during trial. However, Tang may not suggest that Tang violated the securities laws. Even if BRC misconstrued relevant securities law, the basis for BRC's liability is breach of contract. Accordingly, BRC's motion is GRANTED in part and DENIED in part.

## III.    Accusations Of Illegality

BRC moves to exclude any reference by Tang to BRC's conduct as "illegal" or "unlawful[]." (Dkt. 228 at 18-19.) Tang argues that it "should be permitted to state the obvious and say that BRC's conduct was unlawful." (Dkt. 242 at 15.) Tang states that "BRC's unlawful conduct goes directly to the punitive damages relief that Tang Capital intends to seek." (*Id.* at 16.) Inasmuch as Tang will not be allowed to make a punitive damages claim, Tang's argument is moot. Tang also argues that it should be able to characterize BRC's conduct as "illegal" because "Tang was right on the law that applied to the Warrant Agreement, BRC was wrong, and Tang Capital acted reasonably by insisting that its position was right and believing that BRC might change its stated position." (*Id.* at 15.) Tang can make that argument but does not need to characterize BRC's conduct as illegal or unlawful to do so. This is a breach of contract case, not a criminal case or a fraud case. Characterizations of BRC's conduct as "illegal" and "unlawful" would be inflammatory and unduly prejudice and should be excluded pursuant

to Fed. R. Evid. 401, 402, and 403.  BRC's motion to exclude reference to its conduct as "illegal" or "unlawful" is GRANTED.

## IV.    Earnout Shares

BRC next moves to exclude argument and evidence of the significant sums of money reaped by BRC insiders from vesting of their earnout shares at the same time BRC prevented investors from exercising their warrants.  (Dkt. 228 at 19-20.)  Tang argues that the earnout share evidence is relevant in two respects, one of which is punitive damages.  (Dkt. 242 at 18-19.)  As punitive damages are not on the table, that justification once again disappears.  Tang additionally argues that the earnout share evidence is relevant to when Tang reasonably should have begun mitigating its damages. Specifically, Tang asserts that it initially believed BRC was simply mistaken when it first blocked Tang's exercise of warrants, but, had Tang known that BRC was "scheming to intentionally violate the law," its "strategy" would have been different.  The Court is not persuaded.  Tang can explain why it believed BRC was mistaken without introducing evidence of what Tang did not know.  In any event, the prejudice from introducing the earnout share evidence substantially outweighs any probative value it may otherwise have and should be excluded pursuant to Fed. R. Evid. 401, 402, and 403.  BRC's motion to exclude argument and evidence about earnout shares is GRANTED.

## V.    Interactions With Non-Parties And Communications Not Involving Tang

BRC moves to exclude evidence about which Tang had no knowledge at the time Tang purchased and sold the warrants at issue.  (Dkt. 228 at 20-26.)  BRC argues that such evidence could not have played any role in Tang's decisions and therefore have no relevance to the damages Tang incurred or the reasonableness of Tang's actions to

mitigate damages.  The evidence at issue includes testimony of non-party investors who also purchased BRC warrants; testimony of BRC witnesses; and internal and external communications of BRC of which Tang was not aware.  The motion is GRANTED IN PART and DENIED IN PART.

### A.    Other Investors Who Purchased BRC Warrants

Tang's witness list includes three non-party investors who held BRC warrants: James Lapp, Jonathan Levene, and John Brian Clark (the "Non-Party Investors").   In 2023, Levene and Clark filed a suit against BRC based on similar allegations as Tang asserts in this action.  *See Clark v. BRC, Inc.*, No. 23-CV-5340 (S.D.N.Y. June 22, 2023) at Dkt. 1.   That action currently is stayed.  None of the Non-Party Investors have been deposed in this action.  According to BRC, none of the Non-Party Investors have personal knowledge of Tang's losses in this action.   None are the author or recipient of any document produced by Tang in this action.  And Tang had no communication with any of them prior to Tang's purchase and sale of warrants at issue in this action.

Tang nonetheless offers two reasons for why testimony from the Non-Party Investors is relevant.  Punitive damages is again one of those reasons.  (Dkt. 242 at 22.) That rationale is moot, however, as the Court has excluded Tang's punitive damages claim.  Tang also contends that testimony of the Non-Party Investors will assist the jury in evaluating BRC's affirmative defenses, particularly mitigation, which turn on the reasonableness of Tang's actions in response to BRC's breach.  (Dkt. 242 at 21.) Perhaps.  But the risk of jury confusion and undue prejudice substantially outweighs the probative value of such evidence.  The reasonableness of Tang's actions will be judged primarily based on what Tang knew when, Tang's relative degree of sophistication as an

investor, and other factors that are specific to Tang.  The same is true of the Non-Party Investors.  Allowing their testimony as evidence of what a reasonable investor would do would devolve into four trials to determine whether the facts confronting each Non-Party Investor were the same or similar enough to those confronting Tang.  Accordingly, the testimony of all three Non-Party Investors should be and is excluded pursuant to Fed. R. Evid. 401, 402, and 403.

Additionally, Tang did not disclose either Levene or Clark as witnesses until the same day Tang unveiled its punitive damages claim.  Even though BRC previously knew of Levene and Clark, BRC had no reason to believe they would be called as witnesses; all the more so given that Tang did list Lapp as a potential witness.  BRC thus did not depose either Levene or Clark.  Tang's belated disclosure unduly prejudices BRC.  The testimony of Levene and Clark therefore also is excluded pursuant to Fed. R. Civ. P. 37(c)(1).

**B.    BRC Witnesses With Whom Tang Did Not Interact**

The second group of witnesses are BRC employees or former employees:  Tanner Doss, BRC's former VP of Investor Relations; Greg Iverson, BRC's former CFO; and Stephen Kadenacy, BRC's corporate designee pursuant to Fed. R. Civ. P. 30(b)(6) (the "Disputed BRC Witnesses").   Tang's witness list indicates that the testimony of each Disputed BRC Witness will address "BRC's statements to investors concerning Warrant registration and exercisability and the Earnout compensation obtained by BRC's insiders." (Dkt. 232 at 8-9.)  As explained above, the earnout share evidence and argument is excluded.  Accordingly, there is no basis to call any of the Disputed BRC Witnesses to testify about earnout compensation.

The Court agrees with Tang, however, that BRC's statements to other investors about the warrants and when they could be exercised is probative of Tang's argument that Tang had reason not to believe, at least not initially, that BRC was repudiating its obligation to allow exercise of warrants in advance of an effective Form S-1 filing.  BRC's communications to other investors about the same issue provides necessary context for the jury to assess the extent to which Tang reasonably understood BRC to be equivocating or otherwise amenable to correcting a mistaken position.  Even though Tang was not aware of what BRC told to other investors, the extent to which BRC itself was not sure of its obligations and equivocated to others in addition to Tang is a fact that a reasonable jury could consider in determining whether and when Tang should have reasonably understood BRC to have unequivocally breached so as to trigger the obligation to mitigate.  (*See* Dkt. 242 at 24.)

The Court does not find any reason to expect the jury to be confused, or BRC unduly prejudiced, that would outweigh, let alone substantially outweigh, the probative value of testimony from BRC's own employees.  Tang thus will be permitted to call the Disputed BRC Witnesses at trial.  Tang must, however, do so consistent with the Court's other in limine rulings (including, but not limited to, exclusion of earnout share evidence).

### C.    Communications Of Which Tang Was Not Aware

BRC contends that all communications to which Tang was not privy or was not aware of at the time it purchased or sold warrants are irrelevant.  BRC identifies three general categories of such communications:   (i) VP of Investor Relations Doss's communications with non-party warrant holders; (ii) communications between BRC and third-party companies, particularly KPMG and Citi; and (iii) internal BRC communications.

Tang again contends that such communications are relevant to punitive damages and to assessing reasonableness of Tang's actions.  (Dkt. 242 at 25-27.)  And, once again, the punitive damages rationale is moot.

For its second rationale, Tang draws upon the non-Tang communications as proof of BRC's bad faith, including "tracking the vesting of the Earnout shares, expressing concerns about share dilution, overruling their advisors on the question of Warrant exercisability, slow-playing the filing, updating, and effectiveness of their resale Form S-1, and sending congratulatory text messages."  (Dkt. 242 at 26-27.)  Tang asserts that it operated on the assumption that BRC was acting in good faith, and, had Tang known otherwise, Tang "would have altered [its] investment strategy."  (*Id.* at 27.)  The Court is not persuaded.  The facts Tang seeks to establish go to motive, bad faith, and punitive damages.  They are not probative of the reasonableness of Tang's actions upon being informed by BRC that it would not allow exercise of warrants until a Form S-1 became effective.

Accordingly, communications between BRC and others or internal to BRC are excluded to the extent they are offered to demonstrate bad faith.  To be clear, however, the Court is not granting a blanket exclusion of all BRC communications of which Tang was not aware at the relevant time.  For instance, as explained above, Tang may introduce evidence of Doss's communications to other investors.

## VI.    BRC Marketing And Political Activity

Finally, BRC moves to exclude evidence concerning its political affiliations and marketing of its products.  (Dkt. 228 at 26-27.)  Tang responds that it has no intention of making BRC's political activity an issue at trial, unless BRC opens the door such as by

presenting itself to the jury as a "public benefit corporation" with the "purpose of serving veterans." (Dkt. 242 at ECF 28.)  BRC responds that referencing its corporate status and purpose of serving veterans "for context" does not open the door.  The Court agrees that politics has no place at trial.  At the same time, the Court also does not find relevant BRC's status as a public benefit corporation or having a purpose to serve veterans.  Tang should not be permitted to tar BRC with irrelevant information; and, BRC should not be able to curry favor with the jury with irrelevant information.  The Court finds that the prejudicial effect of introducing evidence about both topics substantially outweighs any probative value it may have and should be excluded pursuant to Fed. R. Evid. 401, 402, and 403.  Accordingly, BRC's motion to exclude evidence of BRC's political activity is GRANTED; and, additionally, BRC may not refer to itself as a "public benefit corporation" or to its purpose of serving veterans.

### Affirmative Defenses

In its pretrial briefing and proposed jury instructions, BRC has indicated that, in addition to its mitigation defense, it also seeks to advance affirmative defenses of election of remedies and waiver.  BRC argues that the additional affirmative defenses are relevant to Tang's sale of 300,000 warrants that Tang did not attempt to exercise. (Dkt. 229 at 10-11.)  The Court agrees with Tang that neither defense applies.  (*See* Dkt. 238 at 8-10.)

On summary judgment, BRC argued that Tang could not recover for losses incurred in connection with sale of the 300,000 warrants because Tang did not attempt to exercise them.  But as the Court reasoned on summary judgment, a jury could find that Tang acted reasonably in treating the formality of exercise as futile and selling the

warrants to mitigate its losses.  (Dkt. 211 at 79.)  The Court also noted that Tang exhibited

seemingly inconsistent conduct that could undermine its futility claim:

> Perhaps most pointedly, Tang's own conduct is inconsistent and raises credibility issues.  Despite its assertion that it "had no choice" but to sell starting on April 7, 2022, only the day before began Tang started selling the 300,000 Warrants, Tang completed a three-day round of buying 174,394 warrants, for which it now claims damages.  (*See* First Salant Decl. Ex. 100.)  And, just two days after Tang sold the last tranche of the 300,000 Warrants, Tang attempted to exercise Warrants, apparently making the choice it claims not to have had just two days earlier.  (Def. Counter 56.1 ¶ 208.)  Indeed, Tang's argument that it should recover for the largest tranche of Warrants in this case (discussed below) is premised on its having attempted to exercise them on April 13, 2022.  A reasonable juror could well reject the notion that Tang "had no choice" and would have deemed it futile to attempt exercise Warrants on April 7, 8, and 11, but not on April 13; another reasonable juror might conclude otherwise.

(*Id.* at 80.)

BRC argues that Tang's conduct – in one instance attempting to exercise warrants

and in another instance selling warrants because exercise would be futile – violates the

doctrine of election of remedies.  The election doctrine applies as follows:

> When a party materially breaches a contract, the non-breaching party must choose between two remedies – [it] can elect to terminate the contract and recover liquidated damages or [it] can continue the contract and recover damages solely for the breach.  A party can indicate that [it] has chosen to continue the contract by continuing to perform under the contract or by accepting the performance of the breaching party.  Once a party elects to continue the contract, [it] can never thereafter elect to terminate the contract based on that breach, although [it] retains the option of terminating the contract based on other, subsequent breaches.

*Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011-12 (S.D.N.Y.1995) (internal citations omitted).   In other words, the non-repudiating party cannot treat the contract as both breached and continuing at the same time.

As an initial matter, BRC never pleaded election of remedies as an affirmative defense.  That is notable, because BRC included a laundry list of more than ten defenses in its answer to the complaint – a list that did not include election of remedies.  (Dkt. 61 at 32-33.)  BRC's answer did expressly reserve the right to amend its answer and assert additional affirmative defenses based on discovery.  (*Id*. at 33.)  Yet BRC never amended its answer to include an election defense.  Nor is the Court aware of anything disclosing to Tang either during or at the close of fact and expert discovery that BRC intended to assert a defense based on election of remedies.[7]   Accordingly, BRC may not now assert the defense.  *Foster v. Lee*, 93 F. Supp.3d 223, 229-30 (S.D.N.Y. 2015) (citing *Wood v. Milyard,* 566 U.S. 463, 470, 132 S.Ct. 1826, 1832 (2012)).[8]

In any event, the election of remedies doctrine does not apply here.   "[T]he operative factor" in determining whether a party has made an election "is whether the

---

[7] BRC's Fourth Affirmative Defense is itself a list of several separate defenses, stating that "Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, equitable estoppel, *in pari delicto*, unclean hands, and/or other related equitable doctrines."  (Dkt. 61 at 32.)  Election of remedies has been referred to as an equitable doctrine.  *See, e.g.*, *Optima Media Group Limited v. Bloomberg L.P.*, No. 17-CV-1898, 2021 WL 1941878, at *15 (S.D.N.Y.  March 14, 2021) (describing the election of remedies doctrine as "an equitable rule applied sparingly by New York courts").  Notably, BRC's Fourth Affirmative Defense list does not include election of remedies, and the unspecified and vague catchall "other related equitable doctrines" provides no notice at all and did not absolve BRC of its obligation to amend its answer or otherwise provide affirmative notice that it intended to pursue election of remedies as a defense.

[8] While there are exceptions to the rule precluding unpled affirmative defenses, the Court finds that none of them are applicable here.

non-breaching party has taken an action (or failed to take an action) ***that indicated to the breaching party*** that he made an election." *Bigda*, 898 F. Supp. at 1013 (emphasis added).  Here, the only information that Tang communicated to BRC was that Tang understood the contract to be enforceable and that it sought to exercise warrants.  That Tang purchased additional warrants, or sold warrants without trying to exercise them, provided no information to BRC about Tang's having made an election of any sort.  Moreover, Tang at no point elected to terminate the Warrant Contract.  It thus is not a party who "elects to continue the contract" but then "terminate the contract based on that breach."  *Id.* at 1012.  Tang may well have acted inconsistently, thus jeopardizing the credibility of its argument that it acted reasonably at all times.  But it did nothing to indicate that it elected to treat the contract as terminated and was "renouncing its own obligations." (*See* Dkt. 233 at 51, 54, 57 (BRC asserting that election prohibits a party from treating a contract as continuing while "renouncing its own obligations").)

For similar reasons, BRC has no basis for asserting a waiver defense.  Tang did nothing at any time to indicate to BRC that Tang was relinquishing its contractual rights. *See Nassau Trust Co. v. Montrose Concrete Products Corp*., 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663 (N.Y. 1982) (waiver is "the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable").

Finally, BRC's introduction of election and waiver theories is at odds with its defense that Tang had a duty to mitigate its damages, one strategy for which was to sell warrants to reduce damages – exactly what Tang did in selling the 300,000 warrants.

**Conclusion**

For the foregoing reasons, the parties' motions in limine are GRANTED IN PART and DENIED IN PART as set forth above.  To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be either moot or without merit.

The Clerk of Court is directed to terminate the motions at Dkts. 227 and 236.

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:    June 27, 2025
          New York, New York