UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TANG CAPITAL PARTNERS, LP,   :
            :
       Plaintiff,  :    22-CV-3476 (RWL)
            :
   - against -     :
            :    **ORDER**
BRC INC.,        :
            :
       Defendant. :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

   The Court has reviewed and considered the parties' joint letter requesting modifications to the jury instructions, voir dire, and verdict form. (*See* Dkt. 260.) Attached to this order are (1) an annotated version of the parties' joint letter with the Court's rulings added in blue in the left margin; (2) the Court's revised drafts of voir dire, instructions, and verdict form; and (3) compare versions of the current versions with the versions previously provided by the Court at Dkt. 251. The Court will provide the parties with Word versions of the current versions of voir dire, instructions, and verdict form, and will discuss any remaining issues with the jury materials at the next conference.

          SO ORDERED.

          _____
          ROBERT W. LEHRBURGER
          UNITED STATES MAGISTRATE JUDGE

Dated:  July 14, 2025
     New York, New York

Copies transmitted this date to all counsel of record.

July 10, 2025

**Via ECF**

The Honorable Judge Robert W. Lehrburger
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

   Re: *Tang Capital Partners, LP v. BRC Inc.*, No. 22 Civ 3476 (S.D.N.Y.) (RWL)

Dear Judge Lehrburger:

Pursuant to the Court's Order dated June 30, 2025, ECF No. 251 at 1, the parties have met and conferred and respectfully submit this joint letter indicating (1) requested edits to the voir dire and verdict form and (2) requested edits to the jury instructions.

The Parties' proposed edits to the jury materials are described below. Proposed versions of both are attached as Exhibits, and Word documents of the same will be sent to Chambers via email.

**Parties' Jointly Suggested Changes**

   *Voir Dire*:

The Parties consent to the following changes:

Granted

- Page 4, ¶ 4: "The attorneys and staff from that firm who will be appearing in court are Reed Brodsky, David P. Salant, Laura Londoño Pardo, Elizabeth Brilliant, Laura Wang, and Ariel Santamaria. Do you know any of these individuals?"

Granted

- Page 4, ¶ 5: "The attorneys and staff from that firm who will be appearing in court are William C. Price, Samuel G. Williamson, Jason D. Sternberg, David A. Nabors, and Nicholas J. Inns, Olga Garcia, Humberto Ferrer, and Michael Kim. Do you know any of these individuals?

Granted

- Page 5: Correct spelling of Michael Hearne.

   *Jury Instructions*:

The Parties have no revisions to jury instructions 3 through 10, 13–14, 16–18, and 20, which they find fully acceptable.

The Parties consent to the following changes:

Granted

- Global: Replace "Tang" with "Tang Capital" throughout the instructions.

Granted

- Pages 2, 23: Replace "Tang's breach" with "BRC's breach"

Granted
- Page 11: Replace "party produced the exhibit" with "party offered the exhibit into evidence" to conform with presentation of the evidence at trial.

Granted
- Page 12: Remove "to their clients" for simplicity.

- Page 15: Add example.

Granted
- Page 19: Replace "affirmative defenses" with "affirmative defense of mitigation," as only one affirmative defense remains.

   o BRC reserves its right to renew its request for election of remedies and waiver instructions.

Granted
- Page 19: Replace "who may have produced them" with "who may have offered them" to conform with presentation of the evidence at trial.


**Tang Capital's Individual Proposals**

Below, Tang Capital lists its additional proposed revisions:

*Jury Instructions*:

- Page 1: Clarifications regarding parties and party names.

Objection sustained
   o BRC objects to Tang's proposed edits to page 1. Defendant's name is BRC Inc. and can be referred to as BRC for short. There is no need for clarification.

- Pages 1, 21: Delete "if any" after "damages" as both Parties' damages theories acknowledge Tang Capital is owed some amount of damages.

Objection overruled
   o BRC objects to this change. Tang has acknowledged it has the burden of proving its compensatory damages, and the amount of damages Tang is owed is up to the jury.

   o Tang Capital replies that even accepting BRC's own proffered materials, such as its second supplemental Hendershott damages scenarios, acknowledge that Tang Capital has suffered, at a minimum, $936,230 in damages (without prejudgment interest), even accepting BRC's most extreme mitigation arguments. *See* ECF No. 253-1 at 2.

Objection sustained
- Page 2: Replace "of" with "in favor of"

   o BRC objects to this change. It is already implicit.

Objection overruled
- Page 2: Replace "argued" with "claimed" for parity.

○ BRC objects to this change.  The sentence is accurate and the parties are not in parity; BRC is the defendant.

○ Tang Capital replies that both sides have made claims in this case.  Tang Capital claims that BRC owes damages for its breach of the Warrant Agreement.  BRC claims that Tang Capital failed to mitigate.  Both bear their own respective burdens.

*Granted in part. See court's modification*

• Page 2:  Adjust language regarding mitigation to conform with outstanding factual dispute.

○ BRC assumes Tang is referring to Tang's proposal to change the Court's sentence "BRC asserts that Tang Capital failed to act reasonably to reduce its losses once Tang Capital became aware that BRC would not allow Tang to exercise the warrants and that, as a result, Tang Capital's damages should be reduced" to "BRC ~~asserts~~ claims that Tang Capital failed to act reasonably to reduce its losses once Tang Capital ~~became aware that BRC would not allow~~ ~~Tang Capital to~~ was not able to exercise the warrants and that, as a result, Tang Capital's damages should be reduced."  The Court's sentence accurately characterized BRC's assertion in this case, which is all that sentence purports to do.

○ Tang Capital replies that it removed this language—"became aware that BRC would not allow"—because the way the sentence is structured assumes the truth of a disputed fact.

*Granted in part. See court's modification*

• Page 2:  Replace "these matters" with "what amount of damages BRC should pay Tang Capital as a result of BRC's breach of the contract."

○ BRC objects to this change as unnecessary and suggestive.

○ Tang Capital replies that the reference to "these matters" is vague and merits clarification.

*Objection sustained*

• Page 21, 22:  Replace "incurred" with "was subject to" for simplicity.

○ BRC objects to this change.  It is not simpler and is suggestive.

○ Tang Capital replies that "incurred" is an uncommon word, which may not be understood by all non-lawyers on the jury.

***Verdict Form***:

*Objection overruled*

• Delete "if any" after "damages" as both Parties' damages theories acknowledge Tang Capital is owed some amount of damages.

○ The parties respectfully renew their points regarding the use of the words "if any" as set forth above.

**BRC's Individual Proposals**

Below, BRC lists its additional proposed revisions:

***Jury Instructions*:**

Granted in part. Court has adopted language of NY PJI 4:20.1. See court's modification.

- Page 23, Instruction No. 15: Change the first sentence of the second paragraph to read: "The law imposes on ~~injured~~ parties injured by a breach of contract a requirement to mitigate their damages once they know or have reason to know of the defendant's breach."

  o BRC respectfully submits that because the core issue to be tried is "when Tang 'should have realized that BRC was not going to change its mind,'" the instruction should clarify that the duty comes into play "when a plaintiff learn[s] that the defendant intended to breach the contract." Dkt. 211 at 84 (citation omitted; alterations adopted; quoting *Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir. 1985)). This or similar language is part of the standard New York instruction on mitigation. *See* New York Pattern Jury Instruction § 4:20.1 (stating that "[w]here mitigation of damages is at issue, the following should be added to the damages charge": …."The duty to reduce or avoid damages arises when it is no longer reasonable to believe that the other party will perform the contract."). In its reply below, Tang does not explain why the Court should deviate from New York pattern instruction or how an essentially verbatim quote of a precedential Second Circuit case—or of the New York pattern instruction on mitigation—is suggestive or prejudicial. A recitation of a hornbook legal rule is not prejudicial. BRC disagrees with Tang's suggestion that the New York pattern instruction imposes a "higher burden" than, or differs materially from, the above-proposed language. Accordingly, BRC would also accept an instruction that the plaintiff's mitigation obligation arises "when it is no longer reasonable to believe that the other party will perform the contract" as equally appropriate.

  o Tang Capital objects to BRC's proposed change. The Court's drafted formulation is clear, accurate, and in accordance with the Court's summary judgment ruling as well as New York law. *See* ECF No. 211 at 77, 84. A "plaintiff's duty to mitigate its losses does not arise . . . until it incurs losses that require mitigating; that is, losses caused by the defendant's breach." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *20 (S.D.N.Y. Aug. 31, 2016). BRC's proposed change is suggestive, unduly prejudicial to Tang Capital, and unduly weighted toward its position on mitigation. BRC's suggestion that Tang Capital "kn[e]w or ha[d] reason to know" of BRC's breach before it actually happened is contrary to the Court's "determination of liability" which "was not premised on[] a theory of anticipatory repudiation." ECF No. 250 at 6 n.1. Moreover, Tang Capital objects to BRC's proposed language because it changes what the New York Pattern Jury Instruction § 4:20.1 actually states in a material way that reduces BRC's burden and unduly prejudices Tang Capital. The pattern instruction does not state that parties injured by a breach of contract have a duty to mitigate once they "have reason to know" of the defendant's breach. Rather, it states that "[t]he duty to reduce or avoid damages arises when it *is no longer reasonable to believe* that the

4

other party will perform the contract" – a much higher burden than what BRC suggests. New York Pattern Jury Instruction § 4:20.1 (emphasis added).

Granted as modified. See court's modification.

- Page 23, Instruction No. 15: Add the following language to the second sentence of the third paragraph: "A party is not required to incur undue risk, burden, or expense to mitigate its damages, but it may be required to take such affirmative steps as are reasonable in the circumstances to avoid loss."

  - BRC respectfully submits that this language is necessary to provide a complete and accurate definition of a party's mitigation obligations under New York law, particularly given several of the disputed factual issues in this case. *See, e.g.*, Restatement (Second) of Contracts § 350 cmt.b (plaintiff "is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise").

  - Tang Capital objects to BRC's proposed change. The Court's drafted formulation is clear, accurate, and in accordance with the Court's summary judgment ruling as well as New York law. *See* ECF No. 211 at 77. BRC's proposed change is suggestive, unduly prejudicial to Tang Capital, and unduly weighted toward BRC's position on mitigation. If its revision is permitted, the instruction should, in fairness, end with the following text: "without undue risk, burden, or expense." *See* ECF No. 211 at 77 (citing *U.S. Bank National Association v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440, 441 (S.D.N.Y. 2010).

***Voir Dire*:**

Objection overruled

- Page 2: Replace "prevented Tang from doing so" with "did not allow Tang to do so."

  - Tang Capital objects. The Court's drafted formulation is clear, accurate, and in accordance with the Court's summary judgment ruling. ECF No. 211 at 1 ("BRC rebuffed those attempts, preventing Tang from exercising the warrants when it would have been particularly profitable to do so.").

Objection sustained; but court has removed one of the "award damages" questions as duplicative.

- BRC requests the following case-specific question: "In this trial, BRC will argue that Tang Capital did not take reasonable steps to reduce or minimize its losses. Would you have difficulty reducing the damages of a plaintiff in a contract dispute, if you found that plaintiff did not take reasonable steps to minimize or reduce its losses?" BRC respectfully submits that prospective jurors' answer to this question is important to assessing their impartiality in the context of this case.

  - Tang Capital objects. BRC previously submitted a version of this *voir dire* question to the Court in the joint materials filed on April 29, 2025. *See* ECF No. 235 at 3 (noting BRC's proposed case-specific question, to which Tang Capital objected). At that time, BRC asked the Court to include the following language: "Would you have difficulty reducing or eliminating damages for a plaintiff who failed to take reasonable steps to minimize their losses after a contract dispute?" *Id.* The Court considered the parties proposals and declined to include that question in its draft

jury materials circulated on June 30, 2025. ECF No. 251. BRC's attempt to relitigate an already-resolved issue should be denied. This conditional question should not be included because it is confusing, unduly suggestive, and weighted toward BRC's position. This question as amended also wrongly implies there was "a contract dispute" when, in fact, this Court held BRC breached the contract. If permitted, in fairness and equity, Tang Capital should be permitted to ask, "Would you have difficulty increasing or awarding full damages for a plaintiff who took reasonable steps to minimize loss after a party breached the contract?"

    o  BRC replies that the question is not suggestive; it simply and explicitly characterizes BRC's argument and asks whether jurors would have difficulty in impartially considering that argument. Such questions are commonly used in voir dire to assess jurors' ability to be impartial.

**_Verdict Form_:**

<span style="color:blue">Objection sustained</span>

- BRC respectfully requests that the question on the verdict form be edited as follows: "What amount of money damages, if any, do you find should be awarded to Tang Capital for BRC's breach of contract, <span style="color:red">after taking into account BRC's mitigation defense</span>?" BRC submits that this addition will clarify that the jury's verdict should incorporate any mitigation findings it makes.

    o  Tang Capital objects. During the June 25, 2025 conference, BRC told the Court, "On further consideration, we are okay with the plaintiff's proposed verdict form." Hearing Tr. at 69:23–25. BRC requested edit is untimely, prejudicial, confusing, and improper because it assumes that the jury must credit BRC's mitigation defense. The Court's proposed instructions on mitigation are crystal clear that the jury may reduce its award of compensatory damages by whatever amount it finds Tang Capital could have avoided had it not failed to act unreasonably. The proposed change, among other things, interferes with the jury's objective determination of damages in this case.

We thank the Court for its consideration.

Respectfully submitted,


By: */s/ Reed Brodsky*                      By: */s/ Jason D. Sternberg*

Reed Brodsky                                Jason D. Sternberg
David Salant
Elizabeth Brilliant                         QUINN EMANUEL URQUHART &
Laura Londoño Pardo                         SULLIVAN LLP
                                            Samuel G. Williamson
GIBSON, DUNN & CRUTCHER LLP                 David A. Nabors
200 Park Avenue                             2601 South Bayshore Drive
New York, NY 10166                          Suite 1550
Telephone: (212) 351-3197                   Miami, FL 33133
                                            Telephone: (305) 402-4880
*Counsel for Plaintiff Tang Capital*
*Partners, LP*                              Nicholas J. Inns
                                            1300 I Street NW
                                            Suite 900
                                            Washington, D.C. 20005
                                            Telephone: (202) 538-8000

                                            *Counsel for Defendant BRC Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
**TANG CAPITAL PARTNERS, LP,**

                             **Plaintiff,**

                **-against-**                          **22 Civ. 3476 (RWL)**

**BRC INC.,**

                             **Defendant.**
--------------------------------------------------------------X

**JURY VOIR DIRE**
**(DRAFT JULY 14, 2025)**

### Background

Our system of justice deems all litigants as equals and requires that they be treated fairly and impartially. That requires having fair and impartial jurors. To that end, I and the lawyers are going to ask you some questions to determine if you should be a juror in this particular case. So, please listen carefully and answer truthfully.

Before the questions, however, I am going to provide you with a very brief description of the case. This is a civil lawsuit, not a criminal one. As I will instruct you later, the standard of proof in a civil case is different than in a criminal case.

In this case, the Plaintiff is Tang Capital Partners, LP, which I will refer to as Tang Capital. The defendant is BRC, Inc. BRC is short for Black Rifle Coffee Company. I will refer to the defendant as BRC.

Tang Capital is a private investment company. In the Spring of 2022, Tang Capital made some investments giving Tang the rights to purchase the stock of BRC at a set price. When Tang sought to exercise those rights and purchase BRC's stock, BRC prevented Tang from doing so.

Tang then sued BRC claiming that BRC failed to comply with – or breached – its contractual obligations to Tang. This Court has already ruled on the merits of Tang Capital's claim against BRC. The Court found that BRC did in fact breach its contractual obligations.

Because the Court already has ruled on the merits of Tang Capital's claim, the only issue being decided at this trial is damages – that is, the amount of money, if any, that Tang Capital should receive as a result of BRC's breach of contract.

I will now proceed to ask you questions.  The questions will take place in two parts.  The first set of questions I will ask all of you in this courtroom.  The second set of questions will take place individually, one juror at a time, in my robing room.  To begin, I will administer an oath requiring you to truthfully answer the questions posed to you.

## Oath

"I do solemnly swear or affirm that I will truthfully answer all questions that shall be asked of me regarding my qualifications as a juror in the case now called for trial."

**TO THE PANEL**

**<u>Knowledge Of Parties And Witnesses</u>**

1.  Do any of you have any personal **knowledge of this particular** case aside from what I have told you so far?

2.  Are any of you familiar with the plaintiff **Tang Capital Partners, LP**?

3.  Are any of you familiar with the defendant **BRC, Inc., also known as Black Rifle Coffee Company**?

4.  The plaintiff Tang Capital is represented by the law firm **Gibson, Dunn & Crutcher LLP**.  Are any of you familiar with that firm?

The attorneys and staff from that firm who will be appearing in court are **Reed Brodsky, David P. Salant, Laura Londoño Pardo, Elizabeth Brilliant, Laura Wang, and Ariel Santamaria**.  Do you know any of these individuals?

5.  The Defendant BRC is represented by the law firm **Quinn, Emanuel Urquhart & Sullivan LLP**.  Are any of you familiar with that firm?

The attorneys from that firm who will be appearing in court are **William C. Price, Samuel G. Williamson, Jason D. Sternberg, David A. Nabors, Nicholas J. Inns, Olga Garcia, Humberto Ferrer, and Michael Kim**.  Do you know any of these individuals?

6.  Do you know any of the following **witnesses** who may testify in this case:

- Jonathan Arnold

- Tanner Doss

- Michael Hearne

- Terrence Hendershott

- Gregory Iverson

- Stephen Kadenacy

- Andrew McCormick

- Danica Mock

- Ryan Murr

- AJ Perea

- Peter Seligson

- Kevin Tang

- Brandon Wang

7.      Do you recognize any of the other **potential jurors** who are here?

8.      Have any of you ever purchased or consumed **Black Rifle Coffee Company products**?

### Ability to Follow the Proceedings

9.      Do any of you have any problem hearing or seeing, or any problem reading, speaking or understanding the **English** language?

10.     Do any you have any **medical**, physical or psychological condition that would make it difficult for you to serve as a juror?

11.    Trial of this case is expected to last about ⬜ **days**.  Is there any reason you cannot serve on the jury for that period of time?

### Ability to Render an Impartial Verdict Generally

12.    Given what I have told you about the case, does anyone believe that he or she could not be a **fair and impartial** juror?

13.    As a juror, you must **keep an open mind** about this case until hearing all of the evidence, the arguments of both sides and the instructions on the law I will give.  Do any of you think you will not be able to keep an open mind?

14.    If selected as a juror, you will be **instructed by me not to talk** to anyone about the case until it is over.  And you will not be allowed to speak with other jurors about the case until the trial ends and you and the other jurors begin your deliberations.  Does anyone think they cannot follow that instruction?

### Ability to Render an Impartial Verdict – Case Specific

15.    Do any of you have opinions, either positive or negative, about people or entities who invest money in **stocks or other securities**?

16.    Are any of you familiar with a type of company called a special-purpose acquisition company, otherwise known as a **SPAC**?   Do you have any opinions, either positive or negative, about SPACs?

17.    Do any of you have concerns about awarding **money damages** against a **public company** that has breached a contract?

**<u>Ability to Apply the Law as Given by the Court</u>**

18.    Under our system of justice, for the claims that are being submitted to a jury, the decisions concerning the facts of the case are the responsibility of the jury, and decisions concerning the law are the responsibility of the Court.  At the close of this trial, I will instruct you as to the law that you are to apply and you are required to accept it as stated. With this in mind, do any of you feel that for any reason you may not be willing or may not be able to **apply the law as instructed by me**?

19.    Do any of you believe that you would not be able to follow my instructions regarding the law to be applied **if you disagree** with my instructions or feel that the law ought to be something different from what I tell you?

**INDIVIDUAL QUESTIONS**

20.    In what **town** do you live, and how long have you lived there?

21.    What is the highest level of **education** you have completed?

22.    How are/were you most recently **employed**?

23.    Do you have any **legal training**?  If yes, explain.

24.    Do you have any **financial or investment** training?  If yes, explain.

25.    Have you ever worked in the **finance, investment, or legal** industries?  If yes, explain.

26.    Have you ever invested in stocks, bonds, options, or warrant securities?  How would you characterize your level of **investing experience**?

27.    Do you have a **spouse or partner**?  If yes, what do they do?

28.    Do you have any grown **children**? If yes, what do they do?

29.    How do you learn about the **news**?

30.    What **social media** platforms do you use?

31.    What do you like to do in your **spare time**?

32.    Have you, or has any member of your family or a close personal friend, ever been a **party in a lawsuit**?  If yes, did the case end to your (or their) satisfaction?  If not, did you (they) feel that trial was conducted fairly?

33.    Have you ever testified as a **witness** in a lawsuit?  If yes, what type of case?  What did you think of the experience like?

34.    Have you ever served on a **jury** before?  If yes, what type of case?  Did the jury reach a verdict?  What did you think of the experience?

35.    Based on your **life experience**, do you believe there is anything that would cause you to lean in favor of either the plaintiff or the defendant in this case?

36.    Is there **any matter not covered** by my questions that should be brought to my attention because it would affect your ability to be a juror in this case and to render an impartial verdict?

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**TANG CAPITAL PARTNERS, LP,**

                                        **Plaintiff,**

                    **-against-**                    **22 Civ. 3476 (RWL)**

**BRC INC.,**

                                        **Defendant.**
-----------------------------------------------------------------X

**JURY INSTRUCTIONS**
**(DRAFT JULY 14, 2025)**

# TABLE OF CONTENTS

A. Pre-Trial Instructions ....................................................................................... 1

    1. Jury Instruction No. 1 (Introduction to the Case) .................................. 1
    2. Jury Instruction No. 2 (Schedule) ......................................................... 3
    3. Jury Instruction No. 3 (Order of Trial) ................................................... 4
    4. Jury Instruction No. 4 (Juror Conduct) ................................................. 5

B. Pre-Trial (Except No. 5) And Pre-Deliberation Instructions — General ..................... 8

    5. Jury Instruction No. 5 (Introduction to Deliberations) ....................... 8
    6. Jury Instruction No. 6 (Impartiality) ...................................................... 9
    7. Jury Instruction No. 7 (Jury and Court Function) .............................. 10
    8. Jury Instruction No. 8 (Evidence) ...................................................... 11
    9. Jury Instruction No. 9 (Evidence—Reasonable Inferences) ............. 14
    10. Jury Instruction No. 10 (Direct Evidence and Circumstantial Evidence) ........ 15
    11. Jury Instruction No. 11 (Credibility and Weight of Evidence) ............. 16
    12. Jury Instruction No. 12 (Expert Witnesses) ...................................... 18
    13. Jury Instruction No. 13 (Burden of Proof—Preponderance of Evidence) ...... 19

C. Pre-Deliberation Instructions — Substantive ........................................... 21

    14. Jury Instruction No. 14 (Compensatory Damages) ....................... 21
    15. Jury Instruction No. 15 (Mitigation) ................................................... 23

D. Pre-Deliberation Instructions — Concluding ........................................... 25

    16. Jury Instruction No. 16 (Duty to Deliberate) ..................................... 25
    17. Jury Instruction No. 17 (Foreperson and Return of Verdict) ............. 26

**PRE-TRIAL INSTRUCTIONS**

**Jury Instruction No. 1**
**(Introduction to the Case)**

Members of the jury, we are about to begin the trial of the case that you heard about during jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.  First, I am again going to provide you with a short description of the case.  Although this description is similar to the one I read for jury selection it has more information.  So please listen carefully.

This trial is about how much money damages the Plaintiff Tang Capital should receive because Defendant BRC did not comply with an agreement concerning investments made by Tang Capital.

In the Spring of 2022, Tang Capital purchased publicly available securities known as warrants.  The warrants were issued by BRC.  When Tang Capital purchased the BRC warrants it became what is called a holder in those warrants.

A warrant provides the warrant holder with the right to purchase the stock of a particular company at a set price.  When the warrant holder wants to use the warrants to purchase the company's stock, the warrant holder is said to exercise its rights in the warrants.

Here, the warrants Tang Capital purchased were governed by a contract called the Warrant Agreement.  The Warrant Agreement required certain conditions to be met before warrant holders, like Tang Capital, could exercise their warrants.

When Tang Capital attempted to exercise the BRC warrants it held, BRC blocked Tang Capital from doing so.   Tang Capital sued BRC, claiming the conditions to exercise

the warrants had been met, and that BRC failed to comply with – or breached – its contractual obligations under the Warrant Agreement by preventing Tang Capital from exercising the warrants it held.  BRC claimed that the conditions required to exercise the warrants had not been met.

This Court has already ruled on the merits of Tang Capital's claim against BRC. After the parties exchanged documents and questioned witnesses, the Court ruled that, by March 11, 2022, the conditions required to exercise the BRC warrants had been met and that BRC breached its contractual obligations to honor the warrants held by Tang Capital.

Because the Court already has ruled on the merits of Tang Capital's claim, the only issue being decided at this trial is damages.  That is, what amount of money, if any, should Tang Capital receive for damages caused by BRC's breach of contract.

Tang Capital claims that BRC's breach of contract caused Tang Capital to lose millions of dollars.  BRC claims that Tang Capital failed to act reasonably to reduce its losses and that, as a result, Tang Capital's damages should be reduced.

You will hear about and decide the damages issues in this case.

**Jury Instruction No. 2**
**(Schedule)**

Let me say a few words about scheduling:

Our trial day will begin at 9:30 a.m. each day and will last until approximately 4:30-5:00 in the afternoon.  We generally will break for lunch somewhere between 12:30 and 1:00.  I also will try to have a short 10 or 15 break both mid-morning and mid-afternoon.

It is essential that you be on time in the mornings and returning from lunch and breaks.  We cannot start until all of you are here.  If one of you is late, we will have to wait until you arrive.  So, I ask that you all arrive on time.

That said, there may be occasions when I will need you to wait before we resume. Each day, there are various matters concerning the trial that I need to discuss with the lawyers.  I try to do that before and after trial each day, but sometimes it may be unavoidable that those issues may take up more time than expected.  I expect the lawyers to work with me in minimizing any such intrusions into our trial day.

**Jury Instruction No. 3**
**(Order of Trial)**

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, the plaintiff Tang Capital will present evidence in support of its claim, and the lawyers for defendant BRC may cross-examine witnesses called by Tang Capital.

After Tang Capital has presented its case, BRC may introduce evidence, and the lawyers for Tang Capital may cross-examine witnesses called by BRC.

In some instances, Tang Capital and BRC may call some of the same witnesses, though these witnesses will generally only be called once, for their convenience and yours.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case. At the end of the trial, you will have to make your decision based on what you recall of the evidence. I urge you to pay close attention to the testimony as it is given.

**Jury Instruction No. 4**
**(Juror Conduct)**

I will now address with you a few "dos" and "don'ts":

First, if you would like, you may take notes during the trial. You have a pad of paper and a pencil or pen for that purpose.  Please write your name on the cover.  Unless instructed to the contrary, the notepad should be left on your seat anytime you leave the courtroom.  Of course, if you prefer not to take notes, that is fine.  But if you do take notes, remember that any notes you take are for your use only, and they are only to be used as an aid to memory.  Your memory controls.  If you do take notes, be careful not to get so involved in taking notes that you are not listening to  or looking at the evidence.  Once you are in deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony.  The controlling record of the evidence is the official court transcript, not any particular juror's notes.

Second, during the course of trial, exhibits will be received into evidence.  They will be marked by exhibit number and will be discussed by the witnesses and/or shown to you.  If there is an exhibit that you are interested in seeing, you can ask to see the exhibit once you are in deliberations.  So, you may find it helpful to write down the exhibit number during trial.

Third, you will not be able to ask questions of the witnesses or their attorneys.  If you have a problem or a particular need, please let our Courtroom Deputy know.

Fourth, from now and all during the trial you are not to communicate about the case with anyone.  This means that you cannot discuss the case with your co-jurors until

the trial is over and you begin deliberations.  Once you do begin deliberations, you may only discuss the case if all jurors are present.

Fifth, other than your co-jurors during deliberations, you are not to communicate about the case with anyone (partner, family, friend, or anyone else) until after the jury has reached its verdict and you have been discharged.  This prohibition applies to communication in any form, including electronic communication.  You may not post any information on the internet or through any other medium about your participation on this jury or about this trial.  That means that you may not use social media or email, tweet, text or use any other form of electronic communication to identify the trial, to disclose the identity of any person involved in the trial, or to disclose the nature of the controversy, what occurs in the trial, or what you or others think about the evidence presented.  If you have to tell someone, such as your spouse or your employer that you are serving on a jury and that the trial is expected to last ▮▮▮ days, that is okay.  But when they inevitably ask you what the case is about, please tell them you are under strict instructions from the judge not to discuss the case.  The reason for this is that we want you to decide the case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who has not heard the evidence may think about the case.

If any person asks or tries to contact you about this case, politely but firmly tell them that the judge has ordered you not to do so.  If any person does contact you about the case, or if you receive information about the case from any person or through any medium, please provide a note to the Courtroom Deputy, who will pass it on to me.

Sixth,  while you are serving as jurors, please do not have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevator, outside, or anywhere else.  By this, I mean not only to avoid

talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people.  Someone seeing a juror in conversation with a party, lawyer or witness might think that something improper was being discussed even if it wasn't.  To avoid even the appearance of impropriety, avoid any such contact or conversations. Similarly, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude – they are simply following my instructions.

Seventh, do not do any research or make any investigation about the case.  Do not consult books or dictionaries.  Do not visit sites or search on the internet for information about any party, counsel, witness, event or other information concerning this case.  Similarly, do not read, watch, or listen to anything reported by the media or press that relates to the case – this includes newspapers, TV, radio, social media, or other internet commentary.  In the unlikely event you see anything in the media about this case, please turn away and pay no attention to it.  Remember, your sworn oath requires you to limit yourself to the evidence presented in the courtroom.

Finally, do not form an opinion about the case until all the evidence is in.  A case can be presented only step-by-step, witness-by-witness, until all the evidence is before you.  Keep an open mind throughout trial.

**PRE-TRIAL (Except No. 5) AND PRE-DELIBERATION INSTRUCTIONS—GENERAL**

**Jury Instruction No. 5**
**(Introduction to Deliberations)**

Members of the jury, we come now to that portion of the trial where you are instructed on the law applicable to the case and you then retire for your final deliberations. You have now heard all the evidence introduced by the parties, and through arguments of their attorneys you have learned the conclusions that each party believes should be drawn from the evidence presented to you.  This charge is divided into roughly two parts: the first part consists of general principles of law applicable to all civil cases; the second part consists of charges directed specifically to the law you must follow in this case.

**Jury Instruction No. 6**
**(Impartiality)**

A lawsuit is a civilized method of determining differences between people.  It is basic to the administration of any system of justice that the decision on both the law and the facts be made fairly and honestly.  As jurors, you are here to administer justice according to the law and the evidence.  You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Plaintiff or the Defendant.

**Jury Instruction No. 7**
**(Jury and Court Function)**

As the jurors, your fundamental duty is to decide, from all the evidence that you have heard and the exhibits that have been submitted, what the facts are. You are the sole, exclusive judges of the facts: you pass judgment upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

On the other hand, and with equal emphasis, you are required to accept the law as it is given to you in this charge and in any charges that I have given to you during the course of the trial. Whether you agree with the law as given to you by me or not, you are bound by it. The process by which you arrive at a verdict is, first, to decide from all of the evidence what the facts are; and second, to apply the law as I give it to you, to the facts as you have decided them to be. The conclusion thus reached will be your verdict.

**Jury Instruction No. 8**
**(Evidence)**

The evidence in this case consists of the following:

1.      The sworn **testimony** of the witnesses, regardless of which side called the witness.

2.      The evidence includes all **exhibits** received in evidence, regardless of which party offered the exhibit into evidence.  Some exhibits are designated as Plaintiff's exhibits and some as Defendant's exhibits.  That is for administrative purposes, and you should not draw any inference from whether an exhibit is identified as Plaintiff's or Defendant's.

3.      The evidence includes any factual **stipulations** that you must take as true for purposes of this case.  A "stipulation" is an agreement between both sides that a particular fact is true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

4.      Any facts or events I take **judicial notice** of must also be taken as true for purposes of this case, even though no direct evidence has been introduced proving them to be true.  I will let you know if and when I take judicial notice of a fact.

5.      **Deposition testimony** may also be received in evidence.  A deposition is a proceeding in which lawyers have the opportunity to question a witness under oath before trial.  Deposition testimony is transcribed by a court reporter so that there is a transcript that can be read from.  Sometimes the parties will also visually record a deposition.   Deposition testimony thus may be read or shown at trial.  Deposition

11

testimony may be accepted, or discounted, by you, subject to the same charges that apply to witnesses testifying in open court.

By contrast, certain things are not evidence and may not be considered by you in reaching a verdict.  These include the following:

1.      Statements and **arguments by the lawyers** are not evidence.  The lawyers are not witnesses, and what they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

2.      Second, the **questions asked by the lawyers** are not evidence.  Rather, the witnesses' answers are the evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked if the witness if the statement is true.  If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then  you may not consider it to be true simply because it was contained in the lawyer's question.  For example, imagine a lawyer asked the witness: "When did you stop stealing money from the cash register?"  You would not be permitted to consider as true the assumed fact that the witness ever stole money from the cash register, unless the witness indicated they had, or unless there was some other evidence in the record that the witness had stolen money from the cash register.

3.      Third, **objections by the lawyers** are not evidence.  The lawyers have an obligation to make an objection when they believe evidence offered is improper under the rules of evidence.  The Court's ruling on an objection should not influence you.  If I sustain

the objection, then you should ignore the question asked. If I overrule the objection, then you should treat the answer like any other.

4. Fourth, **testimony that the Court has stricken or told you to disregard** is not evidence and must not be considered. Sometimes evidence may be admissible for limited purposes. If I instruct you that an item of evidence is received for a limited purpose only, you must follow that instruction. Sometimes exhibits may be marked only for identification but not received in evidence and instead used only to refresh the witness's recollection. When that happens, the exhibit is not evidence; only the witness's testimony is evidence.

5. Fifth, **statements that I may have made** concerning the evidence are not evidence. Nothing that I say or do during the course of the trial is intended to indicate, and should not be taken by you as indicating, what your verdict should be.

6. Sixth, although as jurors you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate to other jurors any **personal professional expertise** you might have or other facts not in evidence.

7. Lastly, anything you may have **seen or heard outside the courtroom** is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

**Jury Instruction No. 9**
**(Evidence – Reasonable Inferences)**

You are to consider only the evidence in the case, but in your consideration of the evidence you are not limited to the testimony and exhibits. You are permitted to draw reasonable inferences based on facts that you find have been proved. Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case. Inferences are not, however, guesswork made without a reasonable basis in the evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts you find to be proven, any reasonable inferences that you think are justified in light of your common sense and life experiences.

**Jury Instruction No. 10**
**(Evidence - Direct and Circumstantial)**

You are to consider both direct and circumstantial evidence in reaching your verdict. One kind of direct evidence is witnesses' testimony about something they know by virtue of their own senses—something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit—such as what is written in an email or a document.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts. There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside. As you are sitting here, someone walks in with an umbrella that is dripping wet. Somebody else then walks in with a raincoat that is also dripping wet. You cannot look outside the courtroom and see whether or not it is raining, so you have no direct evidence of that fact. Yet on the combination of the facts I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

**Jury Instruction No. 11**
**(Credibility and Weight of Evidence)**

In deciding what the facts are in this case, you must consider all the evidence that has been offered.    But that does not mean you must accept all evidence as true. You must decide which testimony to believe and which testimony not to believe.  You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You  [will have] [have had] the opportunity to observe the witnesses.  It is your job to decide how believable each witness [is] [was] in his or her testimony.  Your determination of the issue of credibility will depend upon the impression that a witness made upon you as to whether or not that witness was telling the truth or giving you an accurate version of what occurred.  You may choose to disbelieve all or part of any witness's testimony.  Often it is not what a person says but how he or she says it that moves us.  In making that decision, you may take into account any number of factors, including but not limited to the following:

- The witness's opportunity to see, hear, and know about the events he or she described;

- The witness's ability to recall and describe those things;

- The witness's manner in testifying – was the witness candid and forthright, or did the witness seem as if he or she was hiding something or being evasive or suspect in some way;

- How the witness's testimony on direct examination compared with the witness's testimony on cross-examination;

- The reasonableness and probability of the witness's testimony in light of other evidence in the case;

- Whether the witness has any possible bias, any relationship to a party, any hostility towards any party, any motive to testify falsely, or any possible interest in the outcome of the trial;

- Whether a witness's testimony was contradicted by his or her other testimony, the testimony of other witnesses, or other evidence; and

- Whether the witness's testimony was contradicted by a prior inconsistent statement made out of court by that witness.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit testimony. In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or part, you may disregard the particular part you find to be false or you may disregard the witness's entire testimony as not worthy of belief.

It is entirely within your discretion to judge the credibility of each witness, to weigh the relative truth and falsity of each witness's testimony, and to determine the weight to be given to each witness's testimony as a whole.

**Jury Instruction No. 12**
**(Expert Witnesses)**

In this case, you [may hear] [have heard] from what we refer to as expert witnesses.  These are witnesses who will state their opinions about matters that are at issue.  Such witnesses have special knowledge, skill, experience, and/or training in a particular area.  Expert opinion testimony is presented to you on the theory that someone who is experienced and knowledgeable about a particular subject can assist you in understanding the evidence or in reaching an independent decision about the facts.

In weighing the opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well was all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in the case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning their opinion.  Nor should you substitute their opinion for your own reason, judgment, and common sense.  Again, the determination of the facts in the case rests solely with you.

**Jury Instruction No. 13**
**(Burden of Proof – Preponderance of the Evidence)**

Both Tang Capital and BRC have burdens of proof in this case.  As Plaintiff, Tang Capital has the burden of proving its compensatory damages by a preponderance of the evidence.  As Defendant, BRC has the burden of proving its affirmative defense of mitigation by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence means to prove that fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence – even if that weight is 50.1%.  A preponderance of the evidence is based on the quality and persuasiveness of the evidence, not the number of witnesses or documents.

In determining whether a fact has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have offered them.

If you find that the credible evidence on a given issue is evenly divided between the parties – in other words, that it is equally probable that one side is right as it is that the other side is right – or if you find that the evidence produced by the party having the burden of proof is outweighed by evidence against that party's claim, then you must decide that issue against the party having the burden of proof.  On the other hand, the party with the burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof – that what the party claims is more likely true than not true – then the fact will have been proved by a preponderance of the evidence.

19

Some of you may have heard of proof "beyond a reasonable doubt," which is the standard for criminal trials.  That standard does not apply to a civil case such as this, and you should put it out of your mind.



**PRE-DELIBERATION INSTRUCTIONS—SUBSTANTIVE**

**Jury Instruction No. 14**
**(Compensatory Damages)**

I am now going to provide substantive instructions about the law of damages.   As mentioned, the Court already has determined that Defendant BRC breached the Warrant Agreement.  You must now determine the dollar amount of damages that Tang Capital incurred as a direct result of BRC's breach.  Tang Capital has the burden to prove its damages by a preponderance of the evidence.

The purpose of the law of damages is to award, as far as possible, just and fair compensation to the plaintiff for the loss if any, caused by a defendant's wrongful actions. Compensatory damages are meant to make the plaintiff whole – to compensate the plaintiff for the actual damage suffered.

Damages for breach of contract should place the plaintiff in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.  Put another way, the law seeks to provide a plaintiff with the benefit of its bargain.  Here, that means damages should place Tang Capital in the position it would have been in had BRC allowed Tang Capital to exercise its warrants.

In a breach of contract case such as this one, a plaintiff like Tang Capital is entitled to damages in the form of lost profits, meaning the profits Tang Capital would have made in the absence of BRC's breach.

The measure of damages for failing to deliver stock in accordance with a warrant agreement is the difference between the price provided in the warrant and the market value of the stock.  For example, if a warrant allowed the warrant holder to purchase stock at a cost of $5 per share, and at the time of breach the market value of the stock was $15,

the damages – or lost profits – incurred by the warrant holder from not being allowed to exercise its warrants would be $10 per share.   Here, the parties agree on the market value of BRC's stock at the relevant times, so you do not need to make your own calculation of market value.

Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of its loss with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  At trial, the parties' experts [will provide] [provided] their opinions about the calculation of damages to assist you.

In all instances,  you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Jury Instruction No. 15**
**(Mitigation)**

Defendant BRC has asserted the affirmative defense that Tang Capital failed to mitigate its damages. An affirmative defense is a defense for which the defendant has the burden of proof. Accordingly, it is BRC's burden to establish its mitigation defense by a preponderance of the evidence.

The law imposes on parties injured by breach of contract a requirement to mitigate their damages. Mitigation refers to making reasonable efforts to reduce or avoid the severity of damages. The duty to reduce or avoid damages arises when it is no longer reasonable to believe that the other party will perform the contract. The duty to mitigate requires reasonable efforts by the injured party to take such affirmative steps as are reasonable in the circumstances to avoid loss. However, the injured party is not required to take extraordinary measures. A party is not required to incur undue risk, burden, or expense to mitigate its damages.

The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by the plaintiff was unreasonable. In other words, if the injured party made reasonable efforts to reduce or avoid its losses, then it does not matter than in hindsight another, better means of limiting injury was possible.

To prove its mitigation defense, BRC must prove (1) Tang Capital failed to make reasonable efforts to mitigate its damages; and (2) that those efforts actually would have reduced Tang Capital's damages. If you find that BRC proved that Tang Capital failed to mitigate its damages, you must reduce Tang Capital's damages by the amount of its losses that it could have reasonably avoided. For example, if you were to find that a

defendant's breach caused the plaintiff to incur $100 in lost profits, and also that at some point it was no longer reasonable to believe that the defendant would perform under the contract, and that the plaintiff then failed to take reasonable measures that would have avoided $10 of losses, you would award the plaintiff damages in the amount of $100 minus $10 for a total of $90.



## PRE-DELIBERATION INSTRUCTIONS—CONCLUDING

### Jury Instruction No. 16
### (Duty to Deliberate)

You are about to go into the jury room and begin your deliberations.  It is your duty as jurors to consult with one another and to deliberate with a view to reaching agreement. Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors.  You should not hesitate to change an opinion when you are convinced that it is wrong.  Your verdict must be unanimous on each and every question that you must decide.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion that in your good conscience appears to be in accordance with the truth.

You may discuss the case only when all of you are present in the jury room.  If only some of you are present, the jury is not fully formed and cannot deliberate.

In the jury room, you will have access the trial exhibits.  If you want any witness testimony read back, you may also request that.  Please remember that it is not always easy to locate what you might want, so try to be as specific as you possibly can in making your request.

Your requests for testimony—or any other communication with the Court— should be made to me in writing, signed by your foreperson along with the date and time, and given to one of the United States Marshals.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

25

**Jury Instruction No. 17**
**(Foreperson and Return of Verdict)**

When you retire, you should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you in open court.

I have prepared a special verdict form for you to use in recording your decision. **[Display Verdict Form.]** The verdict form is made up of questions concerning the issues in this case. There [is/are] _____ question(s) for you to answer on the verdict form. The question(s) read(s) as follows_____. No inference is to be drawn from the way the verdict form is worded as to what the answer(s) should be. The question(s) [is/are] not to be taken as any indication that I have any opinion as to how they should be answered.

Before the jury attempts to answer any question on the verdict form, you should read through the entire verdict form, and make sure that everyone understands the question. Before answering the question, you should deliberate in the jury room and discuss the evidence that relates to the question being answered. When you have considered the question thoroughly, and the evidence relating to the question, you are to record your answer on the verdict form. Remember, the answer must be agreed upon by all of you.

After you have reached a verdict, your foreperson will fill in the verdict form, sign and date it, and advise the United States Marshal outside your door that you are ready to return to the courtroom. Upon your return, the verdict will be announced in open court.

Finally, I say this not because I think it is necessary, but because it is the custom in this courthouse: treat each other with courtesy and respect during your deliberations. And see that justice is done, all in accordance with your oath as jurors.

26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**TANG CAPITAL PARTNERS, LP,**

|                           | |                              |
|---------------------------|-|------------------------------|
|         Plaintiff,        | | .(DRAFT JULY 14, 2025)       |
|        -against-          | | .22 Civ. 3476 (RWL)          |
| **BRC INC.,**             | | **JURY VERDICT FORM**        |
|         Defendant.        | |                              |

-------------------------------------------------------------X

The purpose of this form is solely to assist you in reporting your verdict. Answer the question based on the evidence and the Court's instructions on the law. All jurors must agree on the answer.

1.    What amount of money damages do you find should be awarded to Tang Capital for BRC's breach of contract?

$_____

Foreperson, please sign and date this Jury Verdict Form and advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce it.

Dated:    New York, New York
          July ___, 2025

                                    _____
                                    JURY FOREPERSON

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TANG CAPITAL PARTNERS, LP,

                                    Plaintiff,

                    -against-                                    22 Civ. 3476 (RWL)

BRC INC.,

                                    Defendant.
-----------------------------------------------------------X

**JURY VOIR DIRE**
**(DRAFT ~~JUNE 30~~JULY 14, 2025)**

1

### Background

Our system of justice deems all litigants as equals and requires that they be treated fairly and impartially. That requires having fair and impartial jurors. To that end, I and the lawyers are going to ask you some questions to determine if you should be a juror in this particular case. So, please listen carefully and answer truthfully.

Before the questions, however, I am going to provide you with a very brief description of the case. This is a civil lawsuit, not a criminal one. As I will instruct you later, the standard of proof in a civil case is different than in a criminal case.

In this case, the Plaintiff is Tang Capital Partners, LP, which I will refer to as Tang Capital. The defendant is BRC, Inc. BRC is short for Black Rifle Coffee Company. I will refer to the defendant as BRC.

Tang Capital is a private investment company. In the Spring of 2022, Tang Capital made some investments giving Tang the rights to purchase the stock of BRC at a set price. When Tang sought to exercise those rights and purchase BRC's stock, BRC prevented Tang from doing so.

Tang then sued BRC claiming that BRC failed to comply with – or breached – its contractual obligations to Tang. This Court has already ruled on the merits of Tang Capital's claim against BRC. The Court found that BRC did in fact breach its contractual obligations.

Because the Court already has ruled on the merits of Tang Capital's claim, the only issue being decided at this trial is damages – that is, the amount of money, if any, that Tang Capital should receive as a result of BRC's breach of contract.

2

I will now proceed to ask you questions. The questions will take place in two parts. The first set of questions I will ask all of you in this courtroom. The second set of questions will take place individually, one juror at a time, in my robing room. To begin, I will administer an oath requiring you to truthfully answer the questions posed to you.

## Oath

"I do solemnly swear or affirm that I will truthfully answer all questions that shall be asked of me regarding my qualifications as a juror in the case now called for trial."

3

**TO THE PANEL**

**Knowledge Of Parties And Witnesses**

1.      Do any of you have any personal **knowledge of this particular** case aside from what I have told you so far?

2.      Are any of you familiar with the plaintiff **Tang Capital Partners, LP**?

3.      Are any of you familiar with the defendant **BRC, Inc., also known as Black Rifle Coffee Company**?

4.      The plaintiff Tang Capital is represented by the law firm **Gibson, Dunn & Crutcher LLP**.  Are any of you familiar with that firm?

The attorneys and staff from that firm who will be appearing in court are **Reed Brodsky, David P. Salant, Laura ~~Londono~~Londoño Pardo, ~~and~~ Elizabeth Brilliant, Laura Wang, and Ariel Santamaria.**  Do you know any of these ~~attorneys~~individuals?

5.      The Defendant BRC is represented by the law firm **Quinn, Emanuel Urquhart & Sullivan LLP**.  Are any of you familiar with that firm?

The attorneys from that firm who will be appearing in court are **William C. Price, Samuel G. Williamson, Jason D. Sternberg, David A. Nabors, ~~and~~ Nicholas J. Inns, Olga Garcia, Humberto Ferrer, and Michael Kim.**  Do you know any of these ~~attorneys~~individuals?

6.      Do you know any of the following **witnesses** who may testify in this case:

4

- Jonathan Arnold

- Tanner Doss

- Michael ~~Horne~~Hearne

- Terrence Hendershott

- Gregory Iverson

- Stephen Kadenacy

- Andrew McCormick

- Danica Mock

- Ryan Murr

- AJ Perea

- Peter Seligson

- Kevin Tang

- Brandon Wang

> **Formatted:** Line spacing: Double

7.    Do you recognize any of the other **potential jurors** who are here?

8.    Have any of you ever purchased or consumed **Black Rifle Coffee Company products**?

### Ability to Follow the Proceedings

9.    Do any of you have any problem hearing or seeing, or any problem reading, speaking or understanding the **English** language?

5

10.    Do any you have any **medical**, physical or psychological condition that would make it difficult for you to serve as a juror?

11.    Trial of this case is expected to last about ▮▮ **days**.  Is there any reason you cannot serve on the jury for that period of time?

### Ability to Render an Impartial Verdict Generally

12.    Given what I have told you about the case, does anyone believe that he or she could not be a **fair and impartial** juror?

13.    As a juror, you must **keep an open mind** about this case until hearing all of the evidence, the arguments of both sides and the instructions on the law I will give.  Do any of you think you will not be able to keep an open mind?

14.    If selected as a juror, you will be **instructed by me not to talk** to anyone about the case until it is over.  And you will not be allowed to speak with other jurors about the case until the trial ends and you and the other jurors begin your deliberations.  Does anyone think they cannot follow that instruction?

### Ability to Render an Impartial Verdict – Case Specific

15.    Do any of you have opinions, either positive or negative, about people or entities who invest money in **stocks or other securities**?

16.    Are any of you familiar with a type of company called a special-purpose acquisition company, otherwise known as a **SPAC**?   Do you have any opinions, either positive or negative, about SPACs?

6

17.   Do any of you have concerns about awarding **money damages** ~~for breach of a contract?~~

~~18.~~17. ~~Do any of you have concerns about awarding money damages~~ against a **public company** that has breached a contract?

### Ability to Apply the Law as Given by the Court

~~19.~~18. Under our system of justice, for the claims that are being submitted to a jury, the decisions concerning the facts of the case are the responsibility of the jury, and decisions concerning the law are the responsibility of the Court.  At the close of this trial, I will instruct you as to the law that you are to apply and you are required to accept it as stated. With this in mind, do any of you feel that for any reason you may not be willing or may not be able to **apply the law as instructed by me**?

~~20.~~19. Do any of you believe that you would not be able to follow my instructions regarding the law to be applied **if you disagree** with my instructions or feel that the law ought to be something different from what I tell you?

### INDIVIDUAL QUESTIONS

~~21.~~20. In what **town** do you live, and how long have you lived there?

~~22.~~21. What is the highest level of **education** you have completed?

~~23.~~22. How are/were you most recently **employed**?

~~24.~~23. Do you have any **legal training**?  If yes, explain.

7

~~25.~~24. Do you have any **financial or investment** training?  If yes, explain.

~~26.~~25. Have you ever worked in the **finance, investment, or legal** industries?  If yes, explain.

~~27.~~26. Have you ever invested in stocks, bonds, options, or warrant securities?  How would you characterize your level of **investing experience**?

~~28.~~27. Do you have a **spouse or partner**?  If yes, what do they do?

~~29.~~28. Do you have any grown **children**? If yes, what do they do?

~~30.~~29. How do you learn about the **news**?

~~31.~~30. What **social media** platforms do you use?

~~32.~~31. What do you like to do in your **spare time**?

~~33.~~32. Have you, or has any member of your family or a close personal friend, ever been a **party in a lawsuit**?  If yes, did the case end to your (or their) satisfaction?  If not, did you (they) feel that trial was conducted fairly?

~~34.~~33. Have you ever testified as a **witness** in a lawsuit?  If yes, what type of case?  What did you think of the experience like?

~~35.~~34. Have you ever served on a **jury** before?  If yes, what type of case?  Did the jury reach a verdict?  What did you think of the experience?

~~36.~~35. Based on your **life experience**, do you believe there is anything that would cause you to lean in favor of either the plaintiff or the defendant in this case?

37.36. Is there **any matter not covered** by my questions that should be brought to my attention because it would affect your ability to be a juror in this case and to render an impartial verdict?



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
**TANG CAPITAL PARTNERS, LP,**

                                        **Plaintiff,**

                    -against-                        **22 Civ. 3476 (RWL)**

**BRC INC.,**

                                        **Defendant.**
------------------------------------------------------------------X

**JURY INSTRUCTIONS**
**(DRAFT ~~JUNE 30~~JULY 14, 2025)**

# TABLE OF CONTENTS

A.  Pre-Trial Instructions ............................................................................... 1

    1.  Jury Instruction No. 1 (Introduction to the Case) .............................. 1
    2.  Jury Instruction No. 2 (Schedule) ..................................................... 3
    3.  Jury Instruction No. 3 (Order of Trial) ............................................... 4
    4.  Jury Instruction No. 4 (Juror Conduct) ............................................. 5

B.  Pre-Trial (Except No. 5) And Pre-Deliberation Instructions — General..................... 8

    5.  Jury Instruction No. 5 (Introduction to Deliberations) ....................... 8
    6.  Jury Instruction No. 6 (Impartiality)................................................... 9
    7.  Jury Instruction No. 7 (Jury and Court Function)............................. 10
    8.  Jury Instruction No. 8 (Evidence) ................................................... 11
    9.  Jury Instruction No. 9 (Evidence—Reasonable Inferences)............ 14
    10. Jury Instruction No. 10 (Direct Evidence and Circumstantial Evidence)........ 15
    11. Jury Instruction No. 11 (Credibility and Weight of Evidence)........... 16
    12. Jury Instruction No. 12 (Expert Witnesses).................................... 18
    13. Jury Instruction No. 13 (Burden of Proof—Preponderance of Evidence) ...... 19

C.  Pre-Deliberation Instructions — Substantive ............................................. 21

    14. Jury Instruction No. 14 (Compensatory Damages) ....................... 21
    15. Jury Instruction No. 15 (Mitigation).................................................. 23

D.  Pre-Deliberation Instructions — Concluding ............................................. 25

    16. Jury Instruction No. 16 (Duty to Deliberate) .................................. 25
    17. Jury Instruction No. 17 (Foreperson and Return of Verdict)........................ 26

**PRE-TRIAL INSTRUCTIONS**

**Jury Instruction No. 1**
**(Introduction to the Case)**

Members of the jury, we are about to begin the trial of the case that you heard about during jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.  First, I am again going to provide you with a short description of the case.  Although this description is similar to the one I read for jury selection it has more information.  So please listen carefully.

This trial is about how much, if any, money damages the ~~Defendant~~Plaintiff Tang Capital should receive because Defendant BRC did not comply with an agreement concerning investments made by Tang Capital.

In the Spring of 2022, Tang Capital purchased publicly available securities known as warrants.  The warrants were issued by BRC.  When Tang Capital purchased the BRC warrants it became what is called a ~~warrant~~ holder in those warrants.

A warrant provides the warrant holder with the right to purchase the stock of a particular company at a set price.  When the warrant holder wants to use the warrants to purchase the company's stock, the warrant holder is said to exercise its rights in the warrants.

Here, the warrants Tang Capital purchased were governed by a contract called the Warrant Agreement.  The Warrant Agreement required certain conditions to be met before warrant holders, like Tang Capital, could exercise their warrants.

When Tang Capital attempted to exercise the BRC warrants it held, BRC blocked Tang Capital from doing so.   Tang Capital sued BRC, claiming the conditions to exercise

the warrants had been met, and that BRC failed to comply with – or breached – its contractual obligations under the Warrant Agreement by preventing Tang Capital from exercising the warrants it held.  BRC ~~argued~~claimed that the conditions required to exercise the warrants had not been met.

This Court has already ruled on the merits of Tang Capital's claim against BRC. After the parties exchanged documents and questioned witnesses, the Court ruled that, by March 11, 2022, the conditions required to exercise the BRC warrants had been met and that BRC breached its contractual obligations to honor the warrants held by Tang Capital.

Because the Court already has ruled on the merits of Tang Capital's claim, the only issue being decided at this trial is damages.  That is, what amount of money, if any, should Tang Capital receive for damages caused by ~~Tang's~~BRC's breach of contract.

Tang Capital claims that BRC's breach of contract caused Tang Capital to lose millions of dollars.  BRC ~~asserts~~claims that Tang Capital failed to act reasonably to reduce its losses ~~once Tang Capital became aware that BRC would not allow Tang Capital to exercise the warrants~~ and that, as a result, ~~Tang's~~Tang Capital's damages should be reduced.

You will hear about and decide ~~these matters~~the damages issues in this case.

**Jury Instruction No. 2**
**(Schedule)**

Let me say a few words about scheduling:

Our trial day will begin at 9:30 a.m. each day and will last until approximately 4:30-5:00 in the afternoon.  We generally will break for lunch somewhere between 12:30 and 1:00.  I also will try to have a short 10 or 15 break both mid-morning and mid-afternoon.

It is essential that you be on time in the mornings and returning from lunch and breaks.  We cannot start until all of you are here.  If one of you is late, we will have to wait until you arrive.  So, I ask that you all arrive on time.

That said, there may be occasions when I will need you to wait before we resume. Each day, there are various matters concerning the trial that I need to discuss with the lawyers.  I try to do that before and after trial each day, but sometimes it may be unavoidable that those issues may take up more time than expected.  I expect the lawyers to work with me in minimizing any such intrusions into our trial day.

**Jury Instruction No. 3**
**(Order of Trial)**

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, the plaintiff Tang Capital will present evidence in support of its claim, and the lawyers for defendant BRC may cross-examine witnesses called by Tang Capital.

After Tang Capital has presented its case, BRC may introduce evidence, and the lawyers for Tang Capital may cross-examine witnesses called by BRC.

In some instances, Tang Capital and BRC may call some of the same witnesses, though these witnesses will generally only be called once, for their convenience and yours.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case. At the end of the trial, you will have to make your decision based on what you recall of the evidence. I urge you to pay close attention to the testimony as it is given.

4

**Jury Instruction No. 4**
**(Juror Conduct)**

I will now address with you a few "dos" and "don'ts":

First, if you would like, you may take notes during the trial. You have a pad of paper and a pencil or pen for that purpose.  Please write your name on the cover.  Unless instructed to the contrary, the notepad should be left on your seat anytime you leave the courtroom.  Of course, if you prefer not to take notes, that is fine.  But if you do take notes, remember that any notes you take are for your use only, and they are only to be used as an aid to memory.  Your memory controls.  If you do take notes, be careful not to get so involved in taking notes that you are not listening to  or looking at the evidence.  Once you are in deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony.  The controlling record of the evidence is the official court transcript, not any particular juror's notes.

Second, during the course of trial, exhibits will be received into evidence.  They will be marked by exhibit number and will be discussed by the witnesses and/or shown to you.  If there is an exhibit that you are interested in seeing, you can ask to see the exhibit once you are in deliberations.  So, you may find it helpful to write down the exhibit number during trial.

Third, you will not be able to ask questions of the witnesses or their attorneys.  If you have a problem or a particular need, please let our Courtroom Deputy know.

Fourth, from now and all during the trial you are not to communicate about the case with anyone.  This means that you cannot discuss the case with your co-jurors until

the trial is over and you begin deliberations.  Once you do begin deliberations, you may only discuss the case if all jurors are present.

Fifth, other than your co-jurors during deliberations, you are not to communicate about the case with anyone (partner, family, friend, or anyone else) until after the jury has reached its verdict and you have been discharged.  This prohibition applies to communication in any form, including electronic communication.  You may not post any information on the internet or through any other medium about your participation on this jury or about this trial.  That means that you may not use social media or email, tweet, text or use any other form of electronic communication to identify the trial, to disclose the identity of any person involved in the trial, or to disclose the nature of the controversy, what occurs in the trial, or what you or others think about the evidence presented.  If you have to tell someone, such as your spouse or your employer that you are serving on a jury and that the trial is expected to last ▮▮▮ days, that is okay.  But when they inevitably ask you what the case is about, please tell them you are under strict instructions from the judge not to discuss the case.  The reason for this is that we want you to decide the case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who  has not heard the evidence may think about the case.

If any person asks or tries to contact you about this case, politely but firmly tell them that the judge has ordered you not to do so.  If any person does contact you about the case, or if you receive information about the case from any person or through any medium, please provide a note to the Courtroom Deputy, who will pass it on to me.

Sixth,  while you are serving as jurors, please do not have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevator, outside, or anywhere else.  By this, I mean not only to avoid

talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people.  Someone seeing a juror in conversation with a party, lawyer or witness might think that something improper was being discussed even if it wasn't.  To avoid even the appearance of impropriety, avoid any such contact or conversations. Similarly, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude – they are simply following my instructions.

Seventh, do not do any research or make any investigation about the case.  Do not consult books or dictionaries.  Do not visit sites or search on the internet for information about any party, counsel, witness, event or other information concerning this case.  Similarly, do not read, watch, or listen to anything reported by the media or press that relates to the case – this includes newspapers, TV, radio, social media, or other internet commentary.  In the unlikely event you see anything in the media about this case, please turn away and pay no attention to it.  Remember, your sworn oath requires you to limit yourself to the evidence presented in the courtroom.

Finally, do not form an opinion about the case until all the evidence is in.  A case can be presented only step-by-step, witness-by-witness, until all the evidence is before you.  Keep an open mind throughout trial.

**PRE-TRIAL (Except No. 5) AND PRE-DELIBERATION INSTRUCTIONS—GENERAL**

**Jury Instruction No. 5**
**(Introduction to Deliberations)**

Members of the jury, we come now to that portion of the trial where you are instructed on the law applicable to the case and you then retire for your final deliberations. You have now heard all the evidence introduced by the parties, and through arguments of their attorneys you have learned the conclusions that each party believes should be drawn from the evidence presented to you. This charge is divided into roughly two parts: the first part consists of general principles of law applicable to all civil cases; the second part consists of charges directed specifically to the law you must follow in this case.

**Jury Instruction No. 6**
**(Impartiality)**

A lawsuit is a civilized method of determining differences between people. It is basic to the administration of any system of justice that the decision on both the law and the facts be made fairly and honestly. As jurors, you are here to administer justice according to the law and the evidence. You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Plaintiff or the Defendant.

**Jury Instruction No. 7**
**(Jury and Court Function)**

As the jurors, your fundamental duty is to decide, from all the evidence that you have heard and the exhibits that have been submitted, what the facts are.  You are the sole, exclusive judges of the facts: you pass judgment upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

On the other hand, and with equal emphasis, you are required to accept the law as it is given to you in this charge and in any charges that I have given to you during the course of the trial.  Whether you agree with the law as given to you by me or not, you are bound by it.  The process by which you arrive at a verdict is, first, to decide from all of the evidence what the facts are; and second, to apply the law as I give it to you, to the facts as you have decided them to be.  The conclusion thus reached will be your verdict.

**Jury Instruction No. 8**
**(Evidence)**

The evidence in this case consists of the following:

1.      The sworn **testimony** of the witnesses, regardless of which side called the witness.

2.      The evidence includes all **exhibits** received in evidence, regardless of which party ~~produced~~offered the exhibit into evidence.  Some exhibits are designated as Plaintiff's exhibits and some as Defendant's exhibits.  That is for administrative purposes, and you should not draw any inference from whether an exhibit is identified as Plaintiff's or Defendant's.

3.      The evidence includes any factual **stipulations** that you must take as true for purposes of this case.  A "stipulation" is an agreement between both sides that a particular fact is true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

4.      Any facts or events I take **judicial notice** of must also be taken as true for purposes of this case, even though no direct evidence has been introduced proving them to be true.  I will let you know if and when I take judicial notice of a fact.

5.      **Deposition testimony** may also be received in evidence.  A deposition is a proceeding in which lawyers have the opportunity to question a witness under oath before trial.  Deposition testimony is transcribed by a court reporter so that there is a transcript that can be read from.  Sometimes the parties will also visually record a deposition.   Deposition testimony thus may be read or shown at trial.  Deposition

testimony may be accepted, or discounted, by you, subject to the same charges that apply to witnesses testifying in open court.

By contrast, certain things are not evidence and may not be considered by you in reaching a verdict.  These include the following:

1.      Statements and **arguments by the lawyers** are not evidence.  The lawyers are not witnesses, and what they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

2.      Second, the **questions asked by the lawyers** are not evidence.  Rather, the witnesses' answers are the evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked if the witness if the statement is true.  If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then  you may not consider it to be true simply because it was contained in the lawyer's question.  For example, imagine a lawyer asked the witness: "When did you stop stealing money from the cash register?"  You would not be permitted to consider as true the assumed fact that the witness ever stole money from the cash register, unless the witness indicated they had, or unless there was some other evidence in the record that the witness had stolen money from the cash register.

3.      Third, **objections by the lawyers** are not evidence.  The lawyers have an obligation ~~to their clients~~ to make an objection when they believe evidence offered is improper under the rules of evidence.  The Court's ruling on an objection should not

influence you.  If I sustain the objection, then you should ignore the question asked.  If I overrule the objection, then you should treat the answer like any other.

4.      Fourth, **testimony that the Court has stricken or told you to disregard** is not evidence and must not be considered.  Sometimes evidence may be admissible for limited purposes.  If I instruct you that an item of evidence is received for a limited purpose only, you must follow that instruction.  Sometimes exhibits may be marked only for identification but not received in evidence and instead used only to refresh the witness's recollection.  When that happens, the exhibit is not evidence; only the witness's testimony is evidence.

5.      Fifth, **statements that I may have made** concerning the evidence are not evidence.  Nothing that I say or do during the course of the trial is intended to indicate, and should not be taken by you as indicating, what your verdict should be.

6.      Sixth, although as jurors you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate to other jurors any **personal professional expertise** you might have or other facts not in evidence.

7.      Lastly, anything you may have **seen or heard outside the courtroom** is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

**Jury Instruction No. 9**
**(Evidence – Reasonable Inferences)**

You are to consider only the evidence in the case, but in your consideration of the evidence you are not limited to the testimony and exhibits.  You are permitted to draw reasonable inferences based on facts that you find have been proved.  Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.  Inferences are not, however, guesswork made without a reasonable basis in the evidence.  In drawing inferences, you should exercise your common sense.  So, while you are considering the evidence presented to you, you are permitted to draw, from the facts you find to be proven, any reasonable inferences that you think are justified in light of your common sense and life experiences.

**Jury Instruction No. 10**
**(Evidence - Direct and Circumstantial)**

You are to consider both direct and circumstantial evidence in reaching your verdict. One kind of direct evidence is witnesses' testimony about something they know by virtue of their own senses—something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit—such as what is written in an email or a document.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts. There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside. As you are sitting here, someone walks in with an umbrella that is dripping wet. Somebody else then walks in with a raincoat that is also dripping wet. You cannot look outside the courtroom and see whether or not it is raining, so you have no direct evidence of that fact. Yet on the combination of the facts I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

15



**Jury Instruction No. 11**
**(Credibility and Weight of Evidence)**

In deciding what the facts are in this case, you must consider all the evidence that has been offered.    But that does not mean you must accept all evidence as true. You must decide which testimony to believe and which testimony not to believe.  You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You  [will have] [have had] the opportunity to observe the witnesses.  It is your job to decide how believable each witness [is] [was] in his or her testimony.  Your determination of the issue of credibility will depend upon the impression that a witness made upon you as to whether or not that witness was telling the truth or giving you an accurate version of what occurred.  You may choose to disbelieve all or part of any witness's testimony.  Often it is not what a person says but how he or she says it that moves us.  In making that decision, you may take into account any number of factors, including but not limited to the following:

- The witness's opportunity to see, hear, and know about the events he or she described;

- The witness's ability to recall and describe those things;

- The witness's manner in testifying – was the witness candid and forthright, or did the witness seem as if he or she was hiding something or being evasive or suspect in some way;

- How the witness's testimony on direct examination compared with the witness's testimony on cross-examination;

- The reasonableness and probability of the witness's testimony in light of other evidence in the case;

17

- Whether the witness has any possible bias, any relationship to a party, any hostility towards any party, any motive to testify falsely, or any possible interest in the outcome of the trial;

- Whether a witness's testimony was contradicted by his or her other testimony, the testimony of other witnesses, or other evidence; and

- Whether the witness's testimony was contradicted by a prior inconsistent statement made out of court by that witness.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit testimony. In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or part, you may disregard the particular part you find to be false or you may disregard the witness's entire testimony as not worthy of belief.

It is entirely within your discretion to judge the credibility of each witness, to weigh the relative truth and falsity of each witness's testimony, and to determine the weight to be given to each witness's testimony as a whole.

**Jury Instruction No. 12**
**(Expert Witnesses)**

In this case, you [may hear] [have heard] from what we refer to as expert witnesses. These are witnesses who will state their opinions about matters that are at issue. Such witnesses have special knowledge, skill, experience, and/or training in a particular area. Expert opinion testimony is presented to you on the theory that someone who is experienced and knowledgeable about a particular subject can assist you in understanding the evidence or in reaching an independent decision about the facts.

In weighing the opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well was all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in the case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning their opinion. Nor should you substitute their opinion for your own reason, judgment, and common sense. Again, the determination of the facts in the case rests solely with you.

**Jury Instruction No. 13**
**(Burden of Proof – Preponderance of the Evidence)**

Both Tang Capital and BRC have burdens of proof in this case.  As Plaintiff, Tang Capital has the burden of proving its compensatory damages by a preponderance of the evidence.  As Defendant, BRC has the burden of proving its affirmative ~~defenses~~defense of mitigation by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence means to prove that fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence – even if that weight is 50.1%.  A preponderance of the evidence is based on the quality and persuasiveness of the evidence, not the number of witnesses or documents.

In determining whether a fact has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have ~~produced~~offered them.

If you find that the credible evidence on a given issue is evenly divided between the parties – in other words, that it is equally probable that one side is right as it is that the other side is right – or if you find that the evidence produced by the party having the burden of proof is outweighed by evidence against that party's claim, then you must decide that issue against the party having the burden of proof.  On the other hand, the party with the burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof – that what the party claims is more likely true than not true – then the fact will have been proved by a preponderance of the evidence.

20

Some of you may have heard of proof "beyond a reasonable doubt," which is the standard for criminal trials. That standard does not apply to a civil case such as this, and you should put it out of your mind.



**PRE-DELIBERATION INSTRUCTIONS—SUBSTANTIVE**

**Jury Instruction No. 14**
**(Compensatory Damages)**

I am now going to provide substantive instructions about the law of damages.   As mentioned, the Court already has determined that Defendant BRC breached the Warrant Agreement.  You must now determine the dollar amount of damages, if any, that Tang Capital incurred as a direct result of BRC's breach.  Tang Capital has the burden to prove its damages by a preponderance of the evidence.

The purpose of the law of damages is to award, as far as possible, just and fair compensation to the plaintiff for the loss if any, caused by a defendant's wrongful actions. Compensatory damages are meant to make the plaintiff whole – to compensate the plaintiff for the actual damage suffered.

Damages for breach of contract should place the plaintiff in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.  Put another way, the law seeks to provide a plaintiff with the benefit of its bargain.  Here, that means damages should place Tang Capital in the position it would have been in had BRC allowed Tang Capital to exercise its warrants.

In a breach of contract case such as this one, a plaintiff like Tang Capital is entitled to damages in the form of lost profits, meaning the profits Tang Capital would have made in the absence of BRC's breach.

The measure of damages for failing to deliver stock in accordance with a warrant agreement is the difference between the price provided in the warrant and the market value of the stock.  For example, if a warrant allowed the warrant holder to purchase stock at a cost of $5 per share, and at the time of breach the market value of the stock was $15,

the damages – or lost profits – incurred by the warrant holder from not being allowed to exercise its warrants would be $10 per share.   Here, the parties agree on the market value of BRC's stock at the relevant times, so you do not need to make your own calculation of market value.

Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of its loss with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  At trial, the parties' experts [will provide] [provided] their opinions about the calculation of damages to assist you.

In all instances,  you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Jury Instruction No. 15**
**(Mitigation)**

Defendant BRC has asserted the affirmative defense that Tang Capital failed to mitigate its damages.  An affirmative defense is a defense for which the defendant has the burden of proof.  Accordingly, it is BRC's burden to establish its mitigation defense by a preponderance of the evidence.

The law imposes on parties injured ~~partiesby breach of contract~~ a requirement to mitigate their damages.  Mitigation refers to making reasonable efforts to reduce or ~~lessen~~avoid the severity of damages.  ~~To prove its mitigation defense, BRC must prove (1) that following Tang's breach of contract, Tang Capital failed to make~~The duty to reduce or avoid damages arises when it is no longer reasonable ~~efforts~~ to ~~mitigate its damages; and (2) that those efforts actually would have reduced Tang Capital's damages.~~

believe that the other party will perform the contract.  The duty to mitigate requires reasonable efforts by the injured party to take such affirmative steps as are reasonable in the circumstances to avoid loss.  However, the injured party is not required to take extraordinary measures.  A party is not required to incur undue risk, burden, or expense to mitigate its damages.

The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by the plaintiff was unreasonable.  In other words, if the injured party made reasonable efforts to reduce or avoid its losses, then it does not matter than in hindsight another, better means of limiting injury was possible.

To prove its mitigation defense, BRC must prove (1) Tang Capital failed to make reasonable efforts to mitigate its damages; and (2) that those efforts actually would have

reduced Tang Capital's damages.  If you find that BRC proved that Tang Capital failed to use reasonable efforts to mitigate its damages, you must reduce Tang Capital's damages by the amount of its losses that it could have reasonably avoided.  For example, if you were to find that a defendant's breach caused the plaintiff to incur $100 in lost profits, and also that at some point it was no longer reasonable to believe that the plaintiffdefendant would perform under the contract, and that the plaintiff then failed to take reasonable measures that would have avoided $10 of losses following the plaintiff's breach, then, you would award the plaintiff damages in the amount of $100 minus $10 for a total of $90.

**PRE-DELIBERATION INSTRUCTIONS—CONCLUDING**

**Jury Instruction No. 16**
**(Duty to Deliberate)**

You are about to go into the jury room and begin your deliberations.  It is your duty as jurors to consult with one another and to deliberate with a view to reaching agreement.  Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors.  You should not hesitate to change an opinion when you are convinced that it is wrong.  Your verdict must be unanimous on each and every question that you must decide.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion that in your good conscience appears to be in accordance with the truth.

You may discuss the case only when all of you are present in the jury room.  If only some of you are present, the jury is not fully formed and cannot deliberate.

In the jury room, you will have access the trial exhibits.  If you want any witness testimony read back, you may also request that.  Please remember that it is not always easy to locate what you might want, so try to be as specific as you possibly can in making your request.

Your requests for testimony—or any other communication with the Court— should be made to me in writing, signed by your foreperson along with the date and time, and given to one of the United States Marshals.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

26

**Jury Instruction No. 17**
**(Foreperson and Return of Verdict)**

When you retire, you should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you in open court.

I have prepared a special verdict form for you to use in recording your decision. **[Display Verdict Form.]** The verdict form is made up of questions concerning the issues in this case. There [is/are] _____ question(s) for you to answer on the verdict form. The question(s) read(s) as follows_____. No inference is to be drawn from the way the verdict form is worded as to what the answer(s) should be. The question(s) [is/are] not to be taken as any indication that I have any opinion as to how they should be answered.

Before the jury attempts to answer any question on the verdict form, you should read through the entire verdict form, and make sure that everyone understands the question. Before answering the question, you should deliberate in the jury room and discuss the evidence that relates to the question being answered. When you have considered the question thoroughly, and the evidence relating to the question, you are to record your answer on the verdict form. Remember, the answer must be agreed upon by all of you.

After you have reached a verdict, your foreperson will fill in the verdict form, sign and date it, and advise the United States Marshal outside your door that you are ready to return to the courtroom. Upon your return, the verdict will be announced in open court.

Finally, I say this not because I think it is necessary, but because it is the custom in this courthouse: treat each other with courtesy and respect during your deliberations. And see that justice is done, all in accordance with your oath as jurors.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**TANG CAPITAL PARTNERS, LP,**

                             **Plaintiff,**         (**DRAFT** ~~JUNE 30~~**JULY 14, 2025**)

                -against-           **22 Civ. 3476 (RWL)**

**BRC INC.,**                              **JURY VERDICT FORM**

                           **Defendant.**
-----------------------------------------------------------------X


The purpose of this form is solely to assist you in reporting your verdict. Answer the question based on the evidence and the Court's instructions on the law.  All jurors must agree on the answer.


1.     What amount of money damages~~, if any,~~ do you find should be awarded to Tang Capital for BRC's breach of contract?


        $_____


Foreperson, please sign and date this Jury Verdict Form and advise the Court by note that you have reached a verdict and are ready to return to the courtroom to announce it.


Dated:     New York, New York
            July \_\_, 2025

                                  _____
                                  JURY FOREPERSON